# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| M&C HOLDINGS DELAWARE PARTNERSHIP, M&C HOTEL INTERESTS, INC., M&C MANAGEMENT SERVICES (USA), INC., CDL HOTELS (USA), INC., and RHM-88, LLC<br><br>Plaintiffs,<br><br>v.<br><br>GREAT AMERICAN INSURANCE COMPANY,<br><br>Defendant. | Case No. \_\_\_\_<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiffs M&C Holdings Delaware Partnership, M&C Hotel Interests, Inc., M&C Management Services (USA), Inc., CDL Hotels (USA), Inc., and RHM-88, LLC (collectively, "Millennium" or "Insured") bring this Complaint against Defendant Great American Insurance Company ("Great American" or "Insurer"), and state as follows:

## NATURE OF THE ACTION

1. Millennium and its affiliated companies own and operate premium hotels in the United States. To protect these properties across the country, Millennium purchased a Crime Protection Policy from Great American.

2. An employee at one of Millennium's properties, the ONE UN New York hotel (now, the Millennium Hilton New York One UN Plaza Hotel) in New York City, thereafter

engaged in a fraudulent scheme to funnel Millennium's funds into companies he controlled. Millennium has not and cannot recover these funds.

3. Though Millennium presented straightforward proof of out-of-pocket loss, Great American dithered and delayed, under the guise that its "investigation" was continuing. Millennium cooperated, and continued to provide further information, without seeing a cent from Great American.

4. Great American acknowledges that the employee's dishonest actions are a covered occurrence under the Policy. Yet, it has denied the majority of Millennium's approximately $1.9 million claim. It asserts, without factual or legal basis, that funds stolen from Millennium's pocket do not constitute a "loss" covered by the Policy.

5. Great American well knows that its position is meritless. Money stolen from the Insured is a "loss," full stop. Nothing in the Crime Protection Policy indicates otherwise.

6. The delay, obfuscation, and now denial of coverage for this loss have nullified the protection Great American promised to afford Millennium. Accordingly, Millennium asserts claims for breach of contract (Count I) and bad faith denial of coverage (Count II), and respectfully seeks a declaration from this Court that the entirety of the Claim is covered by the Policy (Count III). Millennium accordingly prays for a judgment awarding it damages equal to the amount of the claim, plus other damages that may be proven at trial, prejudgment interest, punitive damages, and reasonable attorney fees.

## PARTIES

7. Plaintiff M&C Holdings Delaware Partnership is a Delaware partnership headquartered in Colorado. The partners are M&C (CB) Ltd., a foreign company organized under the laws of England and Wales, M&C (CD) Ltd., a foreign company organized under the laws of

England and Wales, and M&C Management Services (USA) Inc., a Delaware corporation with its principal place of business in Colorado. None of M&C Holdings Delaware Partnership's partners (nor members of partners) are domiciled in Ohio.

8.  Plaintiff M&C Hotel Interests, Inc. is a Delaware corporation headquartered in Colorado.

9.  Plaintiff M&C Management Services (USA), Inc. is a Delaware corporation headquartered in Colorado.

10. Plaintiff CDL Hotels (USA), Inc. is a Delaware corporation headquartered in Colorado.

11. Plaintiff RHM-88, LLC is a Colorado limited liability company headquartered in Colorado. RHM-88, LLC's sole member is Regal Hotel Management, Inc., a Delaware corporation headquartered in Colorado. RHM-88, LLC has no members (nor members of members) domiciled in Ohio.

12. Upon information and belief, Defendant Great American is an Ohio corporation with its principal place of business in Cincinnati, Ohio.

## JURISDICTION AND VENUE

13. This Court has subject-matter jurisdiction over this dispute pursuant to 28 U.S.C. §1332, as there is complete diversity of citizenship between the parties and the matter in controversy exceeds $75,000, exclusive of interest and costs. The Court further has jurisdiction under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq*., because Millennium is seeking a declaration regarding the parties' rights and obligations with respect to the application of a policy issued by Great American to Millennium.

