# EXHIBIT A



Your Great American Insurance Policy

GREAT AMERICAN
INSURANCE GROUP

Fidelity / Crime

CrimeInsurance.com

©2015 Great American Insurance Company is an equal opportunity provider. 301 E. Fourth Street, Cincinnati, OH 45202. 0790FIC-B (4/15)

There are over **3,000** property and casualty insurance companies in the United States.

Only **50** are included on the Ward's 50 List for safety, consistency and performance.

Only **5** have been rated "A" or better by A.M. Best for over 100 years.

Only **2** are on both lists.

**Great American Insurance Company is 1 of the two.**

The numbers tell the story.

**GREATAMERICAN®**
INSURANCE GROUP

GreatAmericanInsuranceGroup.com

Source: Ward Group®, 2014 Ward's 50 Property and Casualty Companies, and A.M. Best®. Great American Insurance Company is rated "A+"(Superior) by A.M. Best® as of March 20, 2015. 0790FIC-B (4/15)

**IMPORTANT  NOTICE
FIDELITY  CRIME  DIVISION  CLAIMS**


**Should  this  account  have  a  potential  claim  situation,  please  contact:**


**Fidelity  &  Crime  Claims  Department
Great  American  Insurance  Group
Five  Waterside  Crossing
Windsor,  CT  06095**


**(860)  298-7330
(860)  688-8188  fax**


**CrimeClaims@gaig.com**

SP 00 01 (Ed. 04 12)

| | |
|---|---|
| **Policy No.** | SAA 5245001 13 00 |

# CRIME PROTECTION POLICY DECLARATIONS

| **Item 1. NAMED INSURED AND ADDRESS:** | **Item 2. POLICY PERIOD:** |
|---|---|
| M&C Holdings Delaware Partnership<br>See IL7125<br>Millennium Hotels and Resorts<br>Corporate Office 1345 28th Street<br>Boulder, CO 80302 | 12:01 A.M. Standard Time at the address of the Named Insured shown at left<br>From     05/31/2017   To     05/31/2018 |

Insurance is afforded by:

Great American Insurance Company

(a capital stock corporation, hereinafter called the Company)

### Item 3. INSURING AGREEMENTS, LIMITS OF INSURANCE AND DEDUCTIBLES

| Insuring Agreement | Limits of Insurance Per Occurrence | Deductible Amount Per Occurrence |
|---|---|---|
| 1.  Employee Dishonesty | $         10,000,000 | $         250,000 |
| 2.  Forgery or Alteration | $         10,000,000 | $         250,000 |
| 3.  Inside the Premises | $         10,000,000 | $         250,000 |
| 4.  Outside the Premises | $         10,000,000 | $         250,000 |
| 5.  Computer Fraud | $         10,000,000 | $         250,000 |
| 6.  Money Orders and Counterfeit Paper Currency | $         10,000,000 | $              500 |
| If added by Endorsement, Insuring Agreement(s): | | |
| 8. Funds Transfer Fraud | $         10,000,000 | $         250,000 |
| 9. Fraudulently Induced Transfers | $          5,000,000 | $         250,000 |
| Credit, Debit, Charge Card Forgery | $         10,000,000 | $                0 |
| Guests' Property | $            250,000 | $         100,000 |

If "Not Covered" is inserted above opposite any specified Insuring Agreement, or if no amount is inserted, such Insuring Agreement and any other reference thereto in this Policy shall be deemed to be deleted.

### Item 4. ENDORSEMENTS FORMING PART OF THIS POLICY WHEN ISSUED

See Form IL8801

### Item 5. CANCELLATION OF PRIOR INSURANCE

By acceptance of this Policy you give us notice cancelling prior policy Nos.

SAA 5245001 12

Case: 1:20-cv-00121-SJD-KLL Doc #: 1-1 Filed: 02/13/20 Page: 6 of 56  PAGEID #: 21

# CRIME PROTECTION POLICY

## TABLE OF CONTENTS

A. **CONSIDERATION CLAUSE**................................................................................6

B. **INSURING AGREEMENTS**

    1. **Employee Dishonesty**...........................................................................6

    2. **Forgery or Alteration**.............................................................................6

    3. **Inside the Premises**..............................................................................7

    4. **Outside the Premises**...........................................................................7

    5. **Computer Fraud**...................................................................................7

    6. **Money Orders and Counterfeit Paper Currency**..................................7

C. **DEFINITIONS**

    1. **Banking premises**................................................................................7

    2. **Cash**....................................................................................................8

    3. **Counterfeit**..........................................................................................8

    4. **Custodian**...........................................................................................8

    5. **Employee**............................................................................................8

    6. **Employee Benefit plan(s)**....................................................................8

    7. **Forgery**...............................................................................................8

    8. **Messenger**..........................................................................................8

    9. **Money**.................................................................................................9

    10. **Occurrence**.........................................................................................9

    11. **Other property**....................................................................................9

    12. **Payment order**....................................................................................9

    13. **Premises**.............................................................................................9

    14. **Robbery**..............................................................................................9

    15. **Safe Burglary**......................................................................................9

Copyright, The Surety and Fidelity Association of America, 2012
(Page 2 of 20)

16.  **Securities**......................................................................................................................9

17.  **Security procedure**.......................................................................................................10

18.  **Theft**...............................................................................................................................10

19.  **Watchperson**.................................................................................................................10

D.  **EXCLUSIONS**

    **Applicable to All Insuring Agreements, Except as Indicated**

1.  **Acts Committed by You or Your Partners**.................................................................10

2.  **Acts of Employees, Directors, Trustees or Representatives**..................................10

3.  **Fire**.................................................................................................................................10

4.  **Governmental Action**...................................................................................................10

5.  **Indirect Loss**.................................................................................................................10

6.  **Legal Expenses**............................................................................................................11

7.  **Nuclear Chemical or Biological**..................................................................................11

8.  **War and Similar Actions**..............................................................................................11

9.  **Confidential Information**..............................................................................................11

10.  **Data Breach Costs**......................................................................................................11

    **Applicable to Specific Insuring Agreements**

1.  **Under Insuring Agreement 1**

    **Employee Canceled Under Prior Insurance**...........................................................11

2.  **Under Insuring Agreements 1 and 5**

    **Inventory Shortages**.................................................................................................11

3.  **Under Insuring Agreements 3 and 4**

    **Accounting or Arithmetical Errors or Omissions**.................................................12

    **Money Operated Devices**........................................................................................12

    **Transfer or Surrender of Property**.........................................................................12

    **Vandalism**..................................................................................................................12

4.  **Under Insuring Agreement 4**

    **Motor Vehicles or Equipment and Accessories**...................................................12

   5.  **Under Insuring Agreements 3, 4 and 6**

      Exchanges or Purchases.................................................................................... 12

      Voluntary Parting of Title to or Possession of Property................................... 12

   6.  **Under Insuring Agreement 5**

      Failure to Follow Security Procedures............................................................. 13

      Debit and Credit Cards..................................................................................... 13

**E.  CONDITIONS**

  **Applicable to All Insuring Agreements**

   1.  **Cancellation**.......................................................................................................... 13

   2.  **Changes**................................................................................................................. 13

   3.  **Concealment, Misrepresentation or Fraud**........................................................ 13

   4.  **Consolidation and Merger**................................................................................... 14

   5.  **Deductible**.............................................................................................................. 14

   6.  **Discovery of Loss**................................................................................................. 14

   7.  **Duties in the Event of Loss**.................................................................................. 14

   8.  **Employee Benefit Plan(s)**..................................................................................... 15

   9.  **Extended Period to Discover Loss**...................................................................... 15

  10.  **Joint Insured**........................................................................................................ 15

  11.  **Legal Action Against Us**...................................................................................... 16

  12.  **Liberalization**........................................................................................................ 16

  13.  **Limit of Insurance**................................................................................................ 16

  14.  **Loss Covered Under More Than One Coverage**.................................................. 16

  15.  **Non-Cumulation of Limit of Insurance**................................................................ 16

  16.  **Other Insurance**.................................................................................................... 16

  17.  **Ownership of Property, Interests Covered**.......................................................... 16

  18.  **Records**................................................................................................................. 17

  19.  **Recoveries**............................................................................................................ 17

  20.  **Territory**................................................................................................................ 17

Copyright, The Surety and Fidelity Association of America, 2012

**21.   Transfer of Your Rights and Duties Under This Policy**..........................................................................17

**22.   Transfer of Your Rights of Recovery Against Others to Us**.....................................................................17

**23.   Valuation - Settlement**................................................................................................................................17

**Applicable to Specific Insuring Agreements**

  1.   **Insuring Agreement 1**

         **Cancellation as to Any Employee**.......................................................................................................19

  2.   **Insuring Agreement 2**

         **Deductible**..............................................................................................................................................19

         **Facsimile Signatures**...........................................................................................................................19

         **Proof of Loss**........................................................................................................................................19

         **Territory**................................................................................................................................................19

  3.   **Insuring Agreements 3 and 4**

         **Special Limit of Insurance for Specified Property**...........................................................................19

         **Duties in the Event of Loss**................................................................................................................20

  4.   **Insuring Agreement 5**

         **Special Limit of Insurance for Specified Property**...........................................................................20

         **Duties in the Event of Loss**................................................................................................................20

          **Territory**..............................................................................................................................................20

  5.   **Insuring Agreement 6**

         **Duties in the Event of Loss**................................................................................................................20

Copyright, The Surety and Fidelity Association of America, 2012

## CRIME PROTECTION POLICY

Throughout this Policy the words "you" and "your" refer to the Insured(s) shown in the Declarations. The words "we," "us" and "our" refer to the Company providing this insurance. Read the entire Policy carefully to determine rights, duties and what is or is not covered. Words and phrases defined in the Policy are in **bold** type.

