**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**
**(at Cincinnati)**

| | |
|---|---|
| **M&C HOLDINGS DELAWARE PARTNERSHIP**, et al., | Case No. 1:20-cv-00121-SJD-KLL |
| Plaintiffs, | Judge Susan J. Dlott |
| v. | Magistrate Judge Karen L. Litkovitz |
| **GREAT AMERICAN INSURANCE COMPANY**, | |
| Defendant. | |

**DEFENDANT'S MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................... i

PRELIMINARY STATEMENT ................................................................................................1

STATEMENT OF FACTS ........................................................................................................2

    The Parties ..........................................................................................................................2

    The Policy ...........................................................................................................................2

    The Claim.............................................................................................................................3

    Millennium's Lawsuit .........................................................................................................7

ARGUMENT ............................................................................................................................7

I.        RULE 12(b)(6) STANDARD ........................................................................................7

II.      CHOICE OF LAW ANALYSIS.....................................................................................9

III.    THE COURT SHOULD DISMISS MILLENNIUM'S COMPLAINT BECAUSE GAIC CORRECTLY DETERMINED THAT FUNDS THAT MERDIS DIVERTED FROM BOOKINGS MADE BY LEGITIMATE TRAVEL AGENTS DO NOT CONSTITUTE A COVERED LOSS UNDER THE POLICY AS A MATTER OF LAW ..........................11

    A.    Count I (Breach of Contract) and Count III (Declaratory Judgment)....................11

    B.    Count II (Bad Faith Denial of Coverage) ............................................................14

IV.    THE COURT SHOULD ALSO DISMISS THE COMPLAINT ON THE GROUNDS THAT MILLENNIUM FILED SUIT MORE THAN TWO YEARS AFTER IT DISCOVERED ITS LOSS AND IS THEREFORE BARRED BY THE POLICY'S LIMITATIONS CLAUSE ...............................................................................................15

CONCLUSION........................................................................................................................19

## TABLE OF AUTHORITIES

### Cases

*Allman v. UMG Recordings*, 530 F. Supp. 2d 602 (S.D.N.Y. 2008) ............................................ 17

*American Tooling Ctr., Inc. v. Travelers Cas. & Sur. Co. of Am.*,
895 F.3d 455 (6th Cir. 2018) ................................................... 13

*Armco, Inc. v. Reliance Nat. Ins. Co.*, 19 F. Supp. 2d 807 (S.D. Ohio 1998) .............................. 18

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................................. 7

*BancInsure, Inc. v. Peoples Bank of the South*, 866 F. Supp. 2d 577 (S.D. Miss. 2012) ............. 12

*Bihn v. Fifth Third Mortg. Co.*, 980 F. Supp. 2d 892 (S.D. Ohio 2013) ........................................ 7

*Brookshire Downs at Heatherridge Condo. Assoc., Inc. v. Owners Ins. Co.*,
366 F. Supp. 3d 1224 (D. Colo. 2019) ................................................. 10, 11

*Brown v. Royal Ins. Co. of Am.*, 620 N.Y.S.2d 379 (N.Y. App. Div. 1994) ............................... 17

*Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430 (6th Cir. 2012) .................................................. 8

*Citizens Bank & Trust Co. v. St. Paul Mercury Ins. Co.*, CV305-167,
2007 WL 4973847 (S.D. Ga. Sept. 14, 2007) ................................................. 12

*Empire Blue Cross & Blue Shield v. Various Underwriters at Lloyd's*,
767 N.Y.S.2d 432 (N.Y. App. Div. 2003) .................................................. 10

*F.D.I.C. v. United Pacific Ins. Co.*, 20 F.3d 1070 (10th Cir. 1994) ............................................ 12

*First Defiance Fin. Corp. v. Progressive Cas. Ins. Co.*, 688 F.3d 265 (6th Cir. 2012) .......... 11, 13

*Friendly Farms v. Reliance Ins. Co.*, 79 F.3d 541 (6th Cir. 1996) ..................... 10, 15, 16, 17, 18

*Gehrisch v. Chubb Group of Ins. Cos.*, 645 Fed. Appx. 488 (6th Cir. 2016) ............................... 8

*Gilbert Frank Corp. v. Federal Ins. Co.*, 520 N.E.2d 512 (N.Y. 1988) .................................... 10

*JTO, Inc. v. Travelers Indem. Co. of Am.*, 242 F. Supp. 3d 599 (N.D. Ohio 2017) ...................... 8

*King v. Harwood*, 852 F.3d 568 (6th Cir. 2017) ..................................................................... 9

*Kish v. Chubb Group of Ins. Cos.*, 4:04 CV 02224, 2005 WL 1683667
(N.D. Ohio July 19, 2005) ................................................... 15, 17

*Kreipke v. Wayne State University*, 807 F.3d 768 (6th Cir. 2015) ................................................ 8

*Luis v. Zang*, 833 F.3d 619 (6th Cir. 2016) ........................................................................... 9

*Morgan Guar. Trust Co. of N.Y. v. Aetna Cas. & Sur. Co.*, 604 N.Y.S.2d 952
(N.Y. App. Div. 1993) ................................................... 16

*New England Health Care Pension v. Ernst & Young*, 336 F.3d 495 (6th Cir. 2003) ................. 8

*New York Univ. v. Continental Ins. Co.*, 662 N.E.2d 763 (N.Y. 1995) ..................................... 15

*Oak Hill Investment IV LLC v. State Farm Fire & Cas. Co.*, 15-cv-1996,
2017 WL 4286778, (N.D. Ohio Sept. 27, 2017) ......................................... 14

