# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION
### (at Cincinnati)

| | |
|---|---|
| **M&C HOLDINGS DELAWARE PARTNERSHIP**, et al., | Case No. 1:20-cv-00121-SJD-KLL |
| Plaintiffs, | Judge Susan J. Dlott |
| v. | Magistrate Judge Karen L. Litkovitz |
| **GREAT AMERICAN INSURANCE COMPANY**, | |
| Defendant. | |

---

## DEFENDANT'S REPLY MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)

---

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..........................................................................................ii-iii

PRELIMINARY STATEMENT ........................................................................................1

ARGUMENT ....................................................................................................................2

I. THE COMPLAINT SHOULD BE DISMISSED BECAUSE GAIC CORRECTLY DETERMINED THAT THE POLICY DOES NOT COVER COMMISSIONS OWED TO LEGITIMATE TRAVEL AGENTS THAT MILLENNIUM DOES NOT ALLEGE IT EVER PAID ............................................................................................................2

    A. The Theft Of Commission Payments Owed To Legitimate Travel Agents Does Not Constitute A "Loss" As Matter Of Law............................................2

    B. The Allegations Of The Complaint And Documents Referenced Therein Establish Conclusively That Millennium Is Improperly Seeking Coverage For Commissions It Owed To Legitimate Travel Agents But Never Paid .............................................6

II. THE COMPLAINT SHOULD BE DISMISSED AS TIME BARRED .............................8

    A. The Limitations Clause Is Reasonable And Enforceable As A Matter Of Law ......8

    B. Millennium Does Not And Cannot Allege Nonconclusory Facts Sufficient To Establish A Plausible Basis Of Waiver Or Estoppel ...............................................12

    C. GAIC's Defenses Are Not "Internally Inconsistent".............................................15

    D. GAIC's Limitations Defense Can Be Adjudicated On Its Motion To Dismiss .....16

III. THE OTHER SUBMISSIONS OF MILLENNIUM'S COUNSEL DO NOT WARRANT THE DENIAL OF GAIC'S MOTION ..............................................................................17

    A. Dorfman Declaration ..............................................................................................17

    B. Millennium's Objections To Defendant's Exhibits ...............................................20

CONCLUSION.................................................................................................................20

# TABLE OF AUTHORITIES

**Cases**

*Ali v. Fed. Ins. Co.*, 719 F.3d 83 (2d Cir. 2013) ............................................................. 6

*Allen v. Andersen Windows, Inc.*, 913 F.Supp.2d 490 (S.D.Ohio 2012) ...................................... 12

*American Mut. Share Ins. Corp. v. CUMIS Ins. Soc., Inc.*, 10th Dist. Franklin No. 08AP-576, 2009-Ohio-364 ........................................................................................... 8

*American Tooling Ctr., Inc. v. Travelers Cas. & Cur. Co. of Am.*, 895 F.3d 455 (6th Cir. 2018) ...................................................................................................... 5

*Angel v. Reed*, 119 Ohio St.3d 73, 2008-Ohio-3193, 891 N.E.2d 1179 ...................................... 11

*Appel v. Cooper Ins. Co.*, 76 Ohio St. 52, 80 N.E.2d 955 (1907) ............................................. 10

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ............................................................................. 12

*Arp v. American Family Ins. Co.*, 187 Ohio App. 3d 561, 2010-Ohio-2250, 932 N.E.2d 968 (6th Dist.) ..................................................................................................... 13

*Ball v. Union Carbide Corp.*, 385 F.3d 713 (6th Cir. 2004) .................................................. 17

*Broadview Sav. & Loan v. Buckeye Union Ins. Co.*, 70 Ohio St.2d 47, 434 N.E.2d 1092 (1982) ....................................................................................................... 10

*Chicago Title Ins. Co. v. Huntington Nat'l Bank*, 87 Ohio St.3d 270, 1999-Ohio-62, 719 N.E.2d 955 ...................................................................................................... 3, 7

*Cincinnati Ins. Co. v. Norfolk Truck Ctr., Inc.*, No. 2:18-cv-531, 2019 WL 6977408 (E.D.Va. Dec. 20, 2019) .......................................................................................... 5

*Classic Laundry & Linen Corp. v. Travelers Cas. Ins. Co. of Am.*, 739 Fed. App'x 41 (2d Cir. 2018) .............................................................................................................. 10, 11

*Dieckman v. Prudential Prop. & Cas. Ins. Co.*, 87 Ohio App. 3d 852, 623 N.E.2d 240 (9th Dist.1993) ................................................................................................. 14

*Egerer v. Woodland Realty, Inc.*, 556 F.3d 415 (6th Cir. 2009) .............................................. 18

*F.D.I.C. v. United Pacific Ins. Co.*, 20 F.3d 1070 (10th Cir. 1994) ......................................... 3

*Federal Ins. Co. v. Srivastava*, 2 F.3d 98 (5th Cir. 1993) .................................................... 6

*First Defiance Fin. Corp. v. Progressive Cas. Ins. Co.*, 688 F.3d 265 (6th Cir. 2012) ................. 4

*Friendly Farms v. Reliance Ins. Co.*, 79 F.3d 541 (6th Cir. 1996) ................................ 8, 9, 11, 13

*Gehrisch v. Chubb Group of Ins. Cos.*, 645 Fed. Appx. 488 (6th Cir. 2016) ................................ 7

*Hamilton County Bd. of Com'rs v. Nat'l Football League*, 491 F.3d 310 (6th Cir. 2007) ........... 17

*Hounshell v. American States Ins. Co.*, 67 Ohio St.2d 427, 424 N.E.2d 311 (1981) ................... 14

*In re Fair Finance Co.*, 834 F.3d 651 (6th Cir. 2016) .................................................................... 18

*Kish v. Chubb Group of Ins. Cos.*, No. 4:04 CV 02224, 2005 WL 1683667 (N.D.Ohio July 19, 2005) .................................................................................................................. 9, 11, 13

*Kraly v. Vannewirk*, 69 Ohio St.3d 627, 635 N.E.2d 323 (1994) .................................................. 11

