# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| M&C HOLDINGS DELAWARE PARTNERSHIP, et al., | Case No. 1:20-cv-00121-SJD-KLL |
| Plaintiffs, | Judge Susan J. Dlott |
| v. | Magistrate Judge Karen L. Litkovitz |
| GREAT AMERICAN INSURANCE COMPANY, | |
| Defendant. | |

## DEFENDANT GREAT AMERICAN INSURANCE COMPANY'S OBJECTIONS TO MAGISTRATE'S REPORT AND RECOMMENDATION DATED JULY 30, 2020

Pursuant to Fed.Civ.R. 72(b)(2), Defendant Great American Insurance Company ("GAIC"), by and through counsel, submits its Objections to the Magistrate's Report and Recommendation dated July 30, 2020 (Doc. No. 24), recommending that Defendant's motion to dismiss (Doc. 18) be denied.

### PRELIMINARY STATEMENT

In this action, Plaintiffs M&C Holdings Delaware Partnership, M&C Hotel Interests, Inc., M&C Management Services (USA), Inc., CDL Hotels (USA), Inc., and RHM-88, LLC (collectively, "Millennium") seek recovery under a crime protection policy (a type of fidelity policy) for losses they claim they sustained as a result of the dishonest acts of Millennium's former employee, Wayne Merdis ("Merdis"). GAIC denied the bulk of Millennium's $1.9 million claim because its investigation concluded that Merdis stole monies (in the form of commissions for hotel room reservations) that Millennium owed to third-party travel agencies who, in turn, have never

sought payment from Millennium.  GAIC moved to dismiss Millennium's Complaint for two reasons: (1) Millennium, in reality, incurred an uncovered "bookkeeping" or "theoretical" loss because Merdis stole funds owed to third-parties, which had the effect of relieving Millennium of its obligations to those third parties; and (2) Millennium filed suit eight months after the time to do so had expired pursuant to the policy's unambiguous two-year limitations clause.

This Court should reject the Magistrate Judge's Report and Recommendation and grant GAIC's motion to dismiss upon *de novo* review.  Specifically, the Magistrate Judge erroneously accepted Millennium's superficial "cash out the door" theory of a loss, which posits that a loss exists immediately upon the disbursal of funds without further inquiry into its actual financial impact on the insured.  To approve this construct would award Millennium a windfall since it would be reimbursed for money it owed to legitimate third parties, but whom it never paid.  Accordingly, the Magistrate Judge's decision with respect to coverage should be rejected.  *See* Objection I, *infra*.

The Magistrate Judge also erroneously concluded that discovery was needed to determine whether Millennium has a valid waiver defense to the policy's limitations clause because the only nonconclusory allegations she recognized refer to GAIC's actions *after* the limitations period had run, which Ohio law does not permit.  Otherwise, Millennium's allegations of GAIC's unspecified "words and conduct" prior to the date the limitation period had run cannot save Millennium's Complaint.  The Sixth Circuit has made clear that even on a Rule 12(b)(6) motion to dismiss, a party seeking to avoid a time-bar defense (however labeled) must state the basis in a sufficiently detailed manner – details which Millennium has failed to identify.  *See* Objection II.

## STATEMENT OF FACTS

**The Parties**

Millennium and its affiliated companies own and operate premium hotels in the United States. (CM/ECF Doc. #1 (hereafter, "Complaint") at ¶ 1).

GAIC is a corporation organized under the laws of Ohio and is in the business of providing commercial property and casualty insurance and related insurance products. (*See* Complaint ¶ 12).

**The Policy**

GAIC issued Crime Protection Policy No. SAA 5245001-13-00 (the "Policy"), which insured Millennium for the Policy Period of May 31, 2017 through May 31, 2018. (CM/ECF Doc. #1-1 (hereafter, "Policy") at p.1, attached as Exhibit A to the Complaint).[1] GAIC agreed to "pay for loss covered by an Insuring Agreement of this Policy that you sustain resulting directly from acts committed or events occurring at any time and discovered by you during the Policy Period." (Policy § A). The relevant "Insuring Agreement" here is Insuring Agreement 1 (Policy § B(1)) that applies to employee dishonesty and provides, subject to certain exceptions not relevant to GAIC's motion:

> We will pay for loss resulting directly from dishonest acts committed by an employee, whether identified or not, acting alone or in collusion with other persons with the manifest intent to:
>
> a. Cause you to sustain a loss; and
>
> b. Obtain an improper benefit for:
>
> (1) the **employee**; or

---

[1] The named insured under the Policy is M&C Holdings Delaware Partnership. The other entities that are the plaintiffs herein are added as named insureds pursuant to Endorsement 4 of the Policy.