14. This Court has personal jurisdiction over Great American because it is a corporation domiciled in the State of Ohio, and because it transacts business in this state, including issuing and accepting premiums upon insurance policies, including the Policy at issue. Ohio Rev. Code 2307.382(A)(1).

15. Venue is proper pursuant to 28 U.S.C. § 1391(a)(1) because Great American resides in this judicial district, and as the lone defendant, it is a resident of this state.

## FACTUAL BACKGROUND

16. Millennium and its affiliated companies operate a chain of premium hotels throughout the United States.

17. One of Millennium's properties is the Millennium Hilton One UN Plaza Hotel, at One UN Plaza, New York, New York, which formerly operated at the ONE UN hotel ("One UN Hotel").

18. As part of its ordinary business operations, Millennium pays commissions to certain third-party travel agents in return for booking rooms at the One UN Hotel.

19. Wayne Merdis ("Merdis"), an employee of the One UN Hotel, hatched a scheme to steal money from the One UN Hotel by exploiting the manner in which these commission payments were paid.

20. At a high level, the scheme worked as follows:

   a. Merdis established and operated an entity doing business as Anayad Travel or Annayad Travel, as well as other entities that he dominated and controlled (such entities, including Anayad Travel and Annayad Travel are together referred to herein as the "Fictitious Agencies").

4

    b. The Fictitious Agencies were sham travel agencies. They did not cause bookings to One UN Hotel or any other hotel, and were created for the sole purpose of defrauding Millennium.

    c. Merdis caused the Fictitious Agencies to transmit information to One UN Hotel representing that these entities caused bookings there, entitling them to commissions.

    d. The Fictitious Agencies, as Merdis knew, did not cause any of the bookings that they claimed they did, and thus were never entitled to payment from Millennium.

    e. Merdis and the Fictitious Agencies' false claims caused Millennium to pay commissions to the Fictitious Agencies that Merdis and the Fictitious Agencies knew they were not entitled to.

21. Merdis' dishonest scheme directly resulted in Millennium making at least $1,954,329.13 in payments of fictitious and falsely claimed commissions to Fictitious Agencies.

22. Every cent of this $1,954,329.13 was held in and paid from a Millennium's bank account. Millennium received nothing of value in return for the transfer of these stolen funds.

23. The monies paid to the Fictitious Agencies were pure out-of-pocket loss suffered by Millennium.

24. Neither Merdis nor the Fictitious Agencies were partners or principals of any of the Plaintiffs or their affiliates. Great American has never claimed otherwise.

5

**The Policy**

25. Great American issued a Crime Protection insurance policy to Millennium, with policy number SAA 5245001 13 00 for the policy period of May 31, 2017 to May 31, 2018 (the "Policy"). Each of the Plaintiffs is a Named Insured under the Policy.

26. The Policy provided coverage limits of $10 million and was specifically procured to insure Millennium's property from acts of employee dishonesty, among other perils. (A copy of the Policy is attached hereto as Exhibit A.)

27. Millennium gave notice to Great American, pursuant to the terms of the Policy, of its demand for insurance coverage for $1,954,329.13 lost as the direct result of Merdis' dishonest acts, and timely submitted proof of such loss (the "Claim").

28. Upon receipt of notice of Claim, Great American took an unnecessarily excessive amount of time to investigate the Claim. Great American's dilatory tactics included continual demands to Millennium for additional information, some of which was not even in its possession, custody or control. Millennium continued to cooperate as best as it could, nonetheless. Of course, during Great American's extended investigation, Great American never indicated that it would deny the Claim.

29. During the period in which Great American investigated the Claim, Great American's words and conduct indicated and led Millennium to believe that coverage would be extended, that Great American acknowledged liability under the Policy, and that the "loss" would be covered.

30. There was no justification for Great American's actions, omissions, and delay. Great American has long had at its disposal all facts needed to pay the Claim in full.

31. In order to determine if Millennium's Claim should be covered, the Claim: (1) must fall within the grant of coverage of the Policy, and (2) must not otherwise be barred by an exclusion.