## A. CONSIDERATION CLAUSE

In return for the payment of the premium, and subject to the Declarations, Insuring Agreements, Definitions, Exclusions, Conditions and other terms of this Policy, we will pay for loss covered by an Insuring Agreement of this Policy that you sustain resulting directly from acts committed or events occurring at any time and discovered by you during the Policy Period shown in the Declarations or during the period of time provided in the Extended Period to Discover Loss, Condition **E.9.**

## B. INSURING AGREEMENTS

### 1. Employee Dishonesty

We will pay for loss resulting directly from dishonest acts committed by an employee, whether identified or not, acting alone or in collusion with other persons, with the manifest intent to:

**a.** Cause you to sustain loss; and

**b.** Obtain an improper financial benefit for:

**(1)** the **employee**; or

**(2)** any person or organization intended by the **employee** to receive that benefit.

As used in this Insuring Agreement an improper financial benefit does not include any employee benefits received in the course of employment, including: salaries, commissions, fees, bonuses, promotions, awards, profit sharing or pensions.

### 2. Forgery or Alteration

**a.** We will pay for loss resulting directly from **forgery** or alteration of checks, drafts, promissory notes, or similar written promises, orders, or directions to pay a sum certain in **money** that are:

**(1)** made or drawn by or drawn upon you;

**(2)** made or drawn by one acting as your agent;

or that purport to have been so made or drawn.

**b.** If you are sued for refusing to pay any instrument covered in paragraph **2.a.** on the basis that it has been forged or altered, and you have our written consent to defend against the suit, we will pay for any reasonable legal expenses that you incur and pay in that defense. The amount that we will pay for such legal expenses is in addition to the Limit of Insurance applicable to this Insuring Agreement.

Copyright, The Surety and Fidelity Association of America, 2012

3. **Inside the Premises**

   **a.** We will pay for loss of **cash** and **securities** inside the **premises** or **banking premises** resulting directly from **theft**, disappearance or destruction. Provided, however, in the case of **theft**, the **theft** was committed by a person physically present in the **premises** or **banking premises** at the time of loss of such **cash** or **securities**.

   **b.** We will pay for loss of, and loss from damage to, **other property:**

      **(1)** inside the **premises** resulting directly from an actual or attempted **robbery** of a **custodian;** or

      **(2)** inside the **premises** in a safe or vault, resulting directly from an actual or attempted **safe burglary.**

   **c.** We will pay:

      **(1)** for loss from damage to the **premises** or its exterior; or

      **(2)** for loss of, and loss from damage to, a locked safe, vault, cash register, cash box or cash drawer located in the **premises;**

   resulting directly from an actual or attempted **theft, robbery** or **safe burglary,** if you are the owner of the **premises** or are liable for damage to it.

4. **Outside the Premises**

   We will pay for loss of, and loss from damage to, **cash, securities** and **other property** outside the premises while in the care and custody of a **messenger** or armored motor vehicle company:

   **a.** For **cash** and **securities** resulting from **theft,** disappearance or destruction; and

   **b.** For **other property** resulting from actual or attempted **robbery**.

5. **Computer Fraud**

   We will pay for loss resulting directly from the use of any computer to impersonate you, or your authorized officer or **employee**, to gain direct access to your computer system, or to the computer system of your financial institution, and thereby fraudulently cause the transfer of **money**, **securities** or **other property** from your **premises** or **banking premises** to a person, entity, place or account outside of your control.

6. **Money Orders and Counterfeit Paper Currency**

   We will pay for loss resulting directly from your having accepted in good faith and in the regular course of business, in exchange for merchandise, **money** or services:

   **a.** Money orders issued by any post office, express company or bank in the United States or Canada that are not paid upon presentation; or

   **b.** **Counterfeit** United States or Canadian paper currency;

## C. DEFINITIONS

1. **Banking premises** means the interior of that portion of any building occupied by a financial institution with which you have an account or which has custody of your **money** or **securities**.

Copyright, The Surety and Fidelity Association of America, 2012

2. **Cash** means United States or Canadian bills and coins in current use and having a face value that are accepted by the United States or by the government of Canada as legal tender for the payment of debts.

3. **Counterfeit** means an imitation of an actual valid original which is intended to deceive and to be taken as the original.

4. **Custodian** means you, any of your partners or any **employee** while having care and custody of property inside the **premises**, excluding any person while acting as a **watchperson** or janitor.

5. **Employee** means:

   **a.** Any natural person:

   **(1)** while in your service or for 30 days after termination of service; and

   **(2)** whom you compensate directly by salary, wages or commissions; and

   **(3)** whom you have the right to direct and control while performing services for you.

   **b.** Any natural person who is furnished temporarily to you to:

   **(1)** substitute for a permanent **employee** as defined in **(a)** above who is on leave; or

   **(2)** meet seasonal or short-term workload conditions;

   while that person is subject to your direction and control and performing services for you excluding, however, any such person while having care and custody of property outside the **premises**.

   **c.** Any natural person who is:

   **(1)** a trustee, officer, employee, administrator or manager, except an administrator or manager who is an independent contractor, of any **employee benefit plan(s)** insured under this insurance; and

   **(2)** your director or trustee while that person is handling **funds** or **other property** of any **employee benefit plan(s)** insured under this insurance.

   **d.** **Employee** does not mean any:

   **(1)** agent, broker, person leased to you by a labor leasing firm (except when furnished on a temporary basis under the circumstances set forth in Definition **5.b.**), factor, commission merchant, consignee, independent contractor or representative of the same general character; or

   **(2)** director or trustee except while performing acts within the scope of the usual duties of an employee.

6. **Employee benefit plan(s)** means any welfare or pension benefit plan listed in the Declarations that is subject to the Employee Retirement Income Security Act of 1974 (ERISA).

7. **Forgery** means the signing of the name of another person or organization with intent to deceive; it does not mean a signature which consists in whole or in part of one's own name signed with or without authority, in any capacity, for any purpose.

8. **Messenger** means you, any of your partners or **employees** while having care and custody of property outside the **premises**.

9. **Money** means:

    **a.** **Cash;**

    **b.** Demand and savings deposits at financial institutions; and

    **c.** Travelers checks, register checks and money orders held for sale to the public.

10. **Occurrence** means:

    **a.** As respects Insuring Agreement **1.,** all loss or losses caused by, or involving, any one **employee,** acting alone or in collusion with others.

    **b.** As respects Insuring Agreement **2.,** all loss or losses caused by any person or in which that person is involved, whether the loss involves one or more instruments.

    **c.** As respects all other Insuring Agreements, all loss or losses caused by:

        **(1)** any number of acts, involving one person whether acting alone or in collusion with others;

        **(2)** any number of acts involving a group of persons acting together; or

        **(3)** an act or event, or any number of related acts or events, not involving any identifiable person.

11. **Other property** means any tangible property other than **money** and **securities** that has intrinsic value but does not include any property excluded under this insurance.

12. **Payment order** means an instruction of a sender to a receiving bank, transmitted orally, electronically, or in writing, to pay, or to cause another bank to pay, a fixed or determinable amount of money to another person.

13. **Premises** means the interior of that portion of any building you occupy in conducting your business.

14. **Robbery** means the taking of property from the care and custody of a person by one who has:

    **a.** Caused or threatened to cause that person bodily harm; or

    **b.** In the presence of that person, caused or threaten to cause bodily harm to someone else.

15. **Safe burglary** means the taking of:

    **a.** Property from within a locked safe or vault by a person unlawfully entering the safe or vault as evidenced by marks of forcible entry upon its exterior; or

    **b.** A safe or vault on the premises by a person without your permission.

16. **Securities** mean negotiable and nonnegotiable instruments or contracts representing either **money** or property and includes:

    **a.** Tokens, tickets, revenue and other stamps (whether represented by actual stamps or unused value in a meter) in current use; and

    **b.** Evidences of debt issued in connection with credit or charge cards, which cards are not issued by you;

but does not include **money.**

17. **Security procedure** means a procedure established by agreement of the Insured and its customer or financial institution for the purpose of **(i)** verifying that a **payment order** is that of the Insured, or **(ii)** detecting error in the transmission or the content of the **payment order** or communication. A **security procedure** may require the use of algorithms or other codes, identifying words or numbers, encryption, callback procedures, or similar security devices.