*Redcross v. Aetna Cas. & Sur. Co.*, 688 N.Y.S.2d 817 (N.Y. App. Div. 1999) ......................... 15

*Reynolds v. Detroit Fidelity & Sur. Co.*, 19 F.2d 110 (6th Cir. 1927) ......................................... 17

*Satyam Imports, Inc. v. Underwriters at Lloyd's via Marsh, S.A.*, 03 Civ. 43878,
2003 WL 22349668 (S.D.N.Y. Oct. 14, 2003) ................................................................ 18, 19

*Sheet Metal & Roofing Contractors' Assoc. of Miami Valley, Ohio v. Liskany*,
369 F. Supp. 662 (S.D. Ohio 1974) ........................................................................................ 17

*Spears v. St. Paul Ins. Co. (In re Ben Kennedy & Assocs., Inc.)*,
40 F.3d 318 (10th Cir. 1994) .................................................................................................. 13

*Tanksley & Assocs. v. Willard Indus., Inc.*, 961 F. Supp. 203 (S.D. Ohio 1997) .......................... 9

*Transportation Ins. Co. v. Busy Beaver Bldg. Ctrs., Inc.*,
969 F. Supp. 2d 875 (S.D. Ohio 2014) .................................................................................... 10

*Travelers Ins. Co. v. Savio*, 706 P.2d 1258 (Colo. 1985) ........................................................... 14

*United States ex. rel. Howard v. Lockheed Martin Corp.*,
499 F. Supp. 2d 972 (S.D. Ohio 2007) ...................................................................................... 8

*Wysocki v. International Business Machine Corp.* 607 F.3d 1102 (6th Cir. 2010) ......................... 9

*Zappone v. United States*, No. 3:15 CV 2135, 2016 WL 4468083 (N.D. Ohio Aug. 24, 2016),
*aff'd* 870 F.3d 551 (6th Cir. 2017), *cert. denied*, 138 S. Ct. 1303 (2018) ................................ 9

**Other Authorities**

Scott Schmookler, *The Compensability of Third-Party Losses Under Fidelity Bonds*,
7 Fidelity L.J. 115 (Oct. 2001) ............................................................................................... 12

**Rules**

Rule 12(b)(6) .............................................................................................................................. 7, 8

Rule 12(d) ................................................................................................................................... 8, 9

**Treatises**

11A Couch on Ins. § 160:60 (3d ed. Dec. 2019) ...................................................................... 12

17 Couch on Insurance § 238:11 (3d ed. Dec. 2019) ............................................................... 18

iii

Defendant Great American Insurance Company ("GAIC" or "Defendant") respectfully submits this memorandum of law in support of its motion to dismiss the Complaint herein with prejudice pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim.

## PRELIMINARY STATEMENT

GAIC, pursuant to a Crime Protection Policy (the "Policy"), insured the plaintiffs herein (collectively, "Millennium") for losses any of them might suffer as a result of an employee's dishonesty. In June of 2017, Millennium discovered and subsequently gave notice that one of its employees – Wayne Merdis – had been engaged in a fraudulent scheme since around 2001. That Merdis engaged in a fraudulent scheme is not at issue. Rather, Millennium cannot state a claim against GAIC because there is no meaningful dispute, as established by the Complaint and documents referenced therein, that Merdis enriched himself primarily by misappropriating commissions that Millennium legitimately owed to third-party travel agencies who have not sought repayment from Millennium. Accordingly, Millennium is not the party that suffered a loss as a result of the large bulk of Merdis's fraud.

But even without regard to the issue of who Merdis's real victims were, Millennium's action is plainly time barred because the Policy unambiguously states that Millennium "may not bring any legal action against [GAIC] involving loss [u]nless brought within 2 years from the date [Millennium] discover[ed] the loss." Because Millennium's proof of loss (referenced in the Complaint) stated that it discovered the loss in June of 2017, this action was filed well after the contractual limitations period to bring suit expired. And, Millennium's conclusory allegations that it was somehow misled into not protecting its right to bring suit are contradicted by not only the statements of its own attorneys, but also by virtue of the fact that it was being represented by one of the world's largest insurance brokerage and risk consulting businesses throughout GAIC's

investigation of its claim.  Accordingly, there is no information that Millennium could uncover in discovery that could support its claims for recovery, and its action should be dismissed at the pleadings stage.

## STATEMENT OF FACTS

### The Parties

Millennium and its affiliated companies own and operate premium hotels in the United States.  (CM/ECF Doc. #1 (hereafter, "Complaint") at ¶ 1).  The various entities that make up Millennium and that are named plaintiffs in this suit are organized under the laws of Delaware, and, according to the Complaint, maintain their principal places of business in Colorado.  (*Id.* ¶¶ 7-11).

GAIC is a corporation organized under the laws of Ohio and is in the business of issuing insurance policies and related insurance products.  (*See* Complaint ¶ 12).

### The Policy

GAIC issued Crime Protection Policy No. SAA 5245001-13-00 (the "Policy"), which insured Millennium for the Policy Period of May 31, 2017 through May 31, 2018.  (CM/ECF Doc. #1-1 (hereafter, "Policy") at p.1, attached as Exhibit A to the Complaint).[1]  GAIC agreed to "pay for loss covered by an Insuring Agreement of this Policy that you sustain resulting directly from acts committed or events occurring at any time and discovered by you during the Policy Period." (Policy § A).  The relevant "Insuring Agreement" here is Insuring Agreement 1 (Policy § B(1)) that applies to employee dishonesty and provides, subject to certain exceptions not relevant to GAIC's motion:

---

[1] The named insured under the Policy is M&C Holdings Delaware Partnership.  The other entities that are the plaintiffs herein are added as named insureds pursuant to Endorsement 4 of the Policy.