*Lee v. Goodville Mut. Cas. Co.*, No. 1:14-cv-933, 2016 WL 5661683 (S.D.Ohio Sept. 30, 2016) ....................................................................................................................................... 14

*Lutz v. Chesapeake Appalachia, LLC*, 717 F.3d 459 (6th Cir. 2013) ........................................... 16

*Medidata Solutions Inc. v. Fed. Ins. Co.*, 729 Fed. Appx. 117 (2d Cir. 2018) .............................. 6

*Oak Hill Investment IV LLC v. State Farm Fire & Cas. Co.*, No. 15-cv-1996, 2017 WL 4286778 (N.D.Ohio Sept. 27, 2017) .................................................................................... 7, 17

*Sheet Metal & Roofing Contractors Ass'n of Miami Valley, Ohio v. Liskany*, 369 F. Supp. 662 (S.D.Ohio 1974) .............................................................................................................. 8, 13

*Spears v. St. Paul Ins. Co. (In re Ben Kennedy & Assocs., Inc.)*, 40 F.3d 318 (10th Cir. 1994) ........................................................................................................................... 2

*Thomas v. Allstate Ins. Co.*, 974 F.2d 706 (6th Cir. 1992) .......................................................... 10

*Troutman v. State Farm Fire & Cas. Co.*, 570 F.2d 658 (6th Cir. 1978) ..................................... 10

*Walburn v. Lockheed Martin Util. Servs., Inc.*, 443 Fed. Appx. 43 (6th Cir. 2011) .............. 15, 16

*Young v. Carrier Corp.*, 4:14-cv-0974, 2014 WL 6617650 (N.D. Ohio Nov. 21, 2014) ............. 19

**Rules**

Fed. R. Civ. P. 12(b)(6) ....................................................................................... 1, 10, 13, 15, 16

Fed. R. Civ. P. 12(d) .................................................................................................................. 16, 17

Rule 56(d) ........................................................................................................................................ 17

Defendant Great American Insurance Company ("GAIC" or "Defendant") respectfully submits this reply memorandum of law in further support of its motion to dismiss the Complaint herein with prejudice pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim.[1]

## **PRELIMINARY STATEMENT**

GAIC's Opening Memorandum established that the Complaint should be dismissed on two alternative grounds: (i) that that the large bulk of Millennium's claim did not constitute a covered loss because it necessarily received value for reservations booked by legitimate travel agents; and (ii) Millennium has not, because it cannot, assert any nonconclusory allegations that would support a plausible claim that GAIC somehow misled it into not filing suit (or seeking a tolling agreement) within the unambiguous contractual limitations period. In addition to varied misplaced legal arguments, Millennium makes the illogical claim that discovery is needed to reveal information that is within its ken; specifically, whether it ever paid the legitimate travel agents and what GAIC said to it that prevented it from filing suit within the limitations period. While Millennium may not be required to put all its proverbial cards on the table in its Complaint, it cannot obscure dispositive facts necessarily known to it in the hopes of using discovery as leverage.

The bottom line is that the premise of the Complaint is that GAIC should pay Millennium for commissions it owed to legitimate travel agents even though there are no allegations that those travel agents ever demanded payment from Millennium, and that it should be excused for failing to comply with the Policy's unambiguous limitations clause even though it cannot describe anything that GAIC said to it that prevented it from filing suit in a timely manner. However, there

---

[1] Unless otherwise stated, capitalized terms used herein have the same meaning as used in GAIC's opening memorandum of law (ECF Dkt. #18-1) ("Opening Memorandum" or "Open."). Plaintiff's Memorandum of Law In Opposition to Defendant's Motion to Dismiss (ECF Dkt # 20) is referred to as the "Opposition," or "Opp."

can be no secret document or admission that might be revealed in discovery that would explain Millennium's own conduct. When that is the focus, as it should be, the only conclusion the Court can reach is that Millennium cannot state a claim for coverage and Millennium's suit is time barred, both as a matter of law.

## **ARGUMENT**

I.    **THE COMPLAINT SHOULD BE DISMISSED BECAUSE GAIC CORRECTLY DETERMINED THAT THE POLICY DOES NOT COVER COMMISSIONS OWED TO LEGITIMATE TRAVEL AGENTS THAT MILLENNIUM DOES NOT ALLEGE IT EVER PAID**

A.    **The Theft Of Commission Payments Owed To Legitimate Travel Agents Does Not Constitute A "Loss" As Matter Of Law**

GAIC's Opening Memorandum argued that Merdis's theft of commission payments that Millennium otherwise owed to legitimate travel agents were analogous to an uncovered "bookkeeping loss." Because those travel agents were never paid, that aspect of Merdis's scheme resulted in the amounts Merdis stole being offset by the commissions Millennium did not pay for legitimate bookings. Indeed, if GAIC were required to cover such a "loss," Millennium would obtain a windfall because it will have received the services of the legitimate travel agents for free, which is not the purpose of fidelity policies. *See Spears v. St. Paul Ins. Co. (In re Ben Kennedy & Assocs., Inc.)*, 40 F.3d 318, 319-20 (10th Cir. 1994) (to allow recovery "without a corresponding financial detriment to [the insured] would amount to allowing an insured to wager on the loss of others' property in its possession, and might foster a temptation for similarly situated insureds to 'lose' such property for economic gain."). Millennium's attempt to rationalize why it can still recover without any meaningful contention that it ever paid the legitimate travel agents only reveals why its Complaint does not state a claim for coverage.