3

>>(2) any person or organization intended by the **employee** to receive that benefit.[2]

The Policy also provides that Millennium "may not bring any legal action against us involving loss [u]nless brought within 2 years from the date you discover the loss." (Policy §E(11)(c)).

**The Claim**

Wayne Merdis was a Millennium employee from 1993 through 2017. He held the titles of Reservation Manager and Corporate Revenue Manager and was based in New York City at One UN Plaza. (*See* Millennium's Proof of Loss with exhibits omitted ("Proof of Loss"); Declaration of Daniel Lebersfeld ("Lebersfeld Declaration" or "Lebersfeld Decl.") Ex. A, ECF Dkt. 18-2, PAGEID 137). Since about 2001, Merdis had been running a scheme in which he had formed a phony travel agency he called Annayad Travel and other related fictitious entities (collectively, "Annayad"). (Complaint ¶ 20). Having had access to Millennium's reservation booking system, Merdis caused Annayad to be falsely listed as the travel agency of record on thousands of reservations at Millennium hotels so that commissions would be paid to Annayad. (*Id.*) Millennium discovered Merdis's scheme by no later than June 22, 2017 when he admitted its existence to senior Millennium personnel during his exit interview. (ECF Dkt. 18-2, PAGEID 138). Millennium's broker, Aon, provided notice of Millennium's claim to GAIC on June 23, 2017. (Lebersfeld Decl. Ex. B, ECF Dkt. #18-2, PAGEID 140).

On August 31, 2018 (more than a year after it first provided notice of its claim) Millennium, through Aon, submitted its Proof of Loss, which stated that the date of discovery was "June 2017" and claimed a net loss of $1,954,329.00. (ECF Dkt. 18-2, PAGEID 137). Included among the documents that accompanied the Proof of Loss was a summary of the interview where Merdis

---

[2] The Policy defines bolded terms.

4

admitted his scheme to Millennium personnel, a copy of the indictment, a spreadsheet listing payments made to Annayad, and documents from the Manhattan District Attorney's office. (*Id.*) Millennium's proof of loss did not indicate whether Merdis diverted commissions that were owed to legitimate travel agents or if he inserted Annayad as the travel agent of record for reservations that had not been booked with a travel agent.

Both before and after the submission of the Proof of Loss, GAIC investigated Millennium's claim with the aid of a forensic accountant that the Complaint imprecisely describes as a "private investigator." (Complaint ¶¶ 28, 40). Eventually, on February 20, 2019, Aon confirmed to GAIC's forensic accountant that Merdis's scheme involved the misappropriation of commission payments Millennium otherwise legitimately owed to third-party travel agents, although some of the bookings did not involve a legitimate travel agent. (ECF Dkt. 13-2, PAGE ID 147). This information raised several concerns, including why these legitimate travel agents had never complained about commissions they did not receive and, more importantly, whether Millennium eventually paid any of the legitimate travel agents for those commissions. (*Id.*)

By letter dated December 17, 2019, GAIC, through counsel, informed Millennium that Millennium's records could only establish that it had suffered a covered loss of $267,035.90 against which a $250,000 deductible would apply. (Lebersfeld Aff. Ex. F, ECF Dkt. 18-2, PAGEID 151-54). GAIC explained that Millennium's records only allowed GAIC to determine, for the period of 2008 through 2017, that $1,106,865.55 of Merdis's theft came from bookings brokered by legitimate travel agents, and that $267,035.90 came from bookings involving no legitimate travel agent. (*Id.* at PAGEID 152). GAIC explained further that, for the $580,239.18 that Merdis misappropriated from 2001 through 2007, Millennium's records were not sufficient to enable GAIC to quantify how much Merdis was able to steal pursuant to each method, with the

5

exception of $188.55.  (*Id.*)  GAIC's letter then explained that commissions owed to legitimate travel agents that Merdis diverted to himself were akin to an uncovered "bookkeeping loss" unless and until Millennium reimbursed the legitimate travel agents.  (*Id.* at PAGEID 153-54).  The letter concluded with a reservation of rights that stated: "Please be aware that GAIC's reference to specific provisions of the Policy or particular case law does not, nor is it intended to, waive any of the rights or defenses GAIC may have under the terms of the Policy or at law, and GAIC explicitly reserves any and all such rights or defenses."  (*Id.*)