32. Millennium's Claim falls within the general grant of coverage provided by the Policy and its various coverage forms.

33. By way of example, and not by way of limitation, the Claim falls within the grant of Insuring Agreement 1 on Form 087334, which provides as follows:

> **B. INSURING AGREEMENTS**
>
> **1. Employee Dishonesty**
>
> We will pay for loss resulting directly from dishonest acts committed by an employee, whether identified or not, acting alone or in collusion with other persons, with the manifest intent to:
>
> >  a. Cause you to sustain loss; and
> >  b. Obtain an improper financial benefit for:
> > > (1) the **employee**; or
> > > (2) any person or organization intended by the **employee** to receive that benefit.

34. Millennium's Claim for coverage clearly falls with the Policy's definitions because:

    a. The One UN Hotel is covered by the Policy;

    b. Merdis was an employee at the One UN Hotel;

    c. The Merdis scheme was a dishonest act by Merdis;

    d. The Merdis scheme was carried out with the manifest intent to cause One UN Hotel to sustain loss and obtain an improper financial benefit for Merdis and/or his sham businesses, the Fictitious Agencies;

    e. Millennium transferred and lost $1,954,329.13 to the Fictitious Agencies as a direct result of the Merdis scheme; and

    f. The $1,954,329.13 was property of Millennium, not any third party, at the time it was transferred.

7

35. Upon information and belief, Great American's delay in paying the Claim in full was self-interested, and intended to impair and/or recklessly disregarded Millennium's right to payment.

36. Indeed, Great American now acknowledges, admits, and does not deny that: (i) the Merdis scheme was a dishonest act by an employee of Millennium, (ii) $1,954,329.13 in funds were transferred by Millennium to the Fictitious Agencies, and (iii) these transfers directly resulted from Merdis' dishonest acts.

37. Having established that coverage exists under the Policy, it was Great American's burden to unequivocally establish that an exclusion to the Policy negates coverage for Millennium.

38. Great American has not identified any exclusion that would negate coverage for the Claim. Indeed, no exclusions apply.

39. Nonetheless, on or about December 17, 2019, Great American, through counsel, sent a letter to Millennium stating that a great majority of the Claim did not constitute "loss" under the meaning of that term in the Policy.

40. Great American's letter acknowledged that its private investigator confirmed that Merdis did indeed "divert" and/or "embezzle" payments of $1,954,329.13 from Millennium, yet proposed to pay less than 20% of the entire Claim.

41. Great American's December 17, 2019 letter did not mention any contractual limitation period, or assert any limitation period as a basis for denying coverage. Indeed, the letter admits liability and coverage exists, but unfairly and unreasonably refuses to pay the full amount of the loss. This letter, and Great American's agreement to make partial payments under the Policy, further led Millennium to believe that Great American would not assert, or had waived, any contractual limitation period in the Policy.

42. Rather, Great American's letter merely argued that there was no "loss" under the terms of the Policy.

43. The Policy, however, does not define the term "loss."

44. Any ambiguity as to the definition of the term "loss" must be liberally construed most favorably to the Insured.

45. Under any reasonable definition of the term "loss," Millennium suffered an insured "loss" equal to or exceeding the full amount of the Claim.

46. The position taken by Great American in the letter to justify paying only a small portion of Millennium's Claim was unreasonable and asserted in bad faith.

47. Great American first referenced a purported contractual limitation period in a letter sent, again through counsel, on or around January 31, 2020, in response to a letter from Millennium disagreeing with Great American's position.

48. Though the January 31, 2020 letter did reference a purported limitation period, it did not do so as a basis for denying liability or coverage. Indeed, the letter expressly stated that "GAIC is not disputing that Merdis unjustly and criminally enriched himself," and the letter re-asserted Great American's offer to pay $379,638.87 under the Claim. Great American does not and has never asserted that it is not liable whatsoever to Millennium. Great American to this day has acted in a manner inconsistent with any contractual limitation period that could operate as a defense to liability or coverage.