18. **Theft** means any act of stealing.

19. **Watchperson** means any person you retain specifically to have care and custody of property on the **premises** and who has no other duties.

## D. EXCLUSIONS Applicable to All Insuring Agreements, Except as Indicated

We will not pay for loss as specified below:

1. **Acts Committed by You or Your Partners**

   Loss resulting from any dishonest act committed by you or any of your partners whether acting alone or in collusion with other persons.

2. **Acts of Employees, Directors, Trustees or Representatives**

   We will not pay for loss resulting from any dishonest act committed by any of your **employees**, directors, trustees or authorized representatives:

   **a.** Acting alone or in collusion with other persons; or

   **b.** While performing services for you or otherwise;

   except when covered under Insuring Agreement **1.**

3. **Fire**

   Loss from damage to the **premises** resulting from fire, however caused.

4. **Governmental Action**

   Loss resulting from seizure or destruction of property by order of governmental authority.

5. **Indirect Loss**

   Loss that is an indirect result of any act or **occurrence** covered by this Policy including, but not limited to, loss resulting from:

   **a.** Your inability to realize income that you would have realized had there been no loss;

   **b.** Payment of damages of any type for which you are legally liable unless you establish that the act or acts that gave rise to the damages involved conduct which caused a covered loss of **money**, **securities** or **other property** which was in your custody and control and for which you were responsible prior to the loss; or

   **c.** Payment of costs, fees or other expenses you incur in establishing either the existence or the amount of loss under this insurance.

Copyright, The Surety and Fidelity Association of America, 2012

6. **Legal Expenses**

   Expenses related to any legal action, except when covered under Insuring Agreement **2.**

7. **Nuclear Chemical or Biological**

   Loss resulting from nuclear reaction, nuclear radiation or radioactive, chemical or biological contamination, or any related act or incident.

8. **War and Similar Actions**

   Loss resulting from war, whether or not declared, warlike action, insurrection, rebellion or revolution, or any related act or incident.

9. **Confidential Information**

   Loss resulting from the theft, disappearance, destruction or disclosure of confidential information including, but not limited to, trade secrets, personal information, customer lists and intellectual property. For purposes of Insuring Agreement **5**, confidential information cannot itself be the **other property** transferred, but a loss otherwise covered under Insuring Agreement **5** shall not be excluded by the fact that confidential information was used to gain access to your computer system or to the computer system of your financial institution, in order to cause the fraudulent transfer.

10. **Data Breach Costs**

    Expenses related to your obligations to comply with federal and state privacy laws and Payment Card Industry Data Security Standards (if applicable) arising from a data security breach, including, but not limited to, expenses related to notifying affected individuals when the affected individual's personally identifiable financial or medical information was stolen, accessed, downloaded or misappropriated while in your care, custody or control, forensic audit expenses and fines and penalties.

**Applicable to Specific Insuring Agreements**

We will not pay for loss as specified below:

1. **Under Insuring Agreement 1**

   **Employee Canceled Under Prior Insurance**

   Loss caused by any **employee** of yours, or predecessor in interest of yours, for whom similar prior insurance has been canceled and not reinstated since the last such cancellation.

2. **Under Insuring Agreements 1 and 5**

   **Inventory Shortages**

   Loss, or that part of any loss, the proof of which as to its existence or amount is dependent upon:

   **a.**  An inventory computation; or

   **b.**  A profit and loss computation.

Copyright, The Surety and Fidelity Association of America, 2012

3. **Under Insuring Agreements 3 and 4**

   a. **Accounting or Arithmetical Errors or Omissions**

   Loss resulting from accounting or arithmetical errors or omissions.

   b. **Money Operated Devices**

   Loss of property contained in any **money** operated device unless the amount of **money** deposited in it is recorded by a continuous recording instrument in the device.

   c. **Transfer or Surrender of Property**

   **(1)** loss of property after it has been transferred or surrendered to a person or place outside **the premises** or **banking premises:**

      **(i)** on the basis of unauthorized instructions; or

      **(ii)** as a result of a threat to do:

         **(a)** bodily harm to any person; or

         **(b)** damage to any property.

   **(2)** But, this exclusion does not apply under Insuring Agreement **4.** to loss of **money, securities** and **other property** while outside the **premises** or **banking premises** in the care and custody of a **messenger** if you:

      **(i)** had no knowledge of any threat at the time the conveyance began; or

      **(ii)** had knowledge of a threat at the time the conveyance began, but the loss was not related to the threat.

   d. **Vandalism**

   Loss from damage to any safe, vault or other property, or to the premises or its exterior, by vandalism or malicious mischief.

4. **Under Insuring Agreement 4**

   **Motor Vehicles or Equipment and Accessories**

   Loss of motor vehicles, trailers or semi-trailers or equipment and accessories attached to them.

5. **Under Insuring Agreements 3 and 4**

   a. **Exchanges or Purchases**

   Loss resulting from the giving or surrendering of property in any exchange or purchase.

   b. **Voluntary Parting of Title to or Possession of Property**

   Loss resulting from your, or anyone acting on your express or implied authority, being induced by any dishonest act to part voluntarily with title to or possession of any property.

Copyright, The Surety and Fidelity Association of America, 2012

6. **Under Insuring Agreement 5**

   a. **Failure to Follow Security Procedures**

      (1) loss resulting from your failure to follow **security procedures** agreed to in writing with your customer or your financial institution;

      (2) loss that would have been avoided if you had accepted and followed commercially reasonable **security procedures** that your financial institution made available for your account or accounts involved in the loss; or

      (3) loss resulting from your failure to comply with **security procedures** that you represented to us you would follow.

   b. **Debit and Credit Cards**

      Loss resulting from the use or purported use of credit, debit, charge, access, convenience, or other cards.

## E. CONDITIONS

**Applicable to All Insuring Agreements**

1. **Cancellation**

   a. The first Named Insured shown in the Declarations may cancel this Policy by mailing or delivering to us advance written notice of cancellation.

   b. We may cancel this Policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

      (1) 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

      (2) 30 days before the effective date of cancellation if we cancel for any other reason.

   c. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

   d. Notice of cancellation will state the effective date of cancellation. The Policy Period will end on that date.

   e. If this Policy is canceled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

   f. If notice is mailed, proof of mailing will be sufficient proof of notice.

2. **Changes**

   This Policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized on behalf of all insureds to agree with us on changes in the terms of this Policy. If the terms are changed, the changes will be shown in an endorsement issued by us and made a part of this Policy.

3. **Concealment, Misrepresentation or Fraud**

   This Policy is void in any case of fraud by you as it relates to this Policy at any time. It is also void if any insured, at any time, intentionally conceals or misrepresents a material fact concerning:

Copyright, The Surety and Fidelity Association of America, 2012

    **a.** This insurance;

    **b.** The covered property;

    **c.** Your interest in the covered property; or

    **d.** A claim under this insurance.

**4. Consolidation and Merger**

If through consolidation or merger with, or purchase or acquisition of assets or liabilities of, some other entity any additional persons become **employees** or you acquire the use and the control of any additional **premises:**

    **a.** You must give us written notice and obtain our written consent to extend this Policy to such additional **employees** or **premises**. We may condition our consent upon payment of an additional premium; but

    **b.** For the first 60 days after the effective date of such consolidation, merger or purchase or acquisition of assets or liabilities, any insurance afforded for **employees** or **premises** also applies to these additional **employees** or **premises** for acts committed or events occurring within said 60 day period.

**5. Deductible**

    **a.** We will not pay for loss in any one **occurrence** unless the amount of loss exceeds the Deductible Amount shown in the Declarations. We then will pay the amount of loss in excess of the Deductible Amount, up to the Limit of Insurance. In the event more than one Deductible Amount could apply to the loss, only the highest Deductible Amount will be applied.

    **b.** For losses covered under Insuring Agreement **1.** you must:

        **(1)** give us notice as soon as possible even though the loss falls entirely within the Deductible Amount; and

        **(2)** upon our request, give us a statement describing the loss.

    **c.** The deductible does not apply to loss sustained by any **employee benefit plan(s).**

**6. Discovery of Loss**

Discovery of loss occurs when you first become aware of facts which would cause a reasonable person to assume that a loss covered by this Policy has been or will be incurred, even though the exact amount or details of the loss may not then be known.

Discovery also occurs when you receive notice of an actual or potential claim against you alleging facts that if true would constitute a covered loss under this insurance.

**7. Duties in the Event of Loss**

After you discover a loss or a situation that may result in a loss you must:

    **a.** Notify us as soon as possible;

    **b.** Submit to examination under oath at our request and give us a signed statement of your answers;

    **c.** Give us a detailed, sworn proof of loss within 120 days; and

    **d.** Cooperate with us in the investigation and settlement of any claim.

8. **Employee Benefit Plan(s)**

   a.  If any **employee benefit plan(s)** is insured jointly with any other entity under this insurance, you or the plan administrator must select a Limit of Insurance for Insuring Agreement **1.** that is sufficient to provide a Limit of Insurance for each plan that is at least equal to that required if each plan were separately insured.

   b.  If the first Named Insured is an entity other than a plan, any payment we make to that Insured for loss sustained by any plan will be held by that Insured for the use and benefit of the plan(s) sustaining the loss.

   c.  If two or more plans are insured under this insurance, any payment we make for loss:

      **(1)** sustained by two or more plans; or

      **(2)** of commingled **funds** or **other property** or two or more plans;

      that arises out of one **occurrence**, is to be shared by each plan sustaining loss in the proportion that the Limit of Insurance required for each such plan bears to the total of those limits.