2

> We will pay for loss resulting directly from dishonest acts committed by an employee, whether identified or not, acting alone or in collusion with other persons with the manifest intent to:
>
> a.    Cause you to sustain a loss; and
>
> b.    Obtain an improper benefit for:
>
>     (1) the **employee**; or
>
>     (2) any person or organization intended by the **employee** to receive that benefit.[2]

The Policy places certain obligations on the Insured that are relevant here. First, the Policy requires Millennium to "keep records of all covered property so we can verify the amount of any loss." (Policy § E(18)). Second, the Policy states, in relevant part, that Millennium "may not bring any legal action against us involving loss [u]nless brought within 2 years from the date you discover the loss." (Policy §E(11)(c)).

## The Claim

Wayne Merdis was a Millennium employee from 1993 through 2017. He held the titles of Reservation Manager and Corporate Revenue Manager and was based in New York City at One UN Plaza. (*See* Millennium's Proof of Loss with exhibits omitted ("Proof of Loss"); Declaration of Daniel Lebersfeld ("Lebersfeld Declaration" or "Lebersfeld Decl." Ex. A).[3] Since about 2001, Merdis had been running a scheme in which he had formed a phony travel agency he called Annayad Travel and other related fictitious entities (collectively, "Annayad"). (Complaint ¶ 20). Having had access to Millennium's reservation booking system, Merdis caused Annayad to be falsely listed as the travel agency of record on thousands of reservations at Millennium hotels so that commissions would be paid to Annayad. (*Id.*) Millennium discovered Merdis's scheme by

---

[2] The Policy defines bolded terms.

[3] The Proof of Loss is referenced in the Complaint at paragraph 27.

no later than June 22, 2017 when he admitted its existence to senior Millennium personnel during his exit interview.  (Proof of Loss at p. 3).

Millennium's broker, Aon, provided notice of Millennium's claim to GAIC on June 23, 2017.  (Lebersfeld Decl. Ex. B).[4]  As described below, Aon, which is one of the largest insurance brokerage and risk consulting companies in the world (Lebersfeld Decl. Ex. C), assisted Millennium throughout the claims process and was often the primary point of contact between GAIC and Millennium during GAIC's investigation.

On August 31, 2018 (more than a year after it first provided notice of its claim) Millennium, through Aon, submitted its Proof of Loss, which stated that the date of discovery was "June 2017" and claimed a net loss of $1,954,329.00.  (Proof of Loss at 1).  Included among the documents that accompanied the Proof of Loss was a summary of the interview where Merdis admitted his scheme to Millennium personnel, a copy of the indictment, a spreadsheet listing payments made to Annayad and documents from the Manhattan District Attorney's office.  (*Id.*)  The documentation submitted by Millennium did not indicate whether Merdis diverted commissions that were owed to legitimate travel agents or if he inserted Annayad as the travel agent of record for reservations that had not been booked with a travel agent.

Both before and after the submission of the Proof of Loss, GAIC investigated Millennium's claim with the aid of a forensic accountant that the Complaint imprecisely describes as a "private investigator."  (Complaint ¶ 28, 40).  While the Complaint in generic fashion claims that GAIC's investigation "took an unnecessarily excessive amount of time" and involved the use of "dilatory tactics," (Complaint ¶ 28) Millennium's attorney of record in this action provided a time line of events after Millennium submitted its proof of loss.  (Lebersfeld Decl. Ex. D).  While it is not

---

[4] Millennium's notice of claim is referenced in the Complaint at paragraph 27.

necessary to examine the timeline in detail for purposes of GAIC's motion, suffice it to say it reveals that in the course of communications between February 19 and February 21, 2019, Aon had confirmed to GAIC's forensic accountant that Merdis's scheme largely involved the misappropriation of commission payments Millennium otherwise legitimately owed to third-party travel agents, although some of the bookings did not involve a legitimate travel agent.  (*Id.* at "Claim Time Line" 2/19/2019 to 2/21/2019).  Naturally, this information raised a host of concerns, including why these legitimate travel agents had never complained about commissions they did not receive and, more importantly, whether Millennium eventually paid any of the legitimate travel agents for those commissions.  (*Id.*)

GAIC attempted to answer these and other questions through October of 2019, during which time neither Millennium nor Aon, on Millennium's behalf, ever requested or inquired about the possibility of a tolling agreement.  (*See generally* Lebersfeld Decl. Ex. D at "Claim Timeline").  Ultimately, the information that Millennium was able to supply only partially answered GAIC's questions, including, how much of Millennium's claimed loss involved bookings originated by legitimate travel agents who would have been owed commissions and bookings that involved no legitimate travel agent.  (*See id.*)  The Complaint asserts that this distinction is irrelevant (Complaint ¶¶ 69-71) since, as Millennium's attorney claimed in an email dated October 10, 2019, Millennium could "elect to (i) pay the [travel agents] upon receipt of funds from [GAIC], (ii) forgive commissions, or a portion of commissions, for a period of time from the [travel agents], (iii) or any other avenue it wishes."  (Lebersfeld Decl. Ex. E.)