Millennium initially asserts that because the Policy does not specifically articulate the concept of an uncovered bookkeeping loss and apparently no court applying Ohio law has

addressed it, the Court should simply default to Millennium's purported "reasonable" interpretation that the inquiry ends when the insured demonstrates that it sent "cash out the door." (Opp. 6-8). It does not follow, however, that the term "loss" is without meaning or ambiguous because the Policy does not specifically define it. *Chicago Title Ins. Co. v. Huntington Nat'l Bank*, 87 Ohio St. 3d 270, 273, 1999-Ohio-62, 719 N.E.2d 955 ("Just because the policy does not define a term does not mean that the policy is ambiguous."). Rather, fidelity policies do not cover a bookkeeping loss because it is not a "loss" in the ordinary usage of the term. *F.D.I.C. v. United Pacific Ins. Co.*, 20 F.3d 1070, 1080 (10th Cir. 1994). As applied here, the claimed loss (Merdis's theft of funds owed to legitimate travel agents) is offset by an obligation the insured has been relieved of (the commissions to those legitimate travel agents that Millennium did not pay). That a court applying Ohio law may not have addressed this specific issue does not grant Millennium license to transform the nature of a fidelity policy, especially given that Millennium cannot point to a single authority that remotely suggests the bookkeeping loss concept is at all controversial.

Moreover, Millennium's superficial "cash out the door" theory improperly conflates two separate concepts of a "loss," on the one hand, and "dishonest acts" that cause the loss, on the other. Specifically, Millennium claims that "[e]mployee theft of funds is a direct 'loss' of those funds, affixed at the moment of transfer." (Opp. 10). But the Policy sets forth a different framework by providing that GAIC will "pay for loss resulting from dishonest acts committed by an employee. . . ." (Policy § B(1)). In this case, the "dishonest act committed by an employee" is, as Millennium puts it, the employee's "theft of funds." Millennium skips over the other element of the coverage inquiry – whether that "theft of funds" resulted in a loss. Again, because the funds Merdis stole were commission payments that Millennium owed to legitimate travel agents, Millennium's "loss" resulting from Merdis's theft is offset by it not having paid those travel agents.

In other words, it does not necessarily follow that Millennium suffered a loss just because those funds at some point were in Millennium's custody.

It is therefore not surprising that every case Millennium relies on supports the concept of this key distinction between theft and loss, and none stand for Millennium's superficial "cash out the door" theory. For example, in *First Defiance Fin. Corp. v. Progressive Cas. Ins. Co.* ("*First Defiance*"), the insured's employee, an investment advisor, stole money from client brokerage accounts that, critically, the insured reimbursed. 688 F.3d 265, 267-68 (6th Cir. 2012). The insurer argued that the insured did not suffer a "direct loss" because the employee stole client funds and therefore, according to the insurer, the loss the insured suffered was a liability to third-party that the insured later chose to discharge. *Id.* at 270. The Sixth Circuit rejected this argument, holding that client funds came squarely within the definition of "covered property," and that the insured had suffered a "direct loss" by virtue of reimbursing its defrauded clients because it had a straightforward legal obligation to do so that was not "contingent on other things other than [the] employee's fraud." *Id.* (emphasis omitted). Here, by contrast, the Complaint clearly alleges that coverage does not depend on whether Millennium actually reimbursed the legitimate travel agents (*see, e.g.* Complaint ¶¶ 69-71), whereas coverage in *First Defiance* necessarily depended on the insured reimbursing its clients for funds its employee stole from them. Thus, *First Defiance* supports GAIC's position that Millennium's "cash out the door" theory fails to adequately allege the existence of a covered loss under the Policy.[2]

---

[2] Millennium also cites to *First Defiance* to erroneously conflate the Policy's definition of "property" (or the general concept of "covered property") with the requirement that it must suffer a loss. (Opp. 6). Specifically, the Policy limits the definition of "property covered under this Policy" to include property the insured owns or holds and property in someone else's possession that the insured is responsible for. (Policy § D(17)). For this reason, Judge Sutton rejected the insurer's argument that there was no coverage because the property that was embezzled belonged to the insured's clients rather than to the insured. As Judge Sutton later explained, the insured suffered a "direct loss" because it was legally obligated to reimburse its clients for the money (or "covered property") its employee stole from them.

The Sixth Circuit's decision in *American Tooling Ctr., Inc. v. Travelers Cas. & Cur. Co. of Am.*, 895 F.3d 455 (6th Cir. 2018) is distinguishable for the same reason. There, the insured was duped into wiring funds to a fraudster who impersonated one of the insured's vendors who had already performed its services for the insured. Critically, after the fraud was revealed, the insured paid the vendor half the money it owed and agreed that payment of the remaining half would be contingent on the success of its claim against the insurer. *Id.* at 458. Thus, the court rejected the insurer's claim that there was no loss. *Id.* at 460-61.[3] By contrast, the Complaint does not allege that Millennium ever paid the legitimate travel agents for the bookings they made, and Millennium has explicitly taken the position that it has no obligation to pay those travel agents with the money it believes it should recover here. (Lebersfeld Dec. Ex. E).[4]

In *Cincinnati Ins. Co. v. Norfolk Truck Ctr., Inc.*, 2:18-cv-531, 2019 WL 6977408 (E.D.Va. Dec. 20, 2019), the insured wired money to an imposter for truck parts the insured had ordered. There was no dispute that there was a loss since the insured disbursed money for something it did not receive, and therefore the issue was whether the loss was from the use of a computer. Again, the underlying premise of Millennium's Complaint is that it does not matter whether or not the

---

[3] The court's example of Alex, Blair and Casey that Millennium block quotes (Opp. 7), would be analogous to Millennium's claim if it continued that as a result of Casey's theft, Alex did not fulfill the debt she owed to Blair.

[4] Millennium strains its credibility even further by attempting to disavow the admissions made in the October 10, 2019 email by asserting that the text of the email indicates its author was Aon. (Opp. 11 n.8). While the email was transmitted by Aon, the introductory text writes: "Below please find [Millennium's] response to your letter dated September 20, 2019." This text is followed by three separating lines and then a lengthy statement of Millennium's position regarding the absence of records evidencing payment from Millennium to the legitimate travel agents. Even taking at face value Millennium's claim that its attorney did not author that statement, it does not change the fact that it articulates Millennium's position that it is entitled to a windfall by virtue of it supposedly having no obligation to pay the legitimate travel agents even if it recovers the full amount of its claim.

legitimate travel agents, who necessarily provided services to it, were ever paid.  (*See* Complaint ¶¶ 69-74).[5]

In sum, try as it might to avoid the implications of its construction of the Policy, it is obvious that Millennium is not seeking just to be made whole, but rather to be put in a better position than it would have been absent Merdis's fraud by getting the value it received from bookings made by legitimate travel agents for free.  Because Millennium does not, and cannot, allege that it ever paid the legitimate travel agents for bookings they made, it is those travel agents who suffered the loss, not Millennium.  Accordingly, Millennium has failed to allege facts sufficient to state a claim for coverage under the Policy.