Millennium's counsel responded more than a month later by email dated January 21, 2020. (Lebersfeld Decl. Ex. G, ECF 18-2, PAGEID 155).  While that email disputed GAIC's legal positions, it did not dispute GAIC's version of the facts, except to raise the possibility that additional information might reveal that the legitimate travel agents were paid at some point.  (*See id.*)  Attached to the email was a draft complaint that Millennium's counsel stated it was prepared to file in the United States District Court for the Southern District of New York if GAIC did not pay its claim in full.  (*Id.*)

On January 31, 2020, GAIC's counsel responded to the January 21 email acknowledging receipt of the draft complaint that was attached thereto and stated that any such suit would be time barred based on the two-year limitations clause contained in the Policy.  (Lebersfeld Decl. Ex. H, ECF Dkt. 18-2, PAGEID 159-163).  Otherwise, GAIC reiterated and further explained its interpretation of the Policy.  (*Id.*).  The letter concluded with another full reservation of rights.  (*Id.* at PAGEID 162-63).

**<u>Millennium's Lawsuit</u>**

Millennium filed its lawsuit on February 13, 2020.  Its Complaint alleges claims for breach of contract (Count I) and bad faith denial of coverage (Count II).  Millennium's Complaint also

6

asserts a count for a declaratory judgment (Count III) that the Policy covers all methods that Merdis used to commit his fraud, including when he misappropriated commissions owed to legitimate travel agents. Importantly, the Complaint does not allege that GAIC's calculations as to the amounts that Merdis misappropriated from legitimate travel agents are incorrect.

**The Magistrate Judge Recommends Denial Of GAIC's Motion to Dismiss**

GAIC moved to dismiss the Complaint pursuant to Rule 12(b)(6), on the grounds that: (i) the Policy did not afford coverage for commissions owed to legitimate travel agencies that Merdis misappropriated for himself because the Complaint did not allege Millennium ever paid those travel agencies; and (ii) that Millennium's suit was time barred because it was filed more than two years after the date it discovered its loss. (ECF Dkt. 18-1). Millennium opposed the motion in its entirety. (ECF Dkt. 19).

By Report and Recommendation ("Report" or "Rep't") filed on July 30, 2020, the Magistrate Judge denied GAIC's motion in its entirety. (ECF Dkt. 24). The Magistrate Judge concluded that Millennium suffered a covered loss because it alleged that it had disbursed funds as a result of Merdis's fraud, regardless of whether those monies were owed or not owed to legitimate travel agencies. (Rep't 7-13). As to the limitations issue, the Report concluded that, although the Policy's limitations provision is valid and enforceable, discovery is needed to determine whether GAIC waived its rights to rely on it based on the Complaint's allegations of GAIC's unspecified "words and conduct" and the contents of letters that GAIC's counsel sent to Millennium's counsel in December of 2019 and January of 2020. (Rep't 17-19).

**Standard of Review**

Fed. R. Civ. P. 72(b)(3) provides that, in any pretrial matter involving a dispositive claim or defense, a district court judge "must determine de novo any part of the magistrate judge's

disposition that has been properly objected to." GAIC's motion to dismiss under Rule 12(b)(6) is undoubtedly a dispositive claim or defense. *Brewster v. Aramark Corp.*, 2:14-cv-273, 2015 877885 (S.D. Ohio Mar. 2, 2015). Therefore, this Court "must consider the matter referred to a magistrate judge anew, as if it had not been heard before and as if no decision previously had been rendered." Wright & Miller, 12 Fed. Prac. & Proc. Civ. § 3070.2 (3d ed.).

### First Objection

### The Report Erroneously Holds That Merdis's Theft Of Funds Millennium Owed To Legitimate Third Party Travel Agents Constitutes A "Loss"

The Magistrate Judge recognized that the Policy requires Millennium to have suffered a "loss" for coverage to arise. (Rep't 7). While the Policy does not define the term "loss," it does not mean it is without meaning or ambiguous. *Chicago Title Ins. Co. v. Huntington Nat'l Bank*, 87 Ohio St. 3d 270, 273, 1999-Ohio-62, 719 N.E.2d 955 ("Just because the policy does not define a term does not mean that the policy is ambiguous."). Rather, it is generally understood that "loss" means a pecuniary loss. 11A Couch on Ins. § 160:60 (3d ed. Dec. 2019).