49. To this day, Great American has never offered any justification for failing to pay the amount that even Great American does not dispute is owing to Millennium under the Policy ($379,638.87).

## COUNT I
### (Breach of Contract)

50. Millennium incorporates by reference the factual allegations in Paragraph 1 through 49 as if such allegations were stated verbatim herein.

51. The Policy is a valid insurance agreement entered into by Great American, the insurer, and Millennium, the insured. Millennium and its various affiliates/subsidiaries were insureds under the Policy.

52. Millennium performed all of its obligations pursuant to the Policy by paying all insurance premiums, and Millennium fulfilled all of its contractual obligations and any and all conditions precedent to asserting these claims against Great American.

53. At the time of tender of the Claim, Great American had a coverage obligation to Millennium pursuant to the Policy.

54. Great American materially breached the Policy by, inter alia, refusing to cover the Claim which was properly tendered to Great American by Millennium and which falls squarely within the grants of coverage and is not otherwise excluded by the terms of the Policy.

55. As a direct and proximate result of Great American's aforementioned breach, Millennium has suffered damages in excess of $1,954,329.13, to be proven at trial.

WHEREFORE, M&C Holdings Delaware Partnership, M&C Hotel Interests, Inc., M&C Management Services (USA), Inc., CDL Hotels (USA), Inc., and RHM-88, LLC pray that judgment be entered in their favor and against Great American in an amount equal to or exceeding $1,954,329.13, plus pre-judgment interest and interest on the judgment at the highest rate permitted by applicable law, and such other and further relief as this Court deems just and proper.

## COUNT II
### (Bad Faith Denial of Coverage)

56. Millennium incorporates by reference the factual allegations in Paragraphs 1 through 49 as if such allegations were stated verbatim herein.

57. Great American exercised bad faith, and did not exercise good faith, in its processing of the Claim and refusal to pay the full amount of the Claim.

58. As above, though Great American received documents conclusively showing that Insured suffered an actual, out-of-pocket loss in the full amount of the Claim, Great American nonetheless refused to pay the full amount of the Claim.

59. Great American's investigation did not uncover any evidence that any part of Millennium's claim did not constitute "loss."

60. Nonetheless, Great American claimed, without justification, that the vast majority of Millennium's claim did not constitute "loss."

61. Great American's refusal to pay the full amount of the Claim was not predicated upon circumstances that furnished a reasonable justification for such refusal.

62. Great American has also never provided any justification for failing to make interim payments of any part of the $379,638.87 that Great American now admits is covered by the Policy. Great American's failure to make these payments, which it admits it is liable for, within a reasonable timeframe after Millennium provided its proof of loss also lacked reasonable justification.

63. Great American willfully failed to ascertain a reasonable basis to delay payment of this part of the Claim.

64. Great American willfully failed to ascertain a reasonable basis to refuse to pay the full amount of the Claim.

65. Great American's conduct was willful, wanton, and in knowing disregard of Millennium's rights.

66. As such, Great American has acted in bad faith in denying coverage for the Claim.

WHEREFORE, M&C Holdings Delaware Partnership, M&C Hotel Interests, Inc., M&C Management Services (USA), Inc., CDL Hotels (USA), Inc., and RHM-88, LLC pray that judgment be entered in their favor and against Great American in the amount of $1,954,329.13, plus consequential damages, reasonable attorney's fees, pre-judgment interest, and interest on the judgment at the highest rate permitted by applicable law, and such other and further relief as this Court deems just and proper.

## COUNT III
### (Declaratory Relief)

67. Millennium incorporates by reference the factual allegations in Paragraphs 1 through 49 as if such allegations were stated verbatim herein.

68. There presently is an actual, genuine, and existing controversy between Millennium and Great American, namely whether Great American has a coverage obligation under the Policy arising out of the Claim.

69. As set forth above, Great American has failed to acknowledge its obligation to cover the full amount of the Claim. Great American has segregated the Claim into two categories: (1) funds that were paid to the Fictitious Agencies for services that were not rendered by anyone, and (2) funds that were paid to the Fictitious Agencies for services that were rendered to Millennium not by the Fictitious Agencies, but unaffiliated, legitimate third party travel agencies.