9. **Extended Period to Discover Loss**

   a.  We will pay for loss that you sustained prior to the effective date of termination or cancellation of this insurance, which is discovered by you

      **(1)** within 60 days following the date of termination or cancellation; and

      **(2)** as respects any **employee benefit plan(s),** within one year following the date of termination or cancellation.

   b.  However, this extended period to discover loss terminates immediately upon the effective date of any other insurance obtained by you replacing in whole or in part the insurance afforded by this Policy whether or not such insurance provides coverage for loss sustained prior to its effective date.

10. **Joint Insured**

   a.  The first Named Insured shown in the Declarations is responsible for the payment of all premiums and will be the payee for any return premiums we pay.

   b.  If more than one Insured is named in the Declarations, the first named Insured will act for itself and for every other Insured for all purposes related to this insurance. If the first named Insured ceases to be covered, then the next named Insured will become the first named Insured.

   c.  If any Insured or partner or officer of that Insured has knowledge of any information relevant to this insurance, that knowledge is considered knowledge of every Insured.

   d.  An **employee** of any Insured is considered to be an **employee** of every Insured.

   e.  If this Policy or any of its coverage is canceled or terminated as to any Insured, Condition **E.9.** Extended Period to Discover Loss applies separately to that Insured.

   f.  We will not pay more for loss sustained by more than one Insured than the amount we would pay if all the loss had been sustained by one Insured.

**11. Legal Action Against Us**

You may not bring any legal action against us involving loss:

   **a.**  Unless you have complied with all the terms of this Policy; and

   **b.**  Until 90 days after you have filed proof of loss with us; and

   **c.**  Unless brought within 2 years from the date you discover the loss.

**12. Liberalization**

If we adopt any revision that would broaden the coverage under this Policy without additional premium within 45 days prior to or during the policy period, the broadened coverage will immediately apply to this insurance.

**13. Limit of Insurance**

The most we will pay for loss in any one **occurrence** is the applicable Limit of Insurance shown in the Declarations.

**14. Loss Covered Under More Than One Coverage**

If two or more coverages of this Policy apply to the same loss, we will pay the lesser of:

   **a.**  The actual amount of loss; or

   **b.**  The highest single Limit of Insurance applicable to those coverages.

**15. Non-Cumulation of Limit of Insurance**

Regardless of the number of years this Policy remains in force or the number of premiums paid, no Limit of Insurance cumulates from year to year or Policy Period to Policy Period.

**16. Other Insurance**

   **a.**  This Policy does not apply to loss recoverable or recovered under other insurance or indemnity. However, if the limit of the other insurance or indemnity is insufficient to cover the entire amount of the loss, this Policy will apply to that part of the loss, other than that falling within any Deductible Amount, not recoverable or recovered under the other insurance or indemnity. However, this Policy will not apply to the amount of loss that is more than the applicable Limit of Insurance shown in the Declarations.

   **b.**  Under Insuring Agreement **4.**, we will pay only for the amount of loss that you cannot recover:

      **(1)**  under your contract with the armored motor vehicle company; and

      **(2)**  from any insurance or indemnity carried by, or for the benefit of customers of, the armored motor vehicle company.

**17. Ownership of Property, Interests Covered**

The property covered under this Policy is limited to property:

   **a.**  That you own or hold; or

   **b.** That is owned and held by someone else under circumstances that made you responsible for the property prior to, and independent of, the loss.

However, this Policy is for your benefit only. It provides no rights or benefits to any other person or organization.

**18. Records**

You must keep records of all covered property so we can verify the amount of any loss.

**19. Recoveries**

   **a.** Recoveries, whether effected by you or us, shall be applied, net of the expense of such recovery, in the following manner and order:

      **(1)** to the satisfaction of your loss which would otherwise have been paid under this Policy but for the fact that it is in excess of the Limit of Insurance and the Deductible Amount, if any;

      **(2)** then to us, until we are reimbursed for the settlement made;

      **(3)** then to you, until you are reimbursed for that part of the loss equal to the Deductible Amount, if any.

      **(4)** then to you for any loss not covered by this Policy.

   **b.** Recoveries do not include any recovery from insurance, suretyship, reinsurance, security or indemnity taken for our benefit.

   **c.** If original securities are recovered after duplicates of such securities have been issued, the original securities shall be surrendered to us.

**20. Territory**

This Policy covers only acts committed or events occurring within the United States of America, U.S. Virgin Islands, Puerto Rico or Canada. In addition, under Insuring Agreement **1.,** we will pay for loss caused by any **employee** while temporarily outside of said territories for a period of not more than 90 days.

**21. Transfer of Your Rights and Duties Under This Policy**

Your rights and duties under this Policy may not be transferred without our written consent except in the case of death of an individual Named Insured. If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

**22. Transfer of Your Rights of Recovery Against Others to Us**

You must transfer to us all your rights of recovery against any person or organization for any loss you sustained and for which we have paid or settled. You also must do everything necessary to secure those rights and do nothing after loss to impair our actual or potential rights of recovery.

**23. Valuation - Settlement**

   **a.** Subject to the applicable Limit of Insurance provision we will pay for:

      **(1)** loss of **money** but only up to and including its face value. We may, at our option, pay for loss of **money** issued by any country other than the United States of America:

Copyright, The Surety and Fidelity Association of America, 2012

   **(i)** at face value in the **money** issued by that country; or

   **(ii)** in the United States of America dollar equivalent determined by the rate of exchange on the day the loss was discovered.

  **(2)** loss of **securities** but only up to and including their value at the close of business on the day the loss was discovered. We may, at our option:

   **(i)** pay the value of such **securities**, or replace them in kind, in which event you must assign to us all your rights, title and interest in and to those **securities**; or

   **(ii)** pay the cost of any Lost Securities Bond required in connection with issuing duplicates of the **securities**. However, we will be liable only for the payment of so much of the cost of the bond as would be charged for a bond having a penalty not exceeding the lesser of the:

    **(a)** value of the **securities** at the close of business on the day the loss was discovered; or

    **(b)** limit of Insurance.

  **(3)** loss of, or loss from damage to, **other property** or loss from damage to the **premises** or its exterior for the replacement cost of the property without deduction for depreciation. However, we will not pay more than the least of the following:

   **(i)** the Limit of Insurance applicable to the lost or damaged property;

   **(ii)** the cost to replace the lost or damaged property with property;

    **(a)** of comparable material and quality; and

    **(b)** used for the same purpose; or

   **(iii)** the amount you actually spend that is necessary to repair or replace the lost or damaged property.

  **(4)** we will not pay on a replacement cost basis for any loss or damage:

   **(i)** until the lost or damaged property actually is repaired or replaced; and

   **(ii)** unless the repairs or replacement are made as soon as reasonably possible after the loss or damage.

  If the lost or damaged property is not repaired or replaced, we will pay on an actual cash value basis.

 **b.** We may, at our option, pay for loss of, or loss from damage to, property other than **money**:

  **(1)** in the **money** of the country in which the loss occurred; or

  **(2)** in the United States of America dollar equivalent of the **money** of the country in which the loss occurred determined by the rate of exchange on the day the loss was discovered.

 **c.** Any property that we pay for or replace becomes our property.

**Applicable to Specific Insuring Agreements**

1. **Insuring Agreement 1**

   **Cancellation as to Any Employee**

   Coverage under this Policy is canceled as to any **employee**:

   **a.** Immediately upon discovery by:

   **(1)** you; or

   **(2)** any of your partners, officers or directors not in collusion with the employee; or

   **(3)** as to **Employee benefit plan(s)**, any trustee, fiduciary or plan administrator not in collusion with the **employee**;

   of any dishonest act committed by that **employee** whether before or after becoming employed by you. Whether such discovery occurs prior to or after commencement of this Policy, there is no coverage under Insuring Agreement **1.** for loss or losses resulting from acts committed by that **employee** after the date of such discovery.

   **b.** On the date specified in a notice mailed to you. That date will be at least 30 days after the date of mailing. The mailing of notice to you at the last mailing address known to us will be sufficient proof of notice. Delivery of notice is the same as mailing.

2. **Insuring Agreement 2**

   **a.** **Deductible**

   The deductible does not apply to legal expenses paid under Insuring Agreement **2.**

   **b.** **Facsimile Signatures**

   We will treat a reproduction of a handwritten signature the same as handwritten signature. An electronic or digital signature is not treated as a reproduction of a handwritten signature.