By letter dated December 17, 2019, GAIC, through counsel, informed Millennium that Millennium's records were only able to establish that it had suffered a covered loss of $267,035.90

against which a $250,000 deductible would apply.  (Lebersfeld Aff. Ex. F).[5]  Specifically, the letter explained that Millennium's records only allowed GAIC to determine how much of Merdis's theft came from bookings from legitimate travel agents ($1,106,865.55) and how much from Merdis creating fictitious commissions for Annayad when no legitimate travel agent was involved ($267,035.90) for the period of 2008 through 2017.  (*Id.* at 2).  By contrast, with the exception of $188.55, Millennium's records were not sufficient to enable GAIC to quantify how much Merdis was able to steal pursuant to each method for the period of 2001 through 2007 during which time Merdis misappropriated a total of $580,239.18.  (*Id.*)  GAIC's letter then explained that commissions owed to legitimate travel agents that Merdis diverted to himself were akin to an uncovered "bookkeeping loss" unless and until Millennium reimbursed the legitimate travel agents.  (*Id.* at 3).  GAIC nevertheless offered to pay a percentage of the claimed loss for the 2001 through 2007 period where Millennium's records were insufficient to establish which method Merdis used to carry out his scheme based on the percentage for the 2008 through 2017 time period and to otherwise take appropriate action if legitimate travel agents came forward to demand payment in order to settle the matter without litigation.  (*Id.* at 4).  The letter concluded with a reservation of rights that stated: "Please be aware that GAIC's reference to specific provisions of the Policy or particular case law does not, nor is it intended to, waive any of the rights or defenses GAIC may have under the terms of the Policy or at law, and GAIC explicitly reserves any and all such rights or defenses."  (*Id.*)

Millennium's counsel, through Aon, responded more than a month later by email dated January 21, 2020.  (Lebersfeld Decl. Ex. G).  While that email vigorously (but GAIC submits erroneously) disputed GAIC's legal positions, it did not dispute GAIC's version of the facts, except

---

[5] The Complaint references the December 17, 2019 letter at paragraph 41.

for raising the possibility that additional information might reveal that the legitimate travel agents were paid at some point. (*See id.*) Attached to the email was a draft complaint that Millennium's counsel stated it was prepared to file in the United States District Court for the Southern District of New York if GAIC did not pay its claim in full. (*Id.*)

On January 31, 2020, GAIC's counsel responded to the January 21 email acknowledging receipt of the draft complaint that was attached thereto and stated that any such suit would be time barred based on the two-year limitations clause contained in the Policy. (Lebersfeld Decl. Ex. H).[6] Otherwise, GAIC reiterated and further explained its interpretation of the Policy. (*Id.* at 2). The letter concluded with another full reservation of rights. (*Id.* at 4-5).

**Millennium's Lawsuit**

Millennium filed its lawsuit on February 13, 2020. Its Complaint alleges claims for breach of contract (Count I) and bad faith denial of coverage (Count II). Millennium's Complaint also asserts a count for a declaratory judgment (Count III) that the Policy covers all methods that Merdis used to commit his fraud, including when he misappropriated commissions owed to legitimate travel agents.

## ARGUMENT

### I.    RULE 12(b)(6) STANDARD

"The purpose of a Rule 12(b)(6) motion to dismiss is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true." *Bihn v. Fifth Third Mortg. Co.*, 980 F. Supp. 2d 892, 897 (S.D. Ohio 2013). The Court must treat all well pleaded and nonconclusory allegations as true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009) ("allegations [that] are conclusory [are] not entitled to be assumed true") (citation

---

[6] The January 31, 2020 letter is referenced in the Complaint at paragraph 47.

omitted). However, if the contents of a contract that is either annexed to or is referenced in the complaint contradict even well pleaded the allegations, the contract controls "because it has independent legal significance." *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 442 (6th Cir. 2012). Accordingly, courts will dismiss an insured's breach of contract and declaratory judgment claims if the policy language unambiguously supports the position of the insurer based on the allegations as pleaded in the complaint or that are established by documents the complaint references. *See Gehrisch v. Chubb Group of Ins. Cos.*, 645 Fed. Appx. 488, 495 (6th Cir. 2016) (affirming dismissal of insured's breach of contract declaratory judgment claims for failure to state a claim where policy unambiguously did not cover insured's claim for diminution in value of vehicle); *JTO, Inc. v. Travelers Indem. Co. of Am.*, 242 F. Supp. 3d 599, 603-608 (N.D. Ohio 2017) (dismissing declaratory judgment and breach of contract claims on motion for judgment on the pleadings because policy language unambiguously supported insurer's interpretation).

The Court can also consider matters of public record and the contents of written documents that are fairly referenced in Complaint so long as the nonmovant does not challenge their authenticity. *See Kreipke v. Wayne State University*, 807 F.3d 768, 774 (6th Cir. 2015). Accordingly, the Court can dismiss a claim as time barred where documents referenced in the complaint clearly establish the date of the accrual of a claim and the date on which the limitations period expires. *See New England Health Care Pension v. Ernst & Young*, 336 F.3d 495, 501-02 (6th Cir. 2003) (holding complaint time barred on Rule 12(b)(6) motion based on public records); *United States ex. rel. Howard v. Lockheed Martin Corp.*, 499 F. Supp. 2d 972, 981 (S.D. Ohio 2007) (dismissing claims as time barred on Rule 12(b)(6) motion) (Dlott, *J.*).