**B.** **The Allegations Of The Complaint And Documents Referenced Therein Establish Conclusively That Millennium Is Improperly Seeking Coverage For Commissions It Owed To Legitimate Travel Agents But Never Paid**

The premise of Millennium's Complaint is that "[m]oney stolen from the Insured is a 'loss' full stop," and that the Policy "covers all funds that were fraudulently transferred to the Fictitious Agencies, full stop."  (Complaint ¶¶ 5, 72).  The Complaint contrasts Millennium's construction of the Policy with GAIC's determination that the Policy language required a "segregat[ion] [of] the Claim into two categories: (1) funds that were paid to the Fictitious Agencies for services that were not rendered by anyone, and (2) funds that were paid to the Fictitious Agencies for services that were rendered to Millennium not by the Fictitious Agencies, but unaffiliated, legitimate third party travel agencies," which the Complaint alleges "is incorrect."  (Complaint ¶ 69, 72).  Because the Complaint seeks a declaration that Millennium's interpretation of the Policy is correct and

---

[5] The other cases that Millennium cites in support of its misplaced "cash out the door" theory warrant little discussion as they do not address whether the insured incurred a loss.  *See, e.g.*, *Medidata Solutions Inc. v. Fed. Ins. Co.*, 729 Fed. Appx. 117 (2d Cir. 2018) (addressing loss causation, not whether the insured actually suffered a loss); *Ali v. Fed. Ins. Co.*, 719 F.3d 83 (2d Cir. 2013) (addressing whether primary and underlying policy in excess insurance "tower" were exhausted before excess policies was required to pay); *Federal Ins. Co. v. Srivastava*, 2 F.3d 98 (5th Cir. 1993) (same).

GAIC's is wrong (Complaint ¶¶ 67-81), the Court, on a motion to dismiss, can declare that GAIC's construction of the Policy is correct if it is unambiguous, as GAIC submits it is. *Gehrisch v. Chubb Group of Ins. Cos.*, 645 Fed. Appx. 488, 495 (6th Cir. 2016). This concept similarly requires dismissal of Millennium's bad faith claim, because an Insurer cannot be found to have acted in bad faith if it interprets the policy correctly. *Oak Hill Investment IV LLC v. State Farm Fire & Cas. Co.*, 15-cv-1996, 2017 WL 4286778, at *4 (N.D. Ohio Sept. 27, 2017). Thus, Millennium's claim that GAIC's coverage argument is "premised entirely upon allegations made in letters authored by its trial attorney and other documents outside the pleadings," (Opp. 10) is incorrect.

In an attempt to salvage its Complaint, Millennium suggests that its breach of contract claim (Count I) might be viable because it is not yet established that Millennium did not pay the legitimate travel agents or that GAIC's allocation of the loss (*i.e.*, how much Merdis stole from legitimate travel agents versus how much he stole from Millennium by making fictional bookings) was incorrect. (Opp. 12). But this argument only highlights Millennium's failure to allege either of these crucial facts thereby shirking its obligation to plead facts adequate to state a plausible claim for legal relief. Indeed, this obligation is all the more important here as Millennium cannot force GAIC into the position of having to prove a negative (that Millennium did not reimburse the legitimate travel agents). Rather, Millennium would have to affirmatively demonstrate that it paid the legitimate travel agents because it is axiomatic that it is the insured's burden to prove the loss, including the quantum of its loss. *Chicago Title Ins. Co.*, 87 Ohio St. 3d at 273 ("One who seeks to recover on an insurance policy generally has the burden of demonstrating coverage under the policy and then proving a loss.") (citations omitted).

And even if Millennium were granted leave to amend its Complaint, it would be a pyrrhic victory because all information that might reflect that GAIC's calculations were wrong or that

Millennium did indeed pay the legitimate travel agents would necessarily be in Millennium's possession.  That is, if Millennium were to claim that it actually paid legitimate travel agents, documentation within its control should allow it to at least make that allegation with some degree of specificity, which, to date, it has not.

In sum, Millennium cannot avoid dismissal by deliberately pleading around the operative facts.  Law and logic both support GAIC's determination that the Policy does not cover commissions owed to legitimate travel agents absent evidence (or nonconclusory allegations) that Millennium paid those travel agents.  As Millennium's own Complaint does not actually allege that GAIC's allocation of the loss was wrong as factual matter, its argument that GAIC's motion attached certain documents "outside the pleadings" is a red herring.

## II.     THE COMPLAINT SHOULD BE DISMISSED AS TIME BARRED

### A.     The Limitations Clause Is Reasonable And Enforceable As A Matter Of Law

Millennium cannot dispute that it filed this suit more than two years after it discovered its loss based on its sworn statement in its Proof of Loss that it discovered the loss in June of 2017. (Lebersfeld Dec. Ex. A).  Therefore, it has plainly not complied with the condition of the Policy that provides that it "may not bring any legal action against us involving loss [u]nless brought within 2 years from the date you discover the loss."  (Policy § E(11)(c)).  Indeed, the Sixth Circuit, applying Ohio law, has enforced a limitations clause containing *identical* language except that in that case the limitations period was one year from the discovery of the loss, rather than the more insured friendly two-year limitations period at issue here.  *Friendly Farms*, 79 F.3d at 544-45.[6]