A corollary to the requirement of a pecuniary loss is the concept that the insured cannot recover for a "bookkeeping" loss or "theoretical" loss under which the dishonest act of the employee has the effect of offsetting another liability of the insured. *F.D.I.C. v. United Pacific Ins. Co.*, 20 F.3d 1070, 1080 (10th Cir. 1994). The typical example is where a bank employee embezzles funds from the bank and uses those funds (or a portion of those funds) to pay down separate debt owed to the bank. In that case, the bank has not suffered a loss because the loss caused by the embezzled funds is offset by debts to the bank that were paid off. *See, e.g., Citizens Bank & Trust Co. v. St. Paul Mercury Ins. Co.*, CV305-167, 2007 WL 4973847, at **3-4 (S.D.

Ga. Sept. 14, 2007); *BancInsure, Inc. v. Peoples Bank of the South*, 866 F. Supp. 2d 577, 588 (S.D. Miss. 2012).

While the Magistrate Judge appeared to accept the concept of an uncovered bookkeeping loss, she concluded it does not apply here, reasoning that the case law holds that the inquiry ends once it is determined that the insured disbursed funds as a result of a covered dishonest act. (Rep't 12). To the contrary, neither the case law nor any legal interpretation of pecuniary loss supports that view.

The Magistrate Judge relied primarily on two cases. Neither of those cases, however, supports the denial of GAIC's motion to dismiss because those cases, in relevant part, addressed whether an undisputed loss is "direct," as opposed to whether the insured incurred a loss at all, which is the inquiry here. Specifically, in the first of these two cases, *American Tooling Ctr., Inc. v. Travelers Cas. & Sur. Co. of Am.*, the Sixth Circuit addressed a computer fraud claim where the insured was duped into wiring funds to a fraudster who impersonated one of the insured's vendors that had already performed its services for the insured, but had not yet been paid. 895 F.3d 455, 457-58 (6th Cir. 2018). After the fraud was revealed, the insured paid the vendor half the money it owed and agreed that payment of the remaining half would be contingent on the success of its claim against the insurer. *Id.* at 458. The insurer conceded that the insured had suffered a pecuniary loss as a result of having paid the vendor, but argued that this loss was not "direct" because the "loss arose later, after the fraud was discovered, when [the insured] agreed to pay [the vendor]." *Id.* at 459. Thus, the Sixth Circuit recognized that the "issue [in that case] is what is meant by the word 'direct,'" since whether the insured suffered a loss was not disputed. *Id.* Tellingly, the court did not hold that the insured necessarily suffered a loss when it transferred its money to the fraudster, but only stated the obvious: that the insured "lost its money" at that point.

9

*Id.* at 460. The court concluded that the insured's subsequent payment arrangement with the legitimate vendor "has no bearing on whether this loss was *directly* suffered by [the insured.]" *Id.* at 460-61 (emphasis added). Here, on the other hand, there is no dispute, or at least Millennium has never alleged, that it ever paid the legitimate travel agents for their commissions that Merdis diverted to himself. Thus, the ancillary question of whether Millennium might have suffered a "direct" loss is irrelevant to GAIC's motion, because the Complaint fails to plausibly allege that Merdis's theft from legitimate travel agents constituted a loss in the first place.

In the second "direct loss" case, *First Defiance Fin. Corp. v. Progressive Cas. Ins. Co.* ("*First Defiance*"), the insured's employee, an investment advisor, stole money from client brokerage accounts. 688 F.3d 265, 267-68 (6th Cir. 2012). The insured indisputably suffered a loss because the insured reimbursed the defrauded clients. *Id.* Therefore, the issue again was whether the insured's payments to third parties (the investment advisor's clients) constituted a "direct" loss. *Id.* at 270-71. The Sixth Circuit concluded the loss was direct because the insured's fiduciary relationship with clients made liability for defalcated account funds automatic and not contingent on intervening events, such as the uncertain outcome of subsequent litigation. *Id.* The Magistrate Judge nevertheless concluded that *First Defiance* supported Millennium's rigid "cash out the door" theory because the Sixth Circuit did not explicitly "predicate its finding of a direct loss on the fact of a reimbursement pursuant to a preexisting legal obligation." (Rep't 9). This reading of the decision overlooks the fundamental purpose of insurance, which is to indemnify the insured for its losses, not to provide a windfall. Indeed, it is implausible that the result in *First Defiance* would have been the same if after more than five years (the period of time between when the insured discovered the loss and the date of the Sixth Circuit's decision), the insured had not

only never reimbursed the defrauded account holders, but also that the defrauded account holders had not even inquired about the advisor's misappropriations from their own accounts.