70. Both categories of funds were transferred from Millennium to the Fictitious Agencies as a result of and as intended by the dishonest acts of Merdis.

71.     According to Great American, however, the latter category of false claims is covered only if Millennium can prove that it paid both the Fictitious Agencies and a legitimate third-party travel agency for the same services.  Under this theory, if there is no proof of double payment, there is no "loss."

72.     Great American's position is incorrect.  Millennium is entitled to a declaration that the Policy covers all funds that were fraudulently transferred to the Fictitious Agencies, full stop.

73.     Each cent transferred to the Fictitious Entities was the property of Millennium, not any third party.  Monies transferred by Millennium and included in the Claim were not held on the behalf of, or in trust for, any third parties.  Nor were these monies earmarked for any particular purpose.  At all relevant times, Millennium held title to the transferred funds that constitute the Claim.

74.     Simply put, Merdis stole $1,954,329.13 in funds that were held in Millennium bank accounts for Millennium to use for any and all of its general business purposes.  When those funds were transferred as the direct result of Merdis' dishonest acts, Millennium suffered an irrevocable loss of its property.  It is irrelevant to the coverage question whether Millennium did or did not transfer other funds that Merdis did not steal to some other third party that did not commit fraud against Millennium.

75.     The Policy merely requires Millennium to show "loss."

76.     As the Policy does not define the term "loss," this term must be liberally construed most favorably to Millennium.

77.     There is no policy limitation or exclusion for "bookkeeping" loss in the Policy language.

78. There is no policy limitation or exclusion that permits the Insurer to credit against the Insured's claim alleged funds that were allegedly not paid to third parties as a consequence of a dishonest act.

79. Accordingly, proof that Merdis' dishonest acts caused Millennium to transfer $1,954,329.13 in funds that otherwise would not have been transferred, standing alone, establishes "loss", and triggers Great American's obligation to pay Millennium an amount equal to every penny of this amount.

80. Great American disagrees with this position and refuses to pay the full amount of the Claim.

81. Inasmuch as an actual and present controversy exists concerning the parties' respective rights and obligations under the Policy, Millennium is entitled to a judicial determination of its rights and obligations pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure.

WHEREFORE, M&C Holdings Delaware Partnership, M&C Hotel Interests, Inc., M&C Management Services (USA), Inc., CDL Hotels (USA), Inc., and RHM-88, LLC seek a judgment in their favor declaring that Great American is obligated to cover the Claim; and such other relief as the Court deems equitable and just.

## **JURY TRIAL DEMANDED**

Plaintiffs request a jury trial on all questions so triable.

| | |
|---|---|
| Dated: February 13, 2020 | Respectfully submitted, |
| | |
| | */s/ Kimberly E. Ramundo* |
| | Kimberly E. Ramundo (0066570) |
| | Emily G. Montion (0093625) |
| | THOMPSON HINE LLP |
| | 312 Walnut Street |
| | Suite 1400 |
| | Cincinnati, Ohio 45202 |
| | T: 513-352-6656 |
| | F: 513-241-4771 |
| | Kim.Ramundo@thompsonhine.com |
| | Emily.Montion@thompsonhine.com |
| | |
| | Daniel A. Dorfman (*pro hac vice* motion forthcoming) |
| | David J. Ogles (*pro hac vice* motion forthcoming) |
| | FOX SWIBEL LEVIN & CARROLL LLP |
| | 200 W. Madison Street |
| | Suite 3000 |
| | Chicago, Illinois 60606 |
| | 312-224-1200 |
| | ddorfman@foxsswibel.com |
| | dogles@foxswibel.com |
| | |
| | *Trial Attorneys for M&C Holdings Delaware Partnership, M&C Hotel Interests, Inc., M&C Management Services (USA), Inc., CDL Hotels (USA), Inc., and RHM-88, LLC* |