   **c.** **Proof of Loss**

   You must include with your proof of loss any instrument involved in that loss, or, if that is not possible, an affidavit setting forth the amount and an explanation of the absence of the instrument.

   **d.** **Territory**

   We will cover loss you sustain anywhere in the world. The Territory Condition 20 does not apply to Insuring Agreement **2.**

3. **Insuring Agreements 3 and 4**

   **a.** **Special Limit of Insurance for Specified Property**

   We only will pay up to $5,000 for any one **occurrence** of loss of, and loss from damage to:

    **(1)** precious metals, precious or semi-precious stones, pearls, furs, or completed or partially completed articles made of or containing such materials that constitute the principal value of such articles; or

    **(2)** manuscripts, drawings, or records of any kind or the cost of reconstructing them or reproducing any information contained in them.

**b. Duties in the Event of Loss**

If you have reason to believe that any loss of, or loss from damage to, **money, securities** or **other property** involves a violation of law, you must notify the police.

**4. Insuring Agreement 5**

**a. Special Limit of Insurance for Specified Property**

We only will pay up to $5,000 for any one **occurrence** of loss of, and loss from damage to, manuscripts, drawings, or records of any kind or the cost of reconstructing them or reproducing any information contained in them.

**b. Duties in the Event of Loss**

If you have reason to believe that any loss of, or loss from damage to, **money, securities** or **other property** involves a violation of law, you must notify the police.

**c. Territory**

We will cover loss you sustain anywhere in the world. The Territory Condition 20 does not apply to Insuring Agreement **5**.

**5. Insuring Agreement 6**

**a. Duties in the Event of Loss**

You must notify the police if you have reason to believe you have accepted a **counterfeit** money order or **counterfeit** paper currency.


**IN WITNESS WHEREOF, we have caused this Policy to be executed on the Declarations Page.**

Copyright, The Surety and Fidelity Association of America, 2012

R * B0 * 05/31/2017 * SAA 5245001 13 00     Great American Insurance Company
087334

IL 88 01 (Ed. 11 85)

# FORMS AND ENDORSEMENTS SCHEDULE

It is hereby understood and agreed the following forms and endorsements are attached to and are a part of this policy:

|  | Form and Edition | Date Added * or Date Deleted | Form Description |
|---|---|---|---|
| 1. | SP0001 04-12 | | Crime Protection Policy Declaration |
| 2. | SE0041 08-15 | | Include Coverage For Funds Transfer Fraud |
| 3. | SE0167 08-15 | | Include Coverage For Fraudulently Induced Transfers |
| 4. | SE0003 03-00 | | Joint Insured - As provided in the submission |
| 5. | SE0011 03-00 | | Include Specified Non-Compensated Officers As Employees |
| 6. | SE0040 04-12 | | Amend Territorial Limits |
| 7. | SE0086 03-00 | | Colorado Changes-Cancellation And Nonrenewal |
| 8. | SE0161 07-13 | | Amend Confidential Information And Data Breach Costs Exclusions |
| 9. | IL8802 11-85 | | BusinessPRO General Endorsement - Counterfeit Currency Revision |
| 10. | IL8802 11-85 | | BusinessPRO General Endorsement - Omnibus Named Insured with Joint Venture |
| 11. | SA7002 08-12 | | Partial Waiver Or Loss Reporting Endorsement |
| 12. | SA7005 08-12 | | Credit, Debit Or Charge Card Forgery |
| 13. | SA7015 08-12 | | Prior Loss In Excess Of Endorsement |
| 14. | SA7062 08-12 | | Amend Valuation - Settlement |
| 15. | SA7065 08-12 | | Definition Of Employee |
| 16. | SA7066 08-12 | | Revision To Discovery Of Loss |
| 17. | SA7067 08-12 | | Revision To Duties In The Event Of Loss |
| 18. | SA7068 08-12 | | Expense Coverage |
| 19. | SA7069 08-12 | | Guests' Property |
| 20. | SA7072 01-14 | | Revision To Insuring Agreement(s) |
| 21. | SA7073 08-12 | | Revision To Consolidation And Merger |
| 22. | SA7074 08-12 | | Cancellation/Non-Renewal By Us |
| 23. | SA7150 06-14 | | Virtual Or On-Line Peer To Peer Mediums Of Exchange Exclusion |
| 24. | IL7125 03-11 | | Named Insured Endorsement |

IL 88 01 (Ed. 11/85)                    (Page 1 of 2)

Case: 1:20-cv-00121-SJD-KLL Doc #: 1-1 Filed: 02/13/20 Page: 26 of 56   PAGEID #: 41
087334

|     | Form and Edition | | Date Added *<br>or<br>Date Deleted | Form Description |
| --- | --- | --- | --- | --- |
| 25. | IL7324 | 08-12 | | Economic And Trade Sanctions Clause |
| 26. | IL7268 | 09-09 | | In Witness Clause |

* If not at inception

IL 88 01 (Ed. 11/85)                    (Page 2 of 2)

R * B0 * 05/31/2017 * SAA 5245001 13.00     Great American Insurance Company

SE 00 41 (Ed. 08/15)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**INCLUDE COVERAGE FOR FUNDS TRANSFER FRAUD**

---

| | |
|---|---|
| **A. COVERAGE** | We will pay for loss of **funds** resulting directly from a **fraudulent instruction** directing a financial institution to transfer, pay or deliver **funds** from your **transfer account**. |

---

| | |
|---|---|
| **B. LIMIT OF INSURANCE AND DEDUCTIBLE** | The Limit of Insurance and Deductible Amount are shown in the Declarations. |

---

**C. DEFINITIONS**

As used in this Insuring Agreement:

**a. Fraudulent instruction** means:

   (1) A **payment order** transmitted to a financial institution which purports to have been transmitted by you, but which was in fact fraudulently transmitted by someone else without your knowledge or consent; or

   (2) A written instruction (other than those described in Insuring Agreement 2.) which purports to have been issued by you and which was sent or transmitted to a financial institution to establish the conditions under which transfers are to be initiated by such financial institution through an electronic funds transfer system and which was issued, forged or altered without your knowledge or consent.

**b. Transfer account** means:

   An account maintained by you at a financial institution from which you can initiate the transfer, payment or delivery of **funds**:

   (1) By means of a **payment order** communicated directly to the financial institution or through an electronic funds transfer system; or

   (2) By means of written instructions (other than those described in Insuring Agreement 2.) establishing the conditions under which such transfers are to be initiated by such financial institution through an electronic funds transfer system.

**c. Funds** means **money** and **securities**.

---

Crime Protection Policy Insuring Agreement 8
Copyright, The Surety & Fidelity Association of America, 2015

SE 01 67 (Ed. 08/15)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**INCLUDE COVERAGE FOR FRAUDULENTLY INDUCED TRANSFERS**

| | |
|---|---|
| **A. COVERAGE** | We will pay for loss of **funds** resulting directly from a **fraudulently induced transfer** causing the **funds** to be transferred from your **premises** or **banking premises** to a person, entity, place or account outside of your control. |
| **B. LIMIT OF INSURANCE AND DEDUCTIBLE** | The Limit of Insurance and Deductible Amount are shown in the Declarations. |
| **C. DEFINITIONS** | As used in this Insuring Agreement only:<br><br>**a. Fraudulently induced transfer** means:<br><br>A transfer resulting from a **payment order** transmitted from you to a financial institution, or a check drawn by you, made in good faith reliance upon an electronic, telefacsimilie, telephone or **written** instruction received by you from a person purporting to be an **Employee**, your customer, a **Vendor** or an **Owner** establishing or changing the method, destination or account for payments to such **Employee**, customer, **Vendor** or **Owner** that was in fact transmitted to you by someone impersonating the **Employee**, customer, **Vendor** or **Owner** without your knowledge or consent and without the knowledge or consent of the **Employee**, customer, **Vendor** or **Owner**.<br><br>**b. Vendor** means any entity or person that provides or has provided goods or services to you pursuant to a preexisting agreement.<br><br>**c. Funds** means **money** and **securities**.<br><br>**d. Employee** means any natural person:<br><br>   **(1)** While in your service or for 30 days after termination of service;<br><br>   **(2)** Whom you compensate directly by salary, wages or commissions; and<br><br>   **(3)** Whom you have the right to direct and control while performing services for you.<br><br>**e. Owner** means a natural person having an ownership interest in you. |
| **D. CONDITIONS** | It is a condition precedent to coverage under this Insuring Agreement that before forwarding the **payment order** to a financial institution or issuing the check, you verified the authenticity and accuracy of the instruction received from the purported **Employee**, customer, **Vendor** or **Owner**, including routing numbers and account numbers, by calling, at a predetermined telephone number, the **Employee**, customer, **Vendor** or **Owner** who purportedly transmitted the instruction to you, or by some other out of band verification procedure approved in writing by us, and you preserved a contemporaneous **written** record of this verification. |

SE 00 03 (Ed. 03 00)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## JOINT INSURED

This Endorsement modifies Crime Protection Policy No.  SAA 5245001 13 00.