If the court considers "matters outside the pleadings" on a Rule 12(b)(6) motion, Rule 12(d) requires that "the motion must be treated as one for summary judgment under Rule 56" subject to

the requirement that "[a]ll parties must be given a reasonable opportunity to present all material that is pertinent to the motion."  For purposes of Rule 12(d) matters "outside of the pleadings" do not include public records or documents that are attached to or referenced in the complaint.  *See Luis v. Zang*, 833 F.3d 619, 632 (6th Cir. 2016).  Even if discovery has not commenced, the nonmovant must articulate with a sufficient degree of specificity what it might reasonably learn in discovery that could raise a disputed issue of material fact in order for the Court not to grant a motion to dismiss that is converted into a motion for summary judgment.  *See King v. Harwood*, 852 F.3d 568, 579 (6th Cir. 2017) ("A party seeking additional discovery before the court considers the opposing party's motion for summary judgment bears the burden of demonstrating why such discovery is necessary.") (citation omitted); *Wysocki v. International Business Machine Corp.* 607 F.3d 1102, 1109 (6th Cir. 2010) (affirming dismissal of complaint on conversion of 12(b)(6) motion to summary judgment motion where plaintiff did not request discovery); *Zappone v. United States*, No. 3:15 CV 2135, 2016 WL 4468083, at *3 (N.D. Ohio Aug. 24, 2016) (when 12(b)(6) motion is converted to summary judgment motion, nonmovant must "'show[] by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition'" in order to obtain discovery) (quoting Fed. R. Civ. P. 56(d)), *aff'd* 870 F.3d 551 (6th Cir. 2017), *cert. denied*, 138 S. Ct. 1303 (2018).

## II.    CHOICE OF LAW ANALYSIS

It is well established that the federal courts sitting in diversity must apply the choice of law rules of the state in which it sits.  *Tanksley & Assocs. v. Willard Indus.*, *Inc.*, 961 F. Supp. 203, 205 (S.D. Ohio 1997) (Dlott, *J.*).  Accordingly, the most significant relationship test, which Ohio state courts apply, governs this case.  *Id.*  Three states potentially have an interest in its laws being applied to this dispute: (i) Ohio, the forum state and the domicile of GAIC; (ii) Colorado, the

principal place of business of Millennium as stated in the Policy; and (iii) New York, where Merdis was located and committed his dishonest acts. Ohio law, however, will apply unless there is a true conflict between the laws of the states having an interest in the parties' dispute, and it is the burden of the party seeking to apply a different state's law to demonstrate a conflict. *Transportation Ins. Co. v. Busy Beaver Bldg. Ctrs., Inc.*, 969 F. Supp. 2d 875, 883-84 (S.D. Ohio 2014).

There appears to be no true conflict between the laws of these three jurisdictions, and hence Ohio law should generally apply. Specifically, the laws of Ohio, New York and Colorado all hold that provisions in insurance policies that shorten the period to bring suit to at least two years following the insured's discovery of a potential loss are enforceable especially when the insured is a sophisticated business concern like Millennium. *See Friendly Farms v. Reliance Ins. Co.*, 79 F.3d 541, 544-46 (6th Cir. 1996) (affirming grant of summary judgment on one year limitations clause from date of discovery of loss under Ohio law); *Empire Blue Cross & Blue Shield v. Various Underwriters at Lloyd's*, 767 N.Y.S.2d 432, 432 (N.Y. App. Div. 2003) (affirming dismissal of insured's suit based on two-year limitations clause from date of discovery under New York law); *Brookshire Downs at Heatherridge Condo. Assoc., Inc. v. Owners Ins. Co.*, 366 F. Supp. 3d 1224, 1225 (D. Colo. 2019) ("*Brookshire Downs*") (granting summary judgment in favor of insurer on two year limitations clause from date of loss). In addition, all three jurisdictions impose a high bar on the insured to argue that the insurer has waived or is estopped from relying on a limitations clause. *Friendly Farms*, 79 F.3d at 545 ("Under Ohio law, waiver of the limitations provision in an insurance policy may occur when the insurer, by its acts or declarations, evidences a recognition of liability under the policy, and the evidence reasonably shows that such expressed recognition of liability and offers of settlement have led the insured to delay in bringing an action on the insurance contract [and] the process of investigation does not constitute a waiver by the insurer.")

(cleaned up); *Gilbert Frank Corp. v. Federal Ins. Co.*, 520 N.E.2d 512, 514 (N.Y. 1988) ("Evidence of communications or settlement negotiations between an insured and its insurer either before or after expiration of a limitations period contained in a policy is not, without more, sufficient to prove waiver or estoppel."); *Brookshire Downs*, 366 F. Supp. 3d at 1231-32 (insurer's continued adjustment of claim under property insurance policy after expiration of policy's two-year suit limitations period could not reasonably lead insured to expect that insurer would not invoke limitations clause as defense).

GAIC is similarly not aware of any true conflict with respect to the issue of whether the funds Merdis diverted from legitimate travel agents to himself constitute a loss under the Policy. That question turns on the meaning of the term "loss," which is governed by generally applicable principles of contract interpretation. Nevertheless, it is common for courts interpreting crime protection policies and similar policies (often referred to as fidelity bonds or fidelity insurance policies), including courts based in Ohio, to look to out-of-state case law for guidance. *See, e.g.*, *First Defiance Fin. Corp. v. Progressive Cas. Ins. Co.*, 688 F.3d 265, 268-72 (6th Cir. 2012).