---

[6] *See also American Mut. Share Ins. Corp. v. CUMIS Ins. Soc., Inc.*, 10th Dist. Franklin No. 08AP-576, 2009-Ohio-364, ¶¶ 18-24 (enforcing limitations clause in fidelity bond requiring that suit be brought within two years of discovery of loss); *Sheet Metal & Roofing Contractors Ass'n of Miami Valley, Ohio v. Liskany*, 369 F. Supp. 662, 665 (S.D. Ohio 1974) (enforcing limitations clause that provided: "No action shall lie against the Company unless, as a condition precedent thereto, there shall have been full compliance with all the terms of this Policy, nor until ninety days after the required proofs of loss have been filed with the

Millennium nevertheless seeks to avoid the straightforward application of the limitations clause by quoting the Policy language that states: "You may not bring legal action against us involving loss [u]nless you have complied with all the terms of this Policy[.]"  (Opp. 15). Millennium argues that because one such "term of [the] Policy" is its duty to cooperate with the insurer's investigation, its causes of action did not accrue, and it could not bring suit until, GAIC declared its investigation complete.  (*Id.*)   The Sixth Circuit in *Friendly Farms* squarely rejected this argument:

> Ohio law holds that contractual limitations provisions in insurance contracts commence the moment that the triggering event occurs, ***regardless of other policy provisions requiring certain conditions be fulfilled before the insured has a right to enforce the contract.***

79 F.3d at 545 (emphasis added) (citations omitted).  Thus, the *Friendly Farms* court rejected the insured's argument that the limitations period did not commence until 90 days after it submitted its proof of loss, which was one of the conditions it was required to fulfill before bringing suit.  *Id.*

In a footnote, Millennium claims the holding of *Friendly Farms* does not apply here because the duty to cooperate with the insurer's investigation is a condition that was not considered by the Sixth Circuit, which somehow uniquely trumps the operation of the limitations clause. (Opp. 15 n.10).  *Kish v. Chubb Group of Ins. Cos.*, No. 4:04 CV 02224, 2005 WL 1683667 (N.D. Ohio July 19, 2005), a case cited in GAIC's Opening Memorandum (Open. 15, 17) and ignored by Millennium, explicitly rejected Millennium's proposed distinction.   There, the insured submitted a claim under a property insurance policy for damage to two of his business locations. *Id.* at *1.  Like the Policy here, the insured's policy in *Kish* provided that he could not bring legal action against the insurer "unless . . . there has been full compliance with all the terms of this

---

Company, nor at all unless commenced within two years from the date when the Insured discovers the loss.").

insurance; and . . . the action is brought within two years after the date on which the direct physical loss or damage occurred." *Id.* The insurer's investigation, which continued past the two-year anniversary of when the damage occurred, concluded that the damage was caused by the insured's own intentional acts and the insurer denied coverage on that basis. *Id.* The insured attempted to avoid the operation of the limitations clause by making the exact argument Millennium does here that "'by denying [the insured's] claim after two years had elapsed from the dates of loss, [the insurer] left [the insured] with no time to file his cause of action for a wrongful denial.'" *Id.* at *4 (cleaned up). The court rejected this argument, concluding that it would be diametrically opposed to long established Ohio law, going back to the early twentieth century, that the insurer's investigation does not negate the insured's obligation to bring suit within the policy's limitation period. *See id.* at **4-5 (discussing *Appel v. Cooper Ins. Co.*, 76 Ohio St. 52, 80 N.E.2d 955 (1907) and *Broadview Sav. & Loan v. Buckeye Union Ins. Co.*, 70 Ohio St. 2d 47, 434 N.E.2d 1092 (1982)); *see also Thomas v. Allstate Ins. Co.*, 974 F.2d 706, 710 (6th Cir. 1992) (holding insurer did not "effectively 'waive[]'" limitation clause even though it denied coverage after limitations period had run); *Troutman v. State Farm Fire & Cas. Co.*, 570 F.2d 658, 659 (6th Cir. 1978) (rejecting argument that limitations clause in fire insurance policy requiring suit to be brought within "'12 months next after the inception of the loss' . . . should be construed to provide that the one-year period begins to run from the date the cause of action accrued," which insured claimed was "the date the company denied liability"). Indeed, in one of the cases Millennium cites, *Classic Laundry & Linen Corp. v. Travelers Cas. Ins. Co. of Am.*, the Second Circuit, affirming the district court's grant of the insurer's Rule 12(b)(6) motion, held that the insured was still required to bring suit to recover allegedly improperly denied coverage for lost business income within the policy's limitations clause that required the insured to bring suit within two years of the

accident.  739 Fed. App'x 41, 43 (2d Cir. 2018).  In so doing, the court rejected the insured's claim that enforcement of the limitations clause would be unreasonable because "it would often prove impossible to sue for business income and extra expense because such losses will not be fully ascertainable within two years."  *Id.*

The cases that Millennium cites do not nullify the well-established precedent that conditions to suit do not trump the triggering event that commences the contractual limitations period, especially when the Sixth Circuit in *Friendly Farms* squarely rejected Millennium's premise when applied to virtually identical policy language.  Rather, Millennium's cases stand at most for the proposition that courts will not enforce a contractual limitations clause where other conditions of the policy make compliance impossible.  For example, in *Kraly v. Vannewirk*, 69 Ohio St. 3d 627, 635 N.E.2d 323 (1994), the Ohio Supreme Court declined to enforce a limitations clause in an uninsured motorist coverage policy requiring suit to be brought two years from the date of the accident where the tortfeasor had a valid liability policy at the time of the accident, but the auto carrier subsequently became insolvent, which rendered the tortfeasor uninsured per the plaintiff's policy terms.  The end result was that there was an unusually short period of time between when uninsured motorist coverage actually arose by virtue of the tortfeasor subsequently becoming uninsured and the two-year anniversary of the accident.  By contrast, coverage under the Policy is not conditioned on GAIC either issuing a formal coverage letter or formally declaring its investigation complete, as *Friendly Farms*, *Kish* and the other cases cited above make clear.  Indeed, the Ohio Supreme Court later clarified that *Kraly* involved a "unique factual situation," and that even in the context of uninsured motorist claims, which invoke unique public policy concerns, contractual limitation clauses that run from the date of the loss are enforceable.  *Angel v. Reed*, 119 Ohio St. 3d 73, 2008-Ohio-3193, 891 N.E.2d 1179, ¶¶ 18-19.