The very premise of Millennium's Complaint is that it is allowed to do just this and recover the full amount of its supposed "loss" all the same. This would allow the holders of fidelity policies to improperly obtain windfalls, as one commentary articulates:

> While the misappropriation of a third-party's property in the possession and control of the insured debtor is a loss for certain purposes, the mere misappropriation of such property, without a corresponding claim and finding of liability against the insured for that loss, is not compensable under the bond. Common sense dictates that if the third party fails to pursue a claim against the insured or the insured successfully defeats the claim, the insured cannot profit from its employee's misconduct by asserting a bond claim.

Scott Schmookler, *The Compensability of Third-Party Losses Under Fidelity Bonds*, 7 Fidelity L.J. 115, 140-41 (Oct. 2001). If the insured never had to reimburse third-party losses, a premise that necessarily follows from the Report, an insured would never have to make good on third-party losses, and would therefore receive a windfall, courtesy of its fidelity insurer. *In re Ben Kennedy & Assocs., Inc.*, 40 F.3d 318, 319-20 (10th Cir. 1994) ("[the insured's] insurable interest in the loss of its clients' money while in its possession could only extend as far as the financial detriment it would suffer as a result of that loss").

The Magistrate Judge appeared to leave open the possibility that there could be a "loss neutralizing factor" that offsets the loss caused by the actual disbursement of funds, but concluded that any such loss neutralizing factor here is "theoretical" because the "legitimate travel agencies have not yet demanded reimbursement [that] should not impact the loss analysis here." (Rep't 10-11). This reasoning inverts the analysis. The Complaint's premise is that Millennium is entitled to coverage for commissions it owes to legitimate travel agencies regardless of whether those legitimate agencies have or ever will demand payment from *Millennium*. Indeed, the Complaint

11

does not allege that Millennium ever reimbursed a single legitimate travel agency or that a single legitimate travel agency has ever even complained to it about commissions it did not receive. Thus, in reality, it is actually Millennium that is seeking payment for a "theoretical" liability.

\* \* \*

While the Magistrate Judge seemed to acknowledge the principle that fidelity policies (or any other type of insurance policy) should not be read to give the insured a windfall (Rep't 10), that is what the Report has undoubtedly mandated here. The premise of Millennium's Complaint is that so long as it can show that it sent its funds "out the door" as a result of its employee's dishonest acts, it is entitled to coverage even if those very funds were meant to pay for legitimate services rendered by third parties, without regard to whether Millennium has or ever will actually pay them. The Magistrate Judge's adoption of this interpretation of the Policy must be rejected.

**Second Objection**

**The Magistrate Judge Erroneously Ruled That
Millennium's Allegations Were Sufficient To Raise A
Plausible Question That GAIC Waived The Policy's Limitations Clause**

The Magistrate Judge agreed with GAIC that the Policy's limitations clause, which required Millennium to bring suit within two years of the date of the discovery of its loss, was enforceable under Ohio law. (Rep't 17). Indeed, the Sixth Circuit has held that an identically worded limitations clause with a one-year limitations period was enforceable under Ohio law. *Friendly Farms v. Reliance Ins. Co.*, 79 F.3d 541, 544 (6th Cir. 1996). The Magistrate Judge further concluded that there could be no dispute that Millennium filed suit more than two years after it discovered its loss. (Rep't 13). Yet, the Magistrate Judge held that Millennium's allegations were sufficient to raise a question as to whether GAIC waived requirements of the limitations clause by virtue of taking "any action, misleading or not, that suggested Millennium's

claim would be covered, thereby causing [it] to delay filing suit." (Rep't 19). To conclude that, the court would either have to rely on unspecified, conclusory allegations that make no mention of waiver, or it would have to rely on communications that took place after the contractual limitations period had already expired.