**1.**  This endorsement applies only to:

Insuring Agreement  1    ( X )

Insuring Agreement  2    ( X )

Insuring Agreement  3    ( X )

Insuring Agreement  4    ( X )

Insuring Agreement  5    ( X )

Insuring Agreement  6    ( X )

Insuring Agreement  7    (   )

Insuring Agreement  8    ( X )

The following is/are added as Named Insured:

Item 1 includes Insuring Agreement 9.

AIRCOA Equity Interests, Inc.
AIRCOA GP Corporation
AIRCOA Hospitality Services, Inc.
AIRCOA Hotel Partners, L.P. closed 12/29 /10
AIRCOA, LLC
Anchorage-Lakefront Limited Partnership
Aurora Inn Operating Partnership, L.P.
Avon Wynfield Inn, Ltd.
Avon Wynfield LLC
Biltmore Place Operations Corp.
Bostonian Hotel Limited Partnership, LP
Buffalo Operating Partnership, L.P.
Buffalo RHM Operating LLC
CDL (New York) LLC
CDL (NYL) Limited
CDL Hotels USA, Inc.
CDL West 45th Street LLC
Chicago Hotel Holdings, Inc.
Cincinnati Regal S.I. LLC (terminated 12.27.2007)
Cincinnati S.I. Co.
Durham Operating Partnership, L.P.
Five Star Assurance, Inc.
Four Peaks Management Company
Fourwinds Operating LLC (terminated 7.10.12)

Copyright, The Surety Association of America, 1999

The following is/are added as Named Insured:

Fourwinds Operating Partnership, L.P. (terminated 7.10.12)
Gateway Holdings Corporation I
Gateway Hotel Holdings, Inc.
Gateway Regal Holdings LLC
Gateway SPE, Inc. (terminated 12.27.2007)
Guardian Santa Fe Partnership
Lakeside GP Corporation (terminated 12.27.2007)
Lakeside Operating Partnership, L.P.
M&C Colorado Hotel Corporation
M&C Crescent Corporation (formed 6.23.2008)
M&C Crescent Interests, LLC
M&C Holdings Delaware Partnership
M&C Holdings, LLC
M&C Hotel Interests, Inc. (f/k/a RHS)
M&C Management Services (USA), Inc.
M&C New York (Times Square), LLC
M&C New York (Times Square) Eat I LLC
M&C New York (Times Square) Eat II LLC
McCormick Ranch Operating Partnership, L.P.
MHM, Inc.
Millennium Bostonian, Inc. (f/k/a RHI Boston, Inc.)
New Plaza Associates Liquidating Trust Trustee LLC (terminated 11.14.2011)
New York Sign LLC
Park Plaza Hotel Corporation
Regal Grand Avenue, Inc. (terminated 12.27.2007)
Regal Grand Holdings Corporation I
Regal Grand Holdings Corporation II (terminated 12.27.2007)
Regal Grand SPE, Inc. (terminated 12.27.2007)
Regal Harvest House GP Corporation (terminated 12.31.2007)
Regal Harvest House LP
Regal Hotel Management, Inc.
Regal Hotels International (USA), Inc. (terminated 12.28.2007)
RHH Operating LLC
RHI Boston Holdings Corporation I
RHI Boston Holdings Corporation II
RHI Boston, Inc. (n/k/a Millennium Bostonian, Inc.)
RHM Aurora LLC
RHM Holdings Corporation I
RHM Management LLC
RHM Ranch LLC
RHM SPE, Inc. (terminated 12.27.2007)
RHM Wynfield LLC
RHM-88, LLC
Richfield Holdings Corporation I
Richfield Holdings Corporation II (formed 1998)
Richfield Holdings, Inc.
Richfield SPE, Inc. (terminated 12.27.07)
S.S. Restaurant Corporation
St. Louis Operating, Inc.
Sunnyvale Partners, Ltd.
The El Dorado Partnership, Ltd.
Trimark Hotel Corporation
WHB Biltmore LLC

Case: 1:20-cv-00121-SJD-KLL Doc #: 1-1 Filed: 02/13/20 Page: 31 of 56  PAGEID #: 46

The following is/are added as Named Insured:

WHB Corporation
Wynfield GP Corporation
Wynfield One, Ltd.


Any Employee Benefit Plan, sponsored or approved by the Named Insured, that is required to be bonded under the Employee Retirement Income Security Act of 1974.

The following is/are deleted as Named Insured:

N/A

R * B0 * 05/31/2017 * SAA 5245001 13 00     Great American Insurance Company
087334

SE 00 11 (Ed. 03 00)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

INCLUDE SPECIFIED NON-COMPENSATED OFFICERS AS EMPLOYEES

This Endorsement modifies Crime Protection Policy No.  SAA 5245001 13 00.

**1.** **Employee** also includes your following non-compensated officers:

    All

Copyright, The Surety Association of America, 1999

SE 00 11 (Ed. 03/00)

(Page 1 of 1 )

R * B0 * 05/31/2017 * SAA 5245001 13.00     Great American Insurance Company
087334

SE 00 40 (Ed. 04 12)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## AMEND TERRITORIAL LIMITS

1.  The Territory condition of the Conditions Applicable to All Insuring Agreements is amended by adding or deleting the territories indicated only for purposes of the listed Insuring Agreements.

| Insuring Agreement(s) | Add Territory(ies) | Delete Territory(ies) |
|---|---|---|
| 1,2,3,4,5,6, 8 and 9 | Worldwide | |

**SE 00 86**
(Ed. 03 00)

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## COLORADO CHANGES - CANCELLATION AND NONRENEWAL

This Endorsement modifies Crime Protection Policy No.   SAA 5245001 13 00                    .

1.    Paragraph **b.** of Condition **1. Cancellation** of the Conditions Applicable to All Insuring Agreements is replaced by the following:

**b.**    **(1)**    If this policy has been in effect for less than 60 days, we may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   **(a)**    10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   **(b)**    30 days before the effective date of cancellation if we cancel for any other reason.

   **(2)**    If this policy has been in effect for 60 days or more, or is a renewal of a policy we issued, we may cancel this policy by mailing through first-class mail to the first Named Insured written notice of cancellation including the actual reason.

   **(a)**    At least 10 days before the effective date of cancellation, if we cancel for nonpayment of premium; or

   **(b)**    at least 45 days before the effective date of cancellation if we cancel for any other reason.

We may cancel this policy based on one or more of the following reasons:

**(a)**    nonpayment of premium;

**(b)**    a false statement knowingly made by the Insured on the application for insurance; or

**(c)**    a substantial change in the exposure or risk other than that indicated in the application and underwritten as of the effective date of the policy unless the first Named Insured has notified us of the change and we accept such change.

2.    The following condition is added and supersedes any other provision to the contrary:

**NONRENEWAL**

If we decide not to renew this policy, we will mail through first-class mail to the first Named Insured shown in the Declarations written notice of the nonrenewal at least 45 days before the expiration date, or its anniversary date if it is a policy written for a term of more than one year or with no fixed expiration date. If notice is mailed, proof of mailing will be sufficient proof of notice.

Copyright, The Surety Association of America, 1999

Case: 1:20-cv-00121-SJD-KLL Doc #: 1-1 Filed: 02/13/20 Page: 35 of 56  PAGEID #: 50

087334

3.    The following condition is added:

**INCREASE IN PREMIUM OR DECREASE IN COVERAGE**

We will not increase the premium unilaterally or decrease the coverage benefits on renewal of this policy unless we mail through first-class mail written notice of our intention, including the actual reason; to the first Named Insured's last mailing address known to us, at least 45 days before the effective date.

Any decrease in coverage during the policy term must be based on one or more of the following reasons:

**a.**    nonpayment of premium;

**b.**    a false statement knowingly made by the Insured on the application for insurance; or

**c.**    a substantial change in the exposure or risk other than indicated in the application and underwritten as of the effective date of the policy unless the first Named Insured has notified us of the change and we accept such change.

If notice is mailed, proof of mailing will be sufficient proof of notice.

SE 01 61 (Ed. 07 13)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

AMEND CONFIDENTIAL INFORMATION AND DATA BREACH COSTS EXCLUSIONS

This endorsement modifies Crime Protection Policy No. SAA 5245001 13 00.

1.  The **Confidential Information** exclusion of the Exclusions Applicable to All Insuring Agreements is deleted and replaced by the following:

**Confidential Information**

Loss resulting from the theft, disappearance, destruction or disclosure of confidential information including, but not limited to, trade secrets, intellectual property, personal customer information, customer lists, and a customer's personally identifiable financial or medical information, whether such confidential information is owned by you or held by you in any capacity including concurrently with another person. For purposes of Insuring Agreement 5, confidential information cannot itself be the **other property** transferred, but a loss otherwise covered under Insuring Agreement 5 shall not be excluded by the fact that confidential information was used to gain access to your computer system, or to the computer system of your financial institution, in order to cause the fraudulent transfer.