**III.** **THE COURT SHOULD DISMISS MILLENNIUM'S COMPLAINT BECAUSE GAIC CORRECTLY DETERMINED THAT FUNDS THAT MERDIS DIVERTED FROM BOOKINGS MADE BY LEGITIMATE TRAVEL AGENTS DO NOT CONSTITUTE A COVERED LOSS UNDER THE POLICY AS A MATTER OF LAW**

**A.** **Count I (Breach of Contract) and Count III (Declaratory Judgment)**

Millennium and GAIC agree that Merdis misappropriated two different types of funds: (1) commissions that Millennium paid to Merdis for hotel reservations that were not booked by a third party travel agent; and (2) commissions that Millennium paid to Merdis for reservations that were booked by legitimate third-party travel agents. (Complaint ¶ 69, 71; *see also* Lebersfeld Decl. Exs. F, H). Millennium's breach of contract and declaratory judgment claims rest on its legal position that this distinction makes no difference because "the Policy covers all funds that were fraudulently

11

transferred to [Merdis], full stop." (Complaint ¶ 72; *see also* Complaint ¶ 5; Lebersfeld Decl. Ex. G). By contrast, GAIC concluded that only the first type of commission payment is a covered loss under the Policy because the legitimate travel agents who necessarily provided value to Millennium yet were never paid were the actual victims of Merdis's fraud when he intercepted their commissions. (Lebersfeld Decl. Exs. F, H). The unambiguous policy language, case law and common sense all dictate that GAIC's interpretation of the Policy is correct as a matter of law.

As described above, Insuring Agreement 1 of the Policy states, in relevant part that: "We will pay for loss resulting directly from dishonest acts committed by an employee . . .with the manifest intent to [c]ause you to sustain a loss . . . ." (Policy § B(1)). Even though the Policy does not define the term "loss," that does not mean it is ambiguous or without meaning. Rather, the insured must, at a minimum, sustain a "pecuniary loss." 11A Couch on Ins. § 160:60 (3d ed. Dec. 2019). It follows that a "bookkeeping loss" where none of the insured's assets have been depleted as a result of employee dishonesty is not considered a covered loss under substantially similarly worded policies. *F.D.I.C. v. United Pacific Ins. Co.*, 20 F.3d 1070, 1080 (10th Cir. 1994). One example of an uncovered bookkeeping loss is where a dishonest employee uses illicitly gained funds to pay down another debt owed to the insured; the "loss" (or part of the loss) is deemed a wash and therefore considered not to have occurred. *See, e.g.*, *Citizens Bank & Trust Co. v. St. Paul Mercury Ins. Co.*, CV305-167, 2007 WL 4973847, at **3-4 (S.D. Ga. Sept. 14, 2007); *BancInsure, Inc. v. Peoples Bank of the South*, 866 F. Supp. 2d 577, 588 (S.D. Miss. 2012).

A corollary to the bookkeeping loss principle is that where a dishonest employee, in reality, misappropriates property belonging to third-parties, the insured has not suffered a loss unless and until there is at least some assurance that those third-parties can and will successfully pursue claims against the insured for compensation. *See* Scott Schmookler, *The Compensability of Third-Party*

*Losses Under Fidelity Bonds*, 7 Fidelity L.J. 115, 140-41 (Oct. 2001). *Spears v. St. Paul Ins. Co. (In re Ben Kennedy & Assocs., Inc.)*, 40 F.3d 318 (10th Cir. 1994) is on point. There, the insured was an insurance agency whose dishonest employee created his own sham insurance agency and sold fictitious insurance policies to his employer's clients, ultimately collecting more than $235,000.00 in "premiums" for himself. *Id.* at 318-19. The trustee for the insured's bankruptcy estate sought to recover the entire $100,000 limit of the policy even though the insured had only spent $20,737.52 to refund monies paid by one defrauded customer. The court held that the insured had only suffered a loss to the extent its defrauded customers actually sought repayment from the insured, noting that to rule otherwise would allow the insured to obtain a windfall. *Id.* at 319-20; *cf. American Tooling Ctr., Inc. v. Travelers Cas. & Sur. Co. of Am.*, 895 F.3d 455, 461 (6th Cir. 2018) (holding insured suffered loss as a result of being induced to wire funds owed to a vendor to an imposter where insured agreed to pay vendor half of money owed and remaining half of payment would be contingent on success of claim against insurer); *First Defiance Financial Corp.*, 688 F.3d at 268, 270 (under Ohio law, bank employee's theft of money in customer's account resulted in a loss where bank repaid customers for employee's theft).

While the fact pattern here is somewhat different, the principle applies with equal force. Specifically, the legitimate travel agents to whom Millennium owed commissions necessarily provided value to Millennium; otherwise they would not be owed commissions. Thus, when Merdis diverted monies owed to the legitimate travel agents to himself, he was stealing from uninsured third-parties rather than Millennium, just as the employee in *Spears* was stealing from uninsured third-parties. Because the legitimate travel agents have not sought payment from Millennium, it would receive those agents' services for free at GAIC's expense should Millennium's construction of the Policy prevail, which it should not. Indeed, Millennium's

13

counsel has taken the position that it can "take any other avenue it wishes" with respect to the money it seeks to recover here for services it received from the legitimate travel agents, but never paid for. (Lebersfeld Decl. Ex. E).

In sum, Millennium is correct that GAIC has acknowledged that Merdis was a Millennium employee who unjustly and criminally enriched himself. The central issue is exactly who his victims were. It is clear that legitimate travel agents who performed services for Millennium – and therefore provided value to it – were the actual victims to the extent that Merdis intercepted commissions owed to them. Accordingly, Millennium's claims for breach of contract and declaratory judgment, which are based on an untenable contrary interpretation, should be dismissed for failure to state a claim.