In sum, Millennium asks this Court to take the drastic step of declaring the Policy's limitations clause unenforceable in the face of binding precedent that explicitly rejects that claim. Millennium's bold argument is all the more remarkable considering it is based on the false premise that filing suit within two years of its discovery of its loss was impossible. Accordingly, there is no reason for this Court to break with the numerous other courts that have unanimously held the Policy's limitations clause to be reasonable and enforceable under materially identical circumstances that exist here.

**B.** **Millennium Does Not And Cannot Allege Nonconclusory Facts Sufficient To Establish A Plausible Basis Of Waiver Or Estoppel**

GAIC's Opening Memorandum pointed out that the Complaint's allegations that alluded to a claim that GAIC had either waived or should be estopped from relying on the limitations clause were conclusory and, even on their own terms, did not satisfy the plausibility standard set forth in *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009). In response, Millennium does nothing more than refer to those exact same conclusory allegations, to wit:

- "During the period in which [GAIC] investigated the claim, [GAIC's] words and conduct indicated and led Millennium to believe that coverage would be extended, that [GAIC] acknowledged liability under the Policy, and that the 'loss' would be covered." (Complaint ¶ 29);

- "There was no justification for [GAIC's] actions, omissions, and delay. [GAIC] has long had at its disposal all the facts needed to pay the Claim in full." (Complaint ¶ 30); and

- That GAIC's December 17, 2019 letter did not mention the limitations clause, and stated that there was coverage for commissions that Millennium paid to Merdis for reservations that were not booked by legitimate travel agents. (Complaint ¶ 41).

(Opp. 16). Because neither the Complaint nor Millennium's Opposition Memorandum specify what GAIC's "words and conduct" were, much less how they prevented Millennium from complying with the limitations clause, those allegations are conclusory and cannot form a basis to defeat GAIC's motion. *Allen v. Andersen Windows, Inc.*, 913 F. Supp. 2d 490, 510 (S.D. Ohio

2012) ("A court may resolve the issue of equitable estoppel's applicability on a Rule 12(b)(6) motion to dismiss if the plaintiff has not pleaded facts that, if proved, demonstrate the defendant's efforts to prevent the plaintiff from filing suit.") (citation omitted). Otherwise, these allegations add up to an argument that GAIC might plausibly be barred from relying on the limitations clause because it could have announced a coverage decision sooner, and that its December 17, 2019 letter did not specifically mention the limitations clause and informed Millennium that only part of its claim was covered. Ohio law is absolutely clear, however, that the fact that an insurer's investigation might have continued past the limitations period does not give rise to a claim of waiver or estoppel. *Friendly Farms*, 79 F.3d at 595 (under Ohio law "the process of investigation does not constitute a waiver by the insurer") (citations omitted); *Kish*, 2005 WL 1683667, at *7 (rejecting insured waiver and estoppel defenses on insurers motion for summary judgment because "[i]t is well-settled that participation in an insurer's investigation bears little relevance to the application of the suit limitation clause.") (citations omitted). This is also the case irrespective of what the December 17, 2019 letter says or does not say because "acts or conduct giving rise to waiver or estoppel must have occurred within the time limitation contained in the policy, rather than after such limitations have run." *Friendly Farms*, 79 F.3d at 545 (quotation and alteration in original omitted); *Liskany*, 369 F. Supp. at 668 (same).

Millennium does not even acknowledge these long established principles, and instead relies on a series of cases that held that the insured was able to proceed with a waiver or estoppel claim where it could describe in some amount of detail the acts of the insurer that lulled it into not filing suit earlier. Those cases only highlight the deficiencies in Millennium's Complaint. For example, in *Arp v. American Family Ins. Co.*, the insured produced a letter from the insurer to his attorney in which the insurer, prior to the expiration of the limitations period, stated that a suit by the insured

would be premature under the terms of the policy until the insured produced certain documents the insurer had requested.  187 Ohio App. 3d 561, 2010-Ohio-2250, 932 N.E.2d 968, ¶ 15.  This is a far cry from the unspecified "words and conduct" that Millennium asserts prevented it from complying with the limitations clause.  (Complaint ¶ 29).  The other cases Millennium relies on in support of its waiver and estoppel arguments all involved specific assurances by the insurer that the claim would be paid during the limitations period.  *Hounshell v. American States Ins. Co.*, 67 Ohio St. 2d 427, 432, 424 N.E.2d 311 (1981) (issue of material fact as to waiver and estoppel where insurer represented to insured prior to expiration of limitations period that it would be liable for pro rata share of fire loss); *Dieckman v. Prudential Prop. & Cas. Ins. Co.*, 87 Ohio App. 3d 852, 855, 623 N.E.2d 240 (9th Dist. 1993) (issue of material fact as to waiver or estoppel where during limitations period insurer represented to insured that she would be covered for her ownership interest in home destroyed in fire because she had no role in husband's suspected arson); *Lee v. Goodville Mut. Cas. Co.*, 1:14-cv-933, 2016 WL 5661683 (S.D. Ohio Sept. 30, 2016) (allegations of several specific offers of settlement during limitations period sufficient to defeat insurer's motion to dismiss).  Here, even if GAIC's December 17, 2019 letter can be characterized as an offer of settlement or adjustment, it occurred after the limitations period had expired, and therefore cannot, as a matter of logic, form the basis of a waiver or estoppel claim.

In sum, Millennium cannot simply wave the flag of waiver or estoppel in the hopes of avoiding the plain command of the limitations clause.  Rather, it must point to some kind of affirmative conduct that convinced it not to file suit within the limitations period.  Ohio law makes clear that its claim that GAIC's investigation took too long is insufficient.  Accordingly, waiver and estoppel cannot save its Complaint from dismissal.