Specifically, the Magistrate Judge's conclusion that discovery is needed to assess the merits of Millennium's un-pleaded waiver claim is explicitly based on allegations contained in only five paragraphs of the Complaint. (Rep't 17-18). Three of these quoted paragraphs of the Complaint (¶¶ 40-41 and 48) refer to GAIC's coverage letters, dated December 17, 2019 and January 31, 2020, in which GAIC acknowledged that part of Merdis's scheme -- those which did not involve legitimate travel agents -- constituted a covered loss. The contents of these letters, which indisputably were transmitted outside of the limitations period, are irrelevant in a contractual limitations analysis because "acts or conduct giving rise to waiver or estoppel must have occurred within the time limitation contained in the policy, rather than after such limitations have run." *Friendly Farms*, 79 F.3d at 545 (quotation and alteration in original omitted); *Armco, Inc. v. Reliance Nat. Ins. Co.*, 19 F. Supp. 2d 807, 810 (S.D. Ohio 1998) (insurer did not waive policy's limitation clause even where it was not explicitly raised as affirmative defense in insurer's answer, although holding that one year limitations period might be unreasonable) (Dlott, *J.*); *Sheet Metal & Roofing Contractors Ass'n of Miami Valley, Ohio v. Liskany*, 369 F. Supp. 662, 668 (S.D. Ohio 1974) ("acts or conduct giving rise to waiver or estoppel must have occurred within the time limitation contained in the indemnity policy, rather than after such limitations have run").

The other two paragraphs of the Complaint upon which the Magistrate Judge relied alleged only that GAIC's unspecified "words and conduct indicated and led Millennium to believe that coverage would be extended, that [GAIC] acknowledged liability under the Policy, and the 'loss'

13

would be covered," such that "[t]here was no justification for [GAIC's] actions, omissions, and delay." (Rep't 17). Because neither the Complaint nor Millennium's submissions in opposition to GAIC's motion make any attempt to describe in even rudimentary detail what GAIC's "words and conduct" actually were, those allegations are conclusory and therefore insufficient to avoid the time limit for bringing suit that the Magistrate Judge had acknowledged had passed. *Bishop v. Lucent Techs., Inc.*, 520 F.3d 516, 520 (6th Cir. 2008) ("The obligation to plead facts in avoidance of the statute of limitations defense is triggered by the fact that 'it is apparent from the face of the complaint that the time limit for bringing the claims has passed.'") (quoting *Hoover v. Langston Equip. Assocs., Inc.*, 958 F.2d 742, 744 (6th Cir. 1992) (alterations omitted)).[3] Indeed, Millennium's allegations of GAIC's unspecified "words and conduct" that caused it to delay bringing suit fall far short of the plausibility standard set forth in *Bell Atl. Corp. v. Twombly*, 540 U.S. 544 (2007), which the Sixth Circuit held must be met in order to avoid the effect of a limitations period that indisputably has passed. *Bishop*, 520 F.3d at 520.

The Magistrate Judge appeared to rule that an attempt to evade the effect of the limitations clause could be based on conclusory allegations of waiver, as opposed to claims based on estoppel or fraudulent concealment, which cannot. (Rep't 18-19). Neither the Report nor Millennium's memorandum cite a single case remotely suggesting that this is a distinction with a difference; one does not appear, because there isn't one. Indeed, not only did the Sixth Circuit in *Bishop* refer broadly to the "obligation to plead facts in avoidance of the statute of limitations" without reference to any particular doctrine that might be the basis of such avoidance, 520 F.3d at 520, but

---

[3] GAIC expects that Millennium will argue in opposition that the Sixth Circuit's holding in *Bishop* does not apply here because this case involves a contractual limitations clause and it was only in reference to Millennium's proof of loss (referenced in the Complaint, but not explicitly alleged) that the date of discovery of the loss was established. Millennium cannot, however, explain why these distinctions matter.

14

it has also, applying Ohio law, used the terms "estoppel" and "waiver" interchangeably when determining whether an insured can avoid the operation of a contractual limitations clause in a crime protection policy. *See Friendly Farms*, 79 F.3d at 545; *see also National Sur. Co. v. Bohn*, 125 Ohio St. 537, 547 (1932) (noting that "words 'estoppel' and 'waiver' are used almost interchangeably by the courts" in assessing whether the insured can avoid the effect of policy provisions).