2.  The **Data Breach Costs** exclusion of the Exclusions Applicable to All Insuring Agreements is deleted and replaced by the following:

**Data Breach Costs**

Expenses related to your obligations arising from a data security breach, including, but not limited to, forensic audit expenses, fines, penalties, expenses to comply with federal and state laws and Payment Card Industry Data Security Standards (if applicable) and expenses related to notifying affected individuals when the affected individuals' personally identifiable financial or medical information was stolen, accessed, downloaded or misappropriated while in the insured's care, custody or control.

Copyright, The Surety and Fidelity Association of America, 2013
(Page 1 of 1)

R * B0 * 05/31/2017 * SAA 5245001 13 00     Great American Insurance Company

087334

IL 88 02 (Ed. 11 85)

# GENERAL ENDORSEMENT

## Counterfeit Currency Revision

Endorsement No. 1

Section B.6.b is deleted and replaced with:

b. Any Counterfeit Currency of any country;

IL 88 02 (Ed. 11 85)

# GENERAL ENDORSEMENT

## Omnibus Named Insured with Joint Venture

ENDORSEMENT NO. 2

IT IS AGREED THAT:

1. ITEM 1, NAME OF INSURED, OF THE DECLARATIONS PAGE IS HEREBY AMENDED TO INCLUDE THE FOLLOWING:

M&C HOLDINGS DELAWARE PARTNERSHIP

AND ANY SUBSIDIARY OR CORPORATION NOW EXISTING OR HEREINAFTER CONSTITUTED, CREATED OR ACQUIRED BY THE NAMED INSURED AND IN WHICH THE INSURED HAS A MAJORITY INTEREST, SUBJECT TO INSURING AGREEMENT A.

IF THE INSURED'S OWNERSHIP INTEREST IN A JOINT VENTURE IS 50% OR LESS, COVERAGE IS RESTRICTED TO THE INSURED'S OWNERSHIP INTEREST ONLY UNLESS:

A. THE INSURED HAS THE LARGEST OWNERSHIP OF ANY JOINT VENTURE PARTNER AND

B. THE INSURED IS CONTRACTUALLY OBLIGATED TO MANAGE AND SUPERVISE THE OPERATION AND

C. THE INSURED'S POLICIES AND PROCEDURES ARE ESTABLISHED AND ADHERED TO FOR OPERATION OF THE JOINT VENTURE.

IF ALL THREE CONDITIONS A., B. AND C. ABOVE APPLY, THEN THE JOINT VENTURE WILL BE COVERED 100%.

SA 70 02 (Ed. 08 12)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**ENDORSEMENT NO.** 3

PARTIAL WAIVER OF LOSS REPORTING ENDORSEMENT

This Endorsement modifies Crime Protection Policy No. SAA 5245001 13 00

This Endorsement amends **E. Conditions**:

Section **E.7. Duties in the Event of Loss** is amended as follows:

The first sentence is deleted in its entirety and replaced with the following:

"After you discover a loss or situation that may result in a loss that is likely to exceed $125,000, you must:"

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, limitations or provisions of the attached Policy other than as above stated.

R * B0 * 05/31/2017 * SAA 5245001 13 00     Great American Insurance Company

087334

SA 70 05 (Ed. 08 12)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**ENDORSEMENT NO.** 4

## CREDIT, DEBIT OR CHARGE CARD FORGERY

This Endorsement modifies Crime Protection Policy No. SAA 5245001 13 00

**1.** Coverage under Insuring Agreement **2:**

( X ) includes

( ) is limited to

written instruments required in conjunction with any credit, debit or charge card issued to you or any **employee** for business purposes.

**2.** The most we will pay in any one **occurrence** is the following:

| Limit of Insurance | Deductible |
|---|---|
| $ 10,000,000 | $ 0 |

which is part of, not in addition to, the Limit of Insurance for Insuring Agreement **2** shown in the Declarations.

**3.** The following Additional Exclusion is added:

**Non-Compliance With Credit, Debit or Charge Card Issuer's Requirements**

We will not pay for loss arising from any credit, debit or charge card if you have not complied fully with the provisions, conditions or other terms under which the card was issued.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, limitations or provisions of the attached Policy other than as above stated.

SA 70 15 (Ed. 08 12)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**ENDORSEMENT NO.** 5

## PRIOR LOSS IN EXCESS ENDORSEMENT

This Endorsement modifies Crime Protection Policy No. SAA 5245001 13 00

This Endorsement amends **E. Conditions**:

Section **E.1.a. Applicable to Specific Insuring Agreements** is deleted in its entirety and replaced with the following:

**Applicable to Specific Insuring Agreements**

**1. Insuring Agreement 1**

**Cancellation as to any Employee**

Coverage under this Policy is canceled as to any **employee**:

**a.** Immediately upon discovery by:

   **(1)** you; or

   **(2)** any of your partners, officers or directors not in collusion with the **employee**; or

   **(3)** as to **Employee benefit plan(s)**, any trustee, fiduciary or plan administrator not in collusion with the **employee**;

   of any dishonest act committed by that **employee** (1) in your service or otherwise during the term of employment by you, or (2) before becoming employed by you provided that such conduct involved loss of **money**, **securities** or **other property** valued at $10,000 or more.

At the sole discretion of the Company, coverage may be extended to any individual upon written application of the Insured and consent given by the Company.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, limitations or provisions of the attached policy other than as above stated.

R * B0 * 05/31/2017 * SAA 5245001 13 00    Great American Insurance Company
087334

SA 70 62 (Ed. 08 12)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**ENDORSEMENT NO.** 6

**AMEND VALUATION - SETTLEMENT**

This Endorsement modifies Crime Protection Policy No. SAA 5245001 13 00

This Endorsement amends **E. CONDITIONS:**

Section **E.23.a.(1) Valuation - Settlement** is amended to include:

**(iii)** If a foreign currency is involved by the Insured under this Policy, the Company shall not be liable for more than the United States dollar value of said foreign currency based on the rate of exchange as published in the Wall Street Journal on the day of the discovery of the loss.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, limitations or provisions of the attached Policy other than as above stated.

Case: 1:20-cv-00121-SJD-KLL Doc #: 1-1 Filed: 02/13/20 Page: 43 of 56  PAGEID #: 58

SA 70 65 (Ed. 08 12)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**ENDORSEMENT NO.** 7

DEFINITION OF EMPLOYEE

This Endorsement modifies Crime Protection Policy No. SAA 5245001 13 00

This Endorsement amends **C. DEFINITIONS:**

Section **C.5. Employee** is amended to include:

**Employees** on military leave;

Former **employees** up to 60 days after termination, except if terminated for reasons of fraud or dishonesty;

Independent contractors but solely while such independent contractors are performing acts within the scope of the usual duties of an **employee** for or on behalf of the Insured, and while under the supervision, direction and control of the Insured;

Temporary **employees** while working on behalf of the Insured on their premises;

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, limitations or provisions of the attached Policy other than as above stated.

SA 70 66 (Ed. 08 12)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**ENDORSEMENT NO.** 8

**REVISION TO DISCOVERY OF LOSS**

This Endorsement modifies Crime Protection Policy No. SAA 5245001 13 00

This Endorsement applies to Section **E. CONDITIONS:**

Section **E.6. Discovery of Loss** is deleted in its entirety and replaced with the following:

Discovery of loss occurs when the Risk Management Department, General Counsel or Human Resources Department first become aware of the facts which would cause a reasonable person to assume that a loss covered by this Policy has been or will be incurred, even though the exact amount or details of the loss may not be known.

Discovery also occurs when the Risk Management Department, General Counsel or Human Resources Department receive notice of an actual or potential claim against you alleging facts that if true would constitute a covered loss under this insurance.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, limitations or provisions of the attached Policy other than as above stated.

SA 70 67 (Ed. 08 12)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**ENDORSEMENT NO.** 9

REVISION TO DUTIES IN THE EVENT OF LOSS

This Endorsement modifies Crime Protection Policy No. SAA 5245001 13 00

This Endorsement applies to Section **E. CONDITIONS:**

Section **E.7. Duties in the Event of Loss** is amended as follows:

The first sentence is deleted in its entirety and replaced with the following:

After the Risk Management Department, General Counsel or Human Resources Department discover(s) a loss or a situation that may result in a loss the Risk Management Department, General Counsel or Human Resources Department must:

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, limitations or provisions of the attached Policy other than as above stated.

SA 70 68 (Ed. 08 12)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**ENDORSEMENT NO.** 10

EXPENSE COVERAGE

This endorsement modifies Crime Protection Policy No. SAA 5245001 13 00

**Claims Expense**

The Company shall reimburse the Insured for 50% of the claims expense of the Insured on any paid claim, up to the limit of $100,000.

Claims expense means reasonable expenses incurred by the Insured in establishing the existence and amount of any direct loss covered in excess of the Deductible amount of this Policy, as stated in the Declarations. The reasonableness of such expenses shall be determined by the Company and shall not include internal corporate obligations of the Insured, such as employee wages or internal costs.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, limitations or provisions of the attached Policy other than as above stated.