## B.    Count II (Bad Faith Denial of Coverage)

Millennium's bad faith claim is based on GAIC's "refus[al] to pay the full amount of the claim." (Complaint ¶ 58). Naturally, GAIC's coverage decision cannot be considered to have been made in bad faith if its coverage decision was fundamentally correct, which, for the reasons described above it was. *See Oak Hill Investment IV LLC v. State Farm Fire & Cas. Co.*, 15-cv-1996, 2017 WL 4286778, at *4 (N.D. Ohio Sept. 27, 2017) ("Under Ohio law, an insurer's decision to deny coverage is not in itself bad faith, but the refusal may not be an arbitrary or capricious one but must be based on circumstances that furnish reasonable justification therefor.") (cleaned up); *Travelers Ins. Co. v. Savio*, 706 P.2d 1258, 1274 (Colo. 1985) (insured asserting bad faith claim "must establish that the insurer acted unreasonably and with knowledge of or reckless disregard

for the fact that no reasonable basis existed for denying the claim").[7]   Accordingly, Count II of the Complaint should be dismissed.

## IV.   THE COURT SHOULD ALSO DISMISS THE COMPLAINT ON THE GROUNDS THAT MILLENNIUM FILED SUIT MORE THAN TWO YEARS AFTER IT DISCOVERED ITS LOSS AND IS THEREFORE BARRED BY THE POLICY'S LIMITATIONS CLAUSE

As noted above, the Sixth Circuit, applying Ohio law, has held that a one-year contractual limitations period containing virtually identical language to that which is in the Policy is enforceable. *See Friendly Farms*, 79 F.3d at 544-45.  *A fortiori*, the two-year limitations period contained in the Policy, especially when the insured is a sophisticated business entity that was represented by Aon during the claims process, is enforceable here.

There can be no dispute that Millennium has failed to bring suit "within 2 years from the date you discover the loss."  M&C Holdings Delaware Partnership's Vice President submitted a sworn statement as part of Millennium's Proof of Loss stating that it "discovered" the loss "in June 2017."  Millennium filed this suit on February 13, 2020, more than two years and six months after the date of discovery.  As there is no tolling agreement or similar document that Millennium can point to that demonstrates the parties agreed to toll the limitations period, Millennium's Complaint is time barred as a matter of law.  *See Kish v. Chubb Group of Ins. Cos.*, 4:04 CV 02224, 2005 WL 1683667, at *8 (N.D. Ohio July 19, 2005).

The only conceivable way that Millennium can defeat GAIC's motion is to demonstrate that there is a plausible basis to conclude, based on the well pleaded and nonconclusory allegations

---

[7] New York does not recognize an independent cause of action for bad faith denial of coverage in the first-party insurance context.  *See New York Univ. v. Continental Ins. Co.*, 662 N.E.2d 763, 768 (N.Y. 1995).  Nevertheless, under New York law an insured's allegation of bad faith, even in the abstract, will be defeated if the insurer's interpretation of the policy is arguably correct. *Redcross v. Aetna Cas. & Sur. Co.*, 688 N.Y.S.2d 817, 821-22 (N.Y. App. Div. 1999) ("bad faith cannot be established when the insurer has an arguable basis for denying coverage") (citation omitted).

and the documents referenced in the Complaint, that GAIC has either waived or is estopped from relying on the limitations clause.   As indicated above, however, the insured's burden to demonstrate waiver or estoppel is demanding:

> Under Ohio law, waiver of the limitations provision in an insurance policy may occur when the insurer, by its acts or declarations, evidences a recognition of liability under the policy, and the evidence reasonably shows that such expressed recognition of liability and offers of settlement have led the insured to delay in bringing an action on the insurance contract.  However, acts or conduct giving rise to waiver or estoppel must have occurred within the time limitation contained in the policy, rather than after such limitations have run.  Furthermore, the process of investigation does not constitute a waiver by the insurer.

*Friendly Farms*, 79 F.3d at 545 (citations, quotations and alterations in original omitted).

Millennium's Complaint alleges, without elaboration, that GAIC's "words and conduct indicated and led Millennium to believe that coverage would be extended, that [GAIC] acknowledged liability under the Policy, and that the 'loss' would be covered."  (Complaint ¶ 29). This conclusory allegation, which should not be considered as true even on a motion to dismiss, *see Iqbal*, 556 U.S. at 681, is flatly contradicted by numerous written communications from Millennium's attorney that do not point to a single statement or suggestion by GAIC in which it recognized that the entirety of Millennium's claim would be covered.  Indeed, those documents reveal that GAIC determined in February of 2019 that Merdis had diverted monies that Millennium owed to legitimate travel agents, which raised legitimate questions such as why those travel agents did not lodge complaints for commission payments they did not receive or whether they were ever ultimately paid for their bookings.  (*See* Lebersfeld Decl. Ex. D at "Claim Time Line" 2/19/2019 to 2/21/2019).  And even so, Millennium – while it was being advised by one of the largest insurance brokerage and risk management firms in the world – did not request a tolling agreement as the two-year anniversary of its discovery of the loss approached and then passed. *See Morgan*

*Guar. Trust Co. of N.Y. v. Aetna Cas. & Sur. Co.*, 604 N.Y.S.2d 952 (N.Y. App. Div. 1993) (rejecting insured's claims of waiver and estoppel where "tolling agreement was without the two-year contractual imitation period of the policies"); *Allman v. UMG Recordings*, 530 F. Supp. 2d 602, 609 (S.D.N.Y. 2008) (no estoppel to assert limitations clause where defendant rejected plaintiff's tolling agreement); *see also Reynolds v. Detroit Fidelity & Sur. Co.*, 19 F.2d 110, 113 (6th Cir. 1927) ("We think that what happened was no more than delay on the part of the surety in announcing its action, which the receiver could at any time have ended by commencing suit, and without thereby violating any agreement or propriety, or even courtesy.").