### C.      GAIC's Defenses Are Not "Internally Inconsistent"

Trying to be too clever by half, Millennium asserts that the limitations clause does not apply because it sets a time limit for the insured to bring a "legal action involving a loss," whereas GAIC has argued that Millennium has not suffered a loss to the extent that Merdis diverted commissions owed to legitimate travel agents to himself.  (Opp. 17).  Millennium's sophistry need not detain the Court long.  As discussed above, the Policy provides coverage "for *loss* resulting directly from dishonest acts committed by an employee."  (Policy § B(1)) (emphasis added).  GAIC has argued that that portion of Millennium's claimed loss does not qualify as a "loss" under the Policy for reasons discussed in detail in its Opening Memorandum and herein.  If this position is correct, Millennium's action should be dismissed, and the applicability of the limitations clause is moot.  In contrast, because Millennium claims that "[m]oney stolen from the Insured is a 'loss' full stop" (Complaint ¶ 5), it was obligated to bring suit within two years of when it discovered that money has stolen, which it listed in a sworn statement as June of 2017.  (Lebersfeld Dec. Ex. A).  Further, as Millennium would have it, a contractual limitations clause would never apply to a claim where the insurer and insured disagreed on the existence of coverage.  There is no basis for this absurd outcome.

### D.      GAIC's Limitations Defense Can Be Adjudicated On Its Motion To Dismiss

No matter how "emphatically" Millennium argues to the contrary (Opp. 17-18), this Court has plainly held that not only can a time bar defense be adjudicated on a Rule 12(b)(6) motion, but also that a complaint must contain nonconclusory allegations sufficient to reach the plausibility threshold demonstrating an excuse for an untimely filing, including waiver or estoppel.  *Allen*, 913 F. Supp. 2d at 510 ("A court may resolve the issue of equitable estoppel's applicability on a Rule 12(b)(6) motion to dismiss if the plaintiff has not pleaded facts that, if proved, demonstrate the defendant's efforts to prevent the plaintiff from filing suit.") (citation omitted); *see also Walburn*

15

*v. Lockheed Martin Util. Servs., Inc.*, 443 Fed. Appx. 43, 47-48 (6th Cir. 2011) (rejecting plaintiff's attempt to avoid limitations defense on estoppel grounds on 12(b)(6) motion). Indeed, one of the cases that Millennium cites, *Lutz v. Chesapeake Appalachia, LLC*, held that the plaintiff was required to make sufficient nonconclusory allegations to avoid dismissal for failure to file within the limitations period based on fraudulent concealment. 717 F.3d 459, 475 (6th Cir. 2013). As described above, Millennium's nonconclusory allegations establish, at most, that GAIC's investigation continued past the bar date and that it did not transmit a coverage decision until after that point. Neither of those allegations are sufficient to support a waiver or estoppel claim, for the reasons described above.

Nor does Millennium's claim that GAIC relied on documents outside the pleadings to support its limitations defense change the result. (Opp. 18-19). For starters, the Complaint clearly refers to Millennium's proof of loss (Complaint ¶ 27), which, in turn contains a sworn statement from a Millennium representative that it discovered the loss in June of 2017 (Lebersfeld Dec. Ex. A). Otherwise, GAIC's reference to Millennium's counsel's timeline of GAIC's investigation (Lebersfeld Dec. Ex. D) is proper given that the Complaint itself alleges that the investigation is material to its claims.[7] But even if Millennium is correct that these documents are "outside the pleadings," the Court can convert GAIC's motion to one for summary judgment. Fed. R. Civ. P.

---

[7] While it does not affect the outcome of the motion, GAIC is compelled to point out that Millennium disingenuously claims that GAIC made a coverage determination in February of 2019 by quoting part of the Opening Memorandum that writes: "GAIC determined in February of 2019 that Merdis had diverted monies that Millennium owed to legitimate travel agents." (Opp. 18). Millennium, likely by design, does not quote the entirety of the sentence, which explains that the revelation "raised legitimate questions such as why those legitimate travel agents did not lodge complaints for commission payments they did not receive or whether they were ultimately ever paid for their bookings," concerns which the timeline itself acknowledges. (Open. 16).

12(d). Millennium, in turn, is required to sufficiently demonstrate why it needs discovery, which, for the reasons described below, it has not done.[8]

## III.  THE OTHER SUBMISSIONS OF MILLENNIUM'S COUNSEL DO NOT WARRANT THE DENIAL OF GAIC'S MOTION

### A.  Dorfman Declaration

In an attempt to comply with Rule 56(d), Millennium's counsel has submitted a declaration (ECF Dkt. # 19-1, "Dorfman Declaration" or "Dorfman Dec.") setting forth various documents and testimony it supposedly needs to demonstrate that it suffered a covered loss (or that GAIC's calculations in that regard were not correct) and that he argues would support its claim of waiver and estoppel with respect to GAIC's limitations defense. Millennium's fundamental problem is that information allowing it to sufficiently allege facts giving rise to these claims (much less to raise an issue of material fact) is necessarily within its ken. The Sixth Circuit has held that these circumstances do not justify permitting a plaintiff to obtain discovery in hopes of avoiding the operation of a limitations period. *Hamilton County Bd. of Com'rs v. Nat'l Football League*, 491 F.3d 310, 320 (6th Cir. 2007); *Ball v. Union Carbide Corp.*, 385 F.3d 713, 720-21 (6th Cir. 2004).

Specifically, with respect to GAIC's coverage determination, Millennium asserts that it needs GAIC's claims file and the documents that underlie its forensic accountant's analysis to determine if GAIC is in possession of as-yet undisclosed facts that "conflict with its ultimate conclusion" and that might otherwise call its forensic accountant's analysis into question. (Dorfman Dec. ¶¶ 9-10). Mr. Dorfman's Declaration, however, must grudgingly accept that

---

[8] Even if Millennium's bad faith claim (Count II) is not subject to the Policy's limitations clause under Ohio law, Millennium cannot dispute the common sense rule that there can be no claim for bad faith if the insurer correctly concludes the insured's claim is not covered. *Oak Hill Investment IV LLC*, 2017 WL 4286778, at *4 ("Under Ohio law, an insurer's decision to deny coverage is not in itself bad faith, but the refusal may not be an arbitrary or capricious one but must be based on circumstances that furnish reasonable justification therefor.") (cleaned up).