This Court should also reject any argument that the duration of GAIC's investigation of the claim can provide a basis for Millennium to avoid the operation of the limitations clause, because Ohio law unequivocally provides that "the process of investigation does not constitute a waiver by the insurer." *Friendly Farms*, 79 F.3d at 595 (citations omitted); *Kish v. Chubb Group of Ins. Cos.*, No. 4:04 CV 02224, 2005 WL 1683667, at *7 (N.D Ohio July 19, 2005) (rejecting insured's waiver and estoppel defenses on insurer's motion for summary judgment because "[i]t is well-settled that participation in an insurer's investigation bears little relevance to the application of the suit limitation clause") (citations omitted); *Armco, Inc.*, 19 F. Supp. 2d at 810 ("the process or investigation in determining liability by an insurer does not constitute a waiver by that insurer") (quotation and alteration omitted). Rather, it was incumbent upon Millennium to plead facts plausibly demonstrating that GAIC "performed some act which in and of itself prevents a plaintiff from seeking a remedy in the court; mere conversation, negotiation or discussion is not sufficient unless it deterred plaintiff from his chosen course of action and misled him to the extent that it delayed filing of suit until the limitation period had terminated." *Liskany*, 369 F. Supp. at 668 (S.D. Ohio 1974) (citation omitted). Millennium's conclusory allegations of GAIC's "words and conduct" plainly do not suffice.

Lastly, there is no merit to Millennium's argument that because the Policy conditioned its right to sue on its cooperation with GAIC's investigation, Millennium was somehow excused from bringing suit within the limitations period if GAIC's investigation was not complete at that point. The Sixth Circuit categorically rejected this exact argument, stating: "Ohio law holds that contractual limitations provisions in insurance contracts commence the moment that the triggering event occurs, *regardless of other policy provisions requiring certain conditions be fulfilled before the insured has a right to enforce the contract.*" *Friendly Farms*, 79 F.3d at 545 (emphasis added) (citations omitted). Neither the Report nor Millennium's memorandum cited a single case that suggested this holding does not apply to conditions that the insured cooperate with the insurer's investigation. In fact, as the Magistrate Judge recognized, Judge Nelson's concurring opinion in *Friendly Farms* found "this contention unpersuasive." 79 F.3d at 546 (Nelson, *J.* concurring). And, the court in *Kish, supra*, held that the length of the insurer's investigation could not be used to avoid the operation of a contractual limitations clause where the policy likewise conditioned coverage on the insured's duty to "cooperate with the insurer in the investigation, settlement and handling of any claim." 2005 WL 1683667, at *1 n.4.

\* \* \*

Because there is no real dispute that Millennium filed suit more than two years after it discovered its loss, it was required to plead nonconclusory facts that would establish that GAIC prevented it from filing suit in an otherwise timely manner, regardless of the terminology used to justify its evasion of the mandate Policy's limitations clause. Beyond the generic and wholly conclusory allegations of GAIC's "words and conduct," the Magistrate Judge relied on statements GAIC made long after the limitations period had passed, which the case law makes clear cannot form the basis of a waiver or estoppel defense to the operation of a contractual limitations clause.

16

For these reasons the Magistrate Judge's denial of GAIC's motion to dismiss based on the limitations clause should also be rejected.

## Conclusion

For all of the foregoing reasons, defendant Great American Insurance Company respectfully requests that this Court reject the Report and Recommendation of the Magistrate Judge and grant the motion to dismiss in its entirety.

Respectfully submitted,

/s/ *James Papakirk,* Trial Attorney
James Papakirk (0063862)
Hallie S. Borellis (0076510)
Flagel & Papakirk LLC
50 E-Business Way, Suite 410
Cincinnati, OH 45241
Phone: 513-984-8111
Fax: 513-984-8118
jpapakirk@fp-legal.com
hborellis@fp-legal.com

and

Stephen N. Dratch (admitted *pro hac vice*)
Daniel Lebersfeld (admitted *pro hac vice*)
Franzblau Dratch, PC
354 Eisenhower Pkwy.
Livingston, NJ 07039
Phone: 973-992-3700
Fax: 973-994-0139
sdratch@njcounsel.com
dlebersfeld@gmail.com
*Counsel for Defendant Great American Insurance Company*

## **CERTIFICATE OF SERVICE**

    I certify that a copy of the foregoing document was served on all counsel of record via email on August 13, 2020.

                                            /s/ *James Papakirk*
                                            James Papakirk (0063862)