SA 70 69 (Ed. 08 12)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**ENDORSEMENT NO.** 11

GUESTS' PROPERTY

This Endorsement modifies Crime Protection Policy No. SAA 5245001 13 00

**Schedule**

| ( X )   **Guests' Property - In Safe Deposit Boxes** | | |
|---|---|---|
| **Address of Premises** | **Limit of Insurance** | **Deductible Amount Per Occurrence** |
| All premises covered under this policy | $  250,000 | $  100,000 |

| ( )   **Guests' Property - Inside the Premises** | | | |
|---|---|---|---|
| **Address of Premises** | **Limit of Insurance** | | **Deductible Amount Per Occurrence** |
| | **Per Guest** | **Per Occurrence** | |
| | $ | $ | $ |

With regard to this **Guests' Property** Endorsement, the provisions of the Policy to which this Endorsement is attached apply, unless modified by this Endorsement.

1.  The following section(s) of this Insuring Agreement for which a Limit of Insurance is shown in the Schedule, is added to Section **B. Insuring Agreements**:

    a.  **Guests' Property - In Safe Deposit**

    We will pay for loss of or damage to **guests' property** for which you are legally liable while the property is in a safe deposit box inside the **premises**.

    b.  **Guests' Property - Inside the Premises**

    We will pay for loss of or damage to **guests' property** for which you are legally liable while the property is inside the **premises** or in your possession.

    If you are sued for refusing to pay for loss of or damage to **guests' property**, and you have our written consent to defend against the suit, we will pay for any reasonable legal expenses that you incur and pay in the defense. The amount that we will pay is in addition to the applicable Limit of Insurance shown in the Schedule.

2.  Section **E.13. Limit of Insurance** is replaced by the following:

Case: 1:20-cv-00121-SJD-KLL Doc #: 1-1 Filed: 02/13/20 Page: 48 of 56  PAGEID #: 63

The most we will pay for all loss resulting directly from an **occurrence** is the Limit of Insurance shown in the Schedule.

The most we will pay in the aggregate for all loss resulting directly from an **occurrence** is the Per Occurrence Limit of Insurance shown in the Schedule. The most we will pay for all loss resulting directly from an **occurrence** for any one guest, is the Per Guest Limit of Insurance shown in the Schedule.

3. Section **E.5.a. Deductible** is replaced by the following:

   We will not pay for loss resulting from an **occurrence** unless the amount of loss exceeds the Deductible Amount shown in the Schedule. We will then pay the amount of loss in excess of the Deductible Amount, up to the Limit of Insurance.

4. Under Section **D. Exclusions**:

   a. The **Acts of Employees, Directors, Trustees or Representatives** Exclusion and the **Legal Expenses** Exclusion do not apply to this Insuring Agreement.

   b. The following exclusions are added:

      This Insuring Agreement does not cover:

      (1) Loss resulting from liability you assume under any written agreement. However this exclusion does not apply under paragraph **1.b.**, to any written agreement entered into with a guest before the **occurrence** of any loss or damage that increases to an amount not exceeding $1,000 any lesser amount you may otherwise be liable for under any statute.

      (2) Loss or damage to property resulting from fire, however caused.

      (3) Under paragraph **1.b.**, loss of or damage to property resulting from the spilling, upsetting or leaking of any food or liquid.

      (4) Loss of or damage to property resulting from insects, animals, wear and tear, gradual deterioration or inherent vice.

      (5) Under paragraph **1.b.**, loss of or damage to property while in your care and custody for laundering or cleaning.

      (6) Loss resulting from your release of any other person or organization from legal liability.

      (7) Under paragraph **1.b.**, loss of or damage to samples or articles carried or held for sale or delivery after sale.

      (8) Under paragraph **1.b.**, loss of or damage to any vehicle including:

         (a) its equipment and accessories; and

         (b) any property contained in or on a vehicle.

5. Under Section **E. Conditions**:

   a. The **Records** Condition does not apply to this Insuring Agreement.

   b. The following condition is added:

      Bankruptcy or insolvency of you or your estate will not relieve us of our obligation under this Insuring Agreement.

Case: 1:20-cv-00121-SJD-KLL Doc #: 1-1 Filed: 02/13/20 Page: 49 of 56  PAGEID #: 64

    **c.** The **Ownership of Property; Interests Covered** Condition is replaced by the following:

    The property covered under this Insuring Agreement is limited to property belonging to your guests while the property is in a safe deposit box, inside the **premises** or in your possession.

    However, this Policy is for your benefit only. It provides no rights or benefits to any other person or organization, including your guest. Any claim for loss that is covered under this Insuring Agreement must be presented by you.

**6.** Under section **C. Definitions**:

    **a.** The following definition is added:

    **Guests' property** means **money, securities** and **other property** belonging to your guest.

    **b.** The definition of **premises** is replaced by the following:

    **Premises** means the interior of that portion of any building at the address shown in the Schedule that you occupy in conducting your business.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, limitations or provisions of the attached Policy other than as above stated.

SA 70 72 (Ed. 01 14)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**ENDORSEMENT NO.** 12

REVISION TO INSURING AGREEMENT(S)

This Endorsement modifies Crime Protection Policy No. SAA 5245001 13 00

Section **D.2. EXCLUSIONS, Applicable to Specific Insuring Agreements**, is amended to include:

**Applicable to Specific Insuring Agreements**

**2.   Under Insuring Agreements 1 and 5**

**Inventory Shortages**

Where the Insured establishes to our satisfaction wholly apart from such comparison that it has sustained a loss covered under the policy, and has identified the **employee** involved, then the Insured may offer its inventory records and actual physical count of inventory in support of the amount of loss claimed.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, limitations or provisions of the attached Policy other than as above stated.

Case: 1:20-cv-00121-SJD-KLL Doc #: 1-1 Filed: 02/13/20 Page: 51 of 56  PAGEID #: 66

SA 70 73 (Ed. 08 12)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**ENDORSEMENT NO.** 13

REVISION TO CONSOLIDATION AND MERGER

This Endorsement modifies Crime Protection Policy No. SAA 5245001 13 00

This Endorsement amends **E. CONDITIONS:**

Section **E.4.a. Consolidation and Merger** is deleted in its entirety and replaced with the following:

**a.** You must give us written notice and obtain our written consent to extend this Policy to such additional **employees** or **premises** for mergers/acquisitions with total assets greater than $155,000,000 regardless of the class of business. We may condition our consent upon payment of an additional premium; but

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, limitations or provisions of the attached Policy other than as above stated.

SA 70 73 (Ed. 08/12)                              (Page 1 of 1)

Case: 1:20-cv-00121-SJD-RLL Doc #: 1-1 Filed: 02/13/20 Page: 52 of 56  PAGEID #: 67

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**ENDORSEMENT NO.** 14

CANCELLATION/NON-RENEWAL BY US

This Endorsement modifies Crime Protection Policy No. SAA 5245001 13 00

This endorsement amends **E. CONDITIONS**:

Section **E.1.b. Cancellation** is deleted in its entirety and replaced with the following:

**b.** We may cancel this Policy by mailing or delivering to the first Named Insured written notice of cancellation or non-renewal at least:

**(1)** 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

**(2)** the number of days shown below before the effective date of cancellation or non-renewal if we cancel for any other reason:

Number of days: 60

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, limitations or provisions of the attached Policy other than as above stated.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**ENDORSEMENT NO.** 15

VIRTUAL OR ON-LINE PEER TO PEER MEDIUMS OF EXCHANGE EXCLUSION

This Endorsement applies to Crime Protection Policy No. SAA 5245001 13 00

The following is added to **D. EXCLUSIONS**:

**Applicable to all Insuring Agreements, Except as Indicated**

We will not pay for loss as specified below:

Loss of virtual or on-line peer to peer mediums of exchange.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, limitations or provisions of the attached Policy other than as above stated.

R * B0 * 05/31/2017 * SAA 5245001 13 00    Great American Insurance Company

087334

IL 71 25 (Ed. 03 11)

# NAMED INSURED ENDORSEMENT

It is agreed that the Named Insured shown in the Declarations is amended to read as follows:

M&C Holdings Delaware Partnership; CDL Hotels USA, Inc; M&C Hotel Interests Inc; M&C Management Services (USA), Inc. & Subsidiaries

R * B0 * 05/31/2017 * SAA 5245001 13.00    Great American Insurance Company

087334

IL 73 24 (Ed. 08 12)

**THIS ENDORSEMENT CHANGES YOUR POLICY. PLEASE READ IT CAREFULLY.**

**ECONOMIC AND TRADE SANCTIONS CLAUSE**

This insurance does not apply to the extent that trade or economic sanctions or other laws or regulations prohibit us from providing insurance.

IL 73 24 (Ed. 08/12)

Case: 1:20-cv-00121-SJD-KLL Doc #: 1-1 Filed: 02/13/20 Page: 56 of 56  PAGEID #: 71

# IN WITNESS CLAUSE

In Witness Whereof, we have caused this Policy to be executed and attested, and, if required by state law, this Policy shall not be valid unless countersigned by our authorized representative.


PRESIDENT                                    SECRETARY


Copyright Great American Insurance Co., 2009