The Complaint also alleges that GAIC dillydallied in conducting its investigation (Complaint ¶ 28), and GAIC suspects that in opposition Millennium will speculate that discovery will reveal some sort of secret intent to do so. However, an insurer's investigation, even if not done with the speed that the insured desires, cannot give rise to a waiver or estoppel claim. *Friendly Farms*, 79 F.3d at 595 (under Ohio law "the process of investigation does not constitute a waiver by the insurer") (citations omitted); *Kish*, 2005 WL 1683667, at *7 (rejecting insured waiver and estoppel defenses on insurers motion for summary judgment because "[i]t is well-settled that participation in an insurer's investigation bears little relevance to the application of the suit limitation clause.") (citations omitted); *Sheet Metal & Roofing Contractors' Assoc. of Miami Valley, Ohio v. Liskany*, 369 F. Supp. 662, 668 (S.D. Ohio 1974) ("The insurance company must have performed some act which in and of itself prevents a plaintiff from seeking a remedy in the court; mere conversation, negotiation or discussion is not sufficient unless it deterred plaintiff from his chosen course of action and misled him to the extent that it delayed filing of suit until the limitation period had terminated.") (citation omitted); *Brown v. Royal Ins. Co. of Am.*, 620 N.Y.S.2d 379 (N.Y. App. Div. 1994) ("Delay by the insurance carrier in completing its

investigation of the claim does not excuse the plaintiff from timely commencing an action, since he or she is bound by the terms of the contract to either commence an action prior to the expiration of the limitations period or obtain a waiver or extension of such provision.") (citations omitted); *Satyam Imports, Inc. v. Underwriters at Lloyd's via Marsh, S.A.*, 03 Civ. 43878, 2003 WL 22349668, at *2 (S.D.N.Y. Oct. 14, 2003) (rejecting insured waiver and estoppel argument where "all that [the insured] alleges is that [the insurer] investigated the claim intensively and for an extended period, if somewhat sluggishly, in the twelve months before suit expired, and that it made a few additional inquiries after expiration of the limitations period.").

Otherwise, Millennium's Complaint hints at an argument that GAIC cannot rely on the limitations clause because its initial coverage letter, dated December 17, 2019, "did not mention any contractual limitation period, or assert any limitation period as a basis for denying coverage." (Complaint ¶ 41).  What that letter does or does not say is irrelevant because "acts or conduct giving rise to waiver or estoppel must have occurred within the time limitation contained in the policy, rather than after such limitations have run." *Friendly Farms*, 79 F.3d at 545 (quotation and alteration in original omitted); *Armco, Inc. v. Reliance Nat. Ins. Co.*, 19 F. Supp. 2d 807, 810 (S.D. Ohio 1998) (insurer did not waive policy's limitation clause even where it was not explicitly raised as affirmative defense in insurer's answer, although holding that one year limitations period might be unreasonable) (Dlott, *J.*); *Liskany*, 369 F. Supp. at 668 ("acts or conduct giving rise to waiver or estoppel must have occurred within the time limitation contained in the indemnity policy, rather than after such limitations have run"); 17 Couch on Insurance § 238:11 (3d ed. Dec. 2019)  ("if a limitations period already has expired at the time an insurer denies a claim, the mere failure to cite the contractual statute of limitations provision in the insurer's denial letter cannot amount to waiver as a matter of law, presumably because the insured's failure to comply with the limitations period

is not the insurer's fault").  As the December 17, 2019 letter was transmitted well after the limitations expired, it cannot form the basis of a waiver or estoppel claim, especially given the express reservation of rights language contained in GAIC's written communications with the insured.  *Satyam Imports,* 2003 WL 22349668, at *4 (reservation of rights disclaimer "weigh[s] heavily against a claim of waiver or estoppel") (citations omitted).

In sum, the Court should reject any argument that suggests GAIC was required to use certain magic words in order to avail itself of the limitations clause.  Rather, Millennium is required to plead with some degree of specificity what GAIC did and said that convinced it that suit would not be necessary to recover what it now claims it is owed.  Because the Complaint makes only conclusory and nebulous allegations of GAIC's "words and conduct" that supposedly "indicated" that the entirety of the claim would be covered (Complaint ¶ 29), Millennium has not and cannot make such a showing.  Accordingly, the Complaint can also be dismissed on the grounds that it is barred by the Policy's limitations clause.


## CONCLUSION

For all the foregoing reasons, defendant Great American Insurance Company respectfully requests that the Court dismiss the Complaint herein with prejudice.

Respectfully submitted,

/s/ *James Papakirk,* Trial Attorney
James Papakirk (0063862)
Hallie S. Borellis (0076510)
Flagel & Papakirk LLC
50 E-Business Way, Suite 410
Cincinnati, OH  45241
Phone:  513-984-8111
Fax:  513-984-8118
jpapakirk@fp-legal.com
hborellis@fp-legal.com

*and*

Stephen N. Dratch (admitted *pro hac vice*)
Daniel Lebersfeld (admitted *pro hac vice*)
Franzblau Dratch, PC
354 Eisenhower Pkwy.
Livingston, NJ  07039
Phone:  973-992-3700
Fax:  973-994-0139
sdratch@njcounsel.com
dlebersfeld@gmail.com
*Counsel for Defendant Great American*
*Insurance Company*

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing document was electronically filed on March 31, 2020, and will be served electronically by the court's CM/ECF system upon all counsel of record.

/s/ *James Papakirk*
James Papakirk (0063862)