GAIC's "ultimate conclusion" was that the legitimate travel agents were never paid. (*Id.* at ¶¶ 11-12). Of course, information that would establish whether Millennium itself ever paid the legitimate travel agents would necessarily be in its possession, or at least Millennium must explain why this is not the case, which neither the Complaint nor the Dorfman Declaration do. *See Egerer v. Woodland Realty, Inc.*, 556 F.3d 415, 425 (6th Cir. 2009). And while Millennium's concerns might raise an issue as to GAIC's calculations (something the Complaint does not allege), it does not save its Declaratory Judgment claim, which is based on the allegation that GAIC disagrees with the notion that "proof that Merdis' dishonest acts caused Millennium to transfer $1,954,329.13 in funds that otherwise would not have been transferred, standing alone, establishes loss', and triggers [GAIC's] obligation to pay Millennium an amount equal to every penny of this amount." (Complaint ¶¶ 79-80).

Millennium's claim that discovery is needed to develop its waiver and estoppel claims is similarly misplaced. (Dorfman Dec. ¶¶ 14-22). Specifically, Millennium claims that GAIC "has not identified all persons who communicated on GAIC's behalf with Aon or Millennium regarding the Claim, nor those who have knowledge of or directed such communications." (*Id.* ¶ 16). Put another way, Millennium claims discovery is needed to determine which of ***its own employees*** communicated with GAIC; facts Millennium must necessarily know. The same principle holds true for GAIC's communications with Aon, because Aon was acting as Millennium's agent from the very beginning of the claims process, writing to GAIC: "[o]n behalf of [Millennium], and in accordance with the reporting provisions of the Policy, we hereby report to you a situation that may give rise to a Loss under the referenced policy." (Lebersfeld Dec. Ex. B); *In re Fair Finance Co.*, 834 F.3d 651, 676 (6th Cir. 2016) (Under Ohio law, "[a] principal is generally charged with the knowledge of and conduct undertaken by its agent operating within the scope of his

employment") (citation omitted).  Because Millennium is unable to identify anything that GAIC said or did to it, its desire to learn GAIC's "intent and private beliefs" is properly viewed as a fishing expedition, in the same way a litigant cannot claim discovery is needed to dig up evidence of fraudulent intent without even a bare description of an alleged false statement.  *See Young v. Carrier Corp.*, 4:14-cv-0974, 2014 WL 6617650, at *6  (N.D. Ohio Nov. 21, 2014)  (holding that plaintiff was required to plead facts establishing plausibility of tolling of statute of limitations by equitable estoppel including a sufficient description of a misrepresentation).

Millennium's argument that it needs discovery to learn facts that it necessarily would know even without the benefit of a lawsuit is a roundabout way of admitting that there are no set of facts it could prove that would establish that GAIC is barred from relying on the limitations clause, much less that it must make plausible nonconclusory allegations necessary to support its waiver and estoppel arguments.  Thus, Millennium's description of the items it needs in discovery only provides additional grounds for grating GAIC's motion.

**B.** **Millennium's Objections To Defendant's Exhibits**

Millennium's various objections (ECF Dkt. # 21, "Objections") to the exhibits annexed to the Lebersfeld Declaration are likewise meritless.  Initially, Millennium makes a blanket objection to those exhibits on the grounds of authentication.  (Objections ¶ 3).  With the exception of the Aon company fact sheet (addressed below), all of those documents were either authored or received by Millennium or its agents.  That Millennium does not claim the documents were altered, reveals its authentication objection is an arbitrary roadblock it hopes will impede the granting of GAIC's motion.

The Court should also reject Millennium's specific objections:

- Aon Fact Sheet, Exhibit C:  As the Lebersfeld Declaration states, the Aon Fact Sheet is publicly available.  For the sake of completeness, it can be found on Aon's

website at the URL https://www.aon.com/getmedia/448f0bc2-e2ce-4630-82b8-653797eac2b8/Aon-plc-Fact-Sheet-2019-03-25.aspx. It was referenced in GAIC's motion to demonstrate that Aon is one of the world's largest risk consulting and insurance brokerage firms, a fact that the Court could probably take judicial notice of. In any event, it is not material to GAIC's motion.

- Drach Letters dated December 17, 2019 and January 31 2020, Exhibits F and H: These exhibits are explicitly referenced in the Complaint at paragraphs 41 and 47-48, respectively. They are being offered only to reveal GAIC's coverage position and when it was transmitted to Millennium. Contrary to Millennium's argument, they are not being offered to establish the truth of what GAIC's investigation revealed.

## <u>CONCLUSION</u>

For all of the foregoing reasons, and for the reasons stated in its Opening Memorandum, defendant Great American Insurance Company respectfully requests that the Court dismiss the Complaint herein with prejudice.

Respectfully submitted,


/s/ *James Papakirk,* Trial Attorney
James Papakirk (0063862)
Hallie S. Borellis (0076510)
Flagel & Papakirk LLC
50 E-Business Way, Suite 410
Cincinnati, OH  45241
Phone:  513-984-8111
Fax:  513-984-8118
jpapakirk@fp-legal.com
hborellis@fp-legal.com

*and*

Stephen N. Dratch (admitted *pro hac vice*)
Daniel Lebersfeld (admitted *pro hac vice*)
Franzblau Dratch, PC
354 Eisenhower Pkwy.
Livingston, NJ  07039
Phone:  973-992-3700
Fax:  973-994-0139
sdratch@njcounsel.com
dlebersfeld@gmail.com
*Counsel for Defendant Great American
Insurance Company*


## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing document was electronically filed on May 1, 2020, and will be served electronically by the court's CM/ECF system upon all counsel of record.


/s/ *James Papakirk*
James Papakirk (0063862)