**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| M&C HOLDINGS DELAWARE PARTNERSHIP, et al. | ) Case No. 1:20cv121 ) ) Hon. Susan J. Dlott ) Magistrate Judge Litkovitz |
| Plaintiffs, | ) ) |
| v. | ) **PLAINTIFFS' RESPONSE TO** ) **DEFENDANT'S OBJECTIONS TO** ) **REPORT AND** |
| GREAT AMERICAN INSURANCE COMPANY, | ) **RECOMMENDATION DENYING** ) **MOTION TO DISMISS** ) |
| Defendant. | ) |

**I.   INTRODUCTION.**

The Magistrate Judge's Report and Recommendation dated July 30, 2020 (Dkt. 24, "R&R") ruled that Defendant Great American Insurance Company's ("Great American") motion to dismiss Plaintiffs' ("Millennium")[1] complaint should be denied.  The R&R squarely rejects Great American's argument that Millennium's loss of approximately $1.9 million in Millennium funds, stolen by an employee of Millennium, from Millennium accounts, does not constitute "loss resulting directly from dishonest acts committed by an employee" of Millennium. R&R at 2.   The R&R also rejects Great American's argument that it is entitled to judgment based on a two-year policy limitation for bringing suit, as (1) the complaint's allegations — that Great American's words and conduct acknowledged liability and induced delay of suit — sufficiently alleged waiver; and (2) the limitation period does not apply to bad faith claims (asserted in Count II), in any event.

---

[1] Plaintiffs M&C Holdings Delaware Partnership, CDL Hotels (USA), Inc., M&C Management Services (USA), Inc., M&C Hotel Interests, Inc., and RHM-88, LLC will be referred to herein, collectively, as either "Millennium" or "Plaintiffs."

1

Great American's objections to the R&R (Dkt. 25, "Objections" or "Obj.") identify no specific error in the Magistrate Judge's findings of fact or legal analysis, and leave its core holdings untouched. The Objections instead pretend that the R&R's thorough analysis does not exist, rehashing the same presentation of facts, authorities, and arguments that were expressly considered and rejected by the Magistrate Judge. Great American now asks the Court to reexamine the points it already made, as if the Magistrate Judge had not already reviewed these same materials and found them not only to lack merit, but to support Plaintiffs' arguments. R&R at 8-10. Moreover, the Objections are riddled with invitations to error, including misstatements of what the R&R actually ruled, reliance upon the wrong legal standard, and mischaracterizations (also made to the Magistrate Judge, and corrected in the R&R) of what facts the Sixth Circuit relied upon as the bases for its holdings, in a vain attempt to distinguish applicable authority.

These Objections are meritless, and should be overruled. The R&R properly disposed of Great American's motion to dismiss, and Plaintiffs respectfully request that it be adopted in full.

## II. THE OBJECTIONS ARE PROCEDURALLY IMPROPER AND NOT ENTITLED TO DE NOVO REVIEW.

Great American sets forth only two objections: the First Objection is "The Report Erroneously Holds That Merdis's Theft Of Funds Millennium Owed To Legitimate Third Party Travel Agents Constitutes A 'Loss'", Obj. at 8, and the Second Objection is "The Magistrate Judge Erroneously Ruled That Millennium's Allegations Were Sufficient To Raise A Plausible Question That GAIC Waived The Policy's Limitations Clause." Obj. at 12. In other words, Defendant disagrees with the outcome, and has opted to object at a very high level of generality, without pinpointing a factual error or error in applying the law that would require a different outcome if not adopted. This is ultimately fatal to each objection.

"The filing of objections provides the district court with the opportunity to consider the specific contentions of the parties and to correct any errors immediately." *Lenoir v. Ohio Dep't of Rehab. & Correction*, 2019 WL 4168968, at *1 n.1 (S.D. Ohio Sept. 3, 2019) (quoting *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981) (emphasis added). Though generally true that a valid objection to a report and recommendation is entitled to *de novo* review, see Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1), many forms of objection are not entitled to a searching clean slate review from the Court.

**First**, *de novo* review applies only to "those portions of a magistrate's report or recommendations to which objections have been made by any party." *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Objecting parties have "the duty to pinpoint those portions of the magistrate's report that the district court must specially consider." *Id.* **Second**, *de novo* review applies only to "matters involving disputed facts and findings," *id.*, and "not arguments regarding the appropriate legal standard." *Beard v. City of Southfield*, 2016 WL 6518490, at *2 (E.D. Mich. Nov. 3, 2016); *Thomas v. Fayette Cty.*, 2017 WL 544600, at *2 (W.D. Tenn. Feb. 10, 2017). **Third**, "[t]he Court need not afford *de novo* review to objections which merely rehash arguments presented to and considered by the Magistrate Judge." *United States v. Dawson*, 2020 WL 109137, at *1 (N.D. Ohio Jan. 9, 2020); *Roberts v. Warden, Toledo Corr. Inst.*, 2010 WL 2794246, at *7 (S.D. Ohio July 14, 2010) ("The Court is under no obligation to review *de novo* objections that . . . attempt to have the Court reexamine the same arguments set forth in the original petition.").

None of Defendant's Objections are proper. Defendant's objections are framed as disagreements with the Magistrate Judge's headline conclusions, and fail to "pinpoint those portions of the . . . report" for the district court to specifically consider. *Mira*, 806 F.2d at 637. The Objections are also not tailored to disputed facts, but outright argue different legal standards

3

should have applied. The Objections even invite the Court to make the same legal errors already sniffed out and rejected by the R&R. Moreover, **all** of Defendant's arguments merely rehash the same arguments made to and considered by the Magistrate Judge in the R&R.

Courts in this district have discretion to summarily overrule such objections, *see Lenoir*, 2019 WL 4168968, at *1, whereas other courts in the circuit choose to review for clear error. *Dotson v. Fayette Cty. Sch.*, 2020 WL 1932368, at *1 (W.D. Tenn. Apr. 21, 2020); *Verdone v. Comm'r of Soc. Sec.*, 2018 WL 1516918, at *2 (E.D. Mich. Mar. 28, 2018). Regardless of the standard of review, the Objections identify no error of any kind warranting modification or rejection of any portion of the R&R.

### III. THE MAGISTRATE JUDGE CORRECTLY HELD THAT THE POLICY COVERS MONEY STOLEN FROM PLAINTIFFS AS "LOSS."

Great American's First Objection fails to identify any error in the Court's ruling that Plaintiffs alleged "loss" under the applicable Policy language. Nor does it show any error in the R&R's analysis of Defendant's so-called "bookkeeping loss" defense. The Magistrate left no stone unturned in thoroughly analyzing and debunking Great American's meritless legal position.

The Magistrate correctly identified the relevant Policy language, covering "loss resulting directly from dishonest acts committed by an employee." R&R at 2. The R&R also correctly observes that "loss" is undefined. Defendant does not identify any other Policy language, or case law, that the R&R should have considered but did not.

Defendant also fails to rebut the core findings and holdings that compel the rejection of its bookkeeping loss defense. The R&R finds that it is "uncontested" that an employee fraud caused disbursement of funds from Millennium accounts. R&R at 12. Defendant does not reference or object to this finding. The R&R also concludes that "direct loss occurs immediately upon . . . disbursement provided that an employee's fraud caused the disbursement," citing Sixth Circuit

4

cases on all fours. R&R at 12. Defendant, again, does not reference this holding and does not object to it. Because direct loss occurred "immediately" upon disbursement, arguments that loss was contingent upon some other future event after the disbursement (here, a second payment to third-party vendors) must be rejected. The Objections dance around this reasoning, but never assail it.

The arguments Great American do make merely rehash the points and authorities it presented to the Magistrate Judge, in hopes that the Court will simply reach a different conclusion upon review of the same materials. Every aspect of the "bookkeeping loss" theory advanced by Great American, and authorities cited on pages 8-10 supposedly supporting it, were squarely addressed by the R&R. There, the Magistrate Judge provided a thorough review of materials and found a "consensus from the authorities discussed" that "direct loss occurs immediately upon . . . disbursement." R&R at 12. On pages 8-9 of the Objections, Defendant again cites to the following cases with little discussion: *F.D.I.C. v. United Pacific Ins. Co.*, 20 F.3d 1070, 1080 (10th Cir. 1994); *Citizens Bank & Trust Co. v. St. Paul Mercury Ins. Co.*, CV305-167, 2007 WL 4973847, at **3-4 (S.D. Ga. Sept. 14, 2007); *BancInsure, Inc. v. Peoples Bank of the South*, 866 F. Supp. 2d 577, 588 (S.D. Miss. 2012). Defendant does nothing to rebut the R&R's finding that each of these cases actually "lend support to ***Millennium's*** argument," because they "emphasize[] that the actual disbursement of funds is the critical component of an actual loss." R&R at 8-10 (emphasis added). Apparently, Great American has no rebuttal to this reading of the case law, as it merely cites to these cases in perfunctory manner with no response to the R&R's analysis.

The Objections are also procedurally improper because they rely on facts outside the pleadings. Great American should know this, because Plaintiffs objected to this same practice and the Magistrate Judge sustained the objections. R&R 6-7. Though the R&R clearly ruled Exhibits C-H of the Lebersfeld Declaration are outside the pleadings and may not be relied upon

5

for a motion to dismiss, *id.*, Great American continues to heavily rely upon these exhibits, including self-serving letters from its trial counsel, as substantive evidence incorporated in the complaint. Specifically, these letters are used to establish that "Merdis's theft" was really "from legitimate travel agents," and not Millennium. Obj. 5-6, 10. This directly contradicts well-pled allegations in the complaint:

- Former Millennium employee Wayne Merdis engaged in a criminal scheme to steal Millennium's money, and funnel this property to Fictitious Agencies set up for his benefit. Compl. ¶¶ 19-24.

- The scheme "directly resulted in Millennium making at least $1,954,329.13 in payments of fictitious and falsely claimed commissions" to these Fictitious Agencies. Compl. ¶¶ 21.

- "Millennium received nothing of value in return for the transfer of these stolen funds." Compl. ¶¶ 21.

- This money was "property of Millennium, not any third party, at the time it was transferred" to the Fictitious Agencies. Compl. ¶ 34, id. at ¶ 22 (transfers from Millennium bank account).

Plaintiffs' allegations leave zero room for argument that the funds were stolen from third party travel agents and not Millennium.

Defendant's mischaracterization of the record also underpins its attempts to distinguish the Sixth Circuit cases relied upon by the R&R. Defendant shows no error in the R&R's thorough analysis of these cases, either. *First Defiance Fin. Corp. v. Progressive Cas. Ins. Co.*, 688 F.3d 265, 271 (6th Cir. 2012) is foundational authority for the Magistrate's core ruling that direct loss occurs immediately upon disbursement of stolen funds. The insured there was a bank which disbursed funds in its custody due to fraud. Defendant, as it did in its briefing to the Magistrate Judge, pounces on the fact that the bank had (at some point) reimbursed its clients who also suffered loss prior to the appeal, in an attempt to distinguish the clear holding of this case.

6

As the R&R explains in detail, Defendant's argument fails because *First Defiance* "did not predicate its finding of a direct loss on the fact of a reimbursement pursuant to a preexisting legal obligation." R&R at 8. The opinion rejected the insurer's argument that "direct loss" under Ohio law required any "contingency," of any sort, to be met before the insured could show loss that directly resulted from theft of funds held in its custody. *Id*. at 8-10. The R&R's analysis of the discussion in *First Defiance* is thorough, persuasive, and not rebutted by Defendant. *Id*.

Defendant speculates that the outcome would have been different if the funds were not reimbursed and no client had inquired to recover the funds, but offers no basis for such reasoning. In fact, it is highly doubtful the Sixth Circuit could or would have arrived at a different result, because it provided this very simple rubric for Ohio insurers to follow when there is an employee theft of funds: "If property qualifies as 'covered property,' and a dishonest employee steals it, the employee 'directly' causes the loss. It is as simple as that . . ." R&R at 8 (citing *First Defiance*). Defendant has never cited Policy language or case law supporting a contrary view.

The Court may likewise dispose of Defendant's disingenuous analysis of *American Tooling Ctr., Inc. v. Travelers Cas. & Sur. Co. of Am.*, 895 F.3d 455, 457-58 (6th Cir. 2018), a case involving a fraudulently induced wire transfer originally intended for another third party. As here, the insurer argued that the third party was the real injured party, not the insured who was duped into transferring its funds. As here, the insurer's position was rejected.

Defendant rehashes its attempt to distinguish *American Tooling* based on its observation that, prior to the appeal, (1) the insured reimbursed 50% of the funds to the intended recipient; and (2) there was an agreement to reimburse the remainder using the insurance recovery, if successful.

The Magistrate Judge considered and rejected Defendant's reading of the opinion, pointing to the Sixth Circuit's express statement that the insured's arrangements to pay third parties who

7

were also harmed "ha[v]e no bearing on whether this loss was directly suffered by [the insured]." R&R at 8. Rather, the *American Tooling* opinion's reasoning tracks perfectly with the R&R, and soundly rejects the argument suggested by Defendant:

> ATC immediately lost its money when it transferred the approximately $834,000 to the impersonator; there was no intervening event. Despite Travelers' argument to the contrary, the fact that ATC contractually owed that money to YiFeng and the two parties later agreed to spread the loss between them has no bearing on whether this loss was directly suffered by ATC. A simplified analogy demonstrates the weakness of Travelers' logic. Imagine Alex owes Blair five dollars. Alex reaches into her purse and pulls out a five-dollar bill. As she is about to hand Blair the money, Casey runs by and snatches the bill from Alex's fingers. Travelers' theory would have us say that Casey caused no direct loss to Alex because Alex owed that money to Blair and was preparing to hand him the five-dollar bill. This interpretation defies common sense.

*Am. Tooling Ctr., Inc. v. Travelers Cas. & Sur. Co. of Am.*, 895 F.3d 455, 460–61 (6th Cir. 2018) (emphasis added).

Nothing in *First Defiance, American Tooling*, or the cases relied upon by Defendant suggests that theft of an insured's funds is anything other than "loss," full stop. Indeed, Defendant has still failed to identify a single Ohio or Sixth Circuit case holding that theft of an insured's funds is not loss, or adopting the so-called "bookkeeping loss" defense.

The tone deaf premise of Great American's position in this matter is that Millennium, the victim of a crime, will somehow reap a "windfall" unless the case is dismissed. Obj. at 2, 10, 11, 12. In support, Defendant cites the supposed general purpose of "fidelity bonds" (which this Policy is not). Obj. at 11.

Great American has this fundamentally wrong. It is <u>Great American</u> that will reap a substantial windfall, and frustrate the aim of the Policy, if this matter is dismissed. "[T]he primary function of insurance is to insure." *Hounshell v. Am. States Ins. Co.*, 67 Ohio St. 2d 427, 431 (1981). <u>Great American</u> made a promise to insure loss directly resulting from employee fraud, and collected significant premiums in consideration of that promise. Now, confronted with a

8

substantial claim for loss caused by employee fraud, Great American seeks to retain the premiums while shirking its end of the bargain to insure. Great American has reaped the time value of this money, deprived Plaintiffs of their rights, and continues to do so despite notice of Sixth Circuit precedent defeating its sole basis for refusing coverage. That is unacceptable.

If Great American believes that its underwriting practices are not in lockstep with those of "fidelity bond" sureties, its remedy is to revise the policy language for future policy years. The market could then bear out whether any business customers will purchase an employee-fraud policy expressly and forthrightly stating that an employee's theft of an insured's funds, disbursed from an insured's accounts, is "loss" not of the insured, but its creditors. What Defendant may not do is manufacture new exclusions under prior-issued policies, in order to impair substantial claims of its insureds, under a Policy that does not include such language — the business strategy Great American attempts to effectuate through this litigation. The First Objection should be overruled.

## IV. THE MAGISRATE JUDGE CORRECTLY DECLINED TO DISMISS ANY PART OF THE ACTION ON POLICY LIMITATION GROUNDS.

Section 11(c) of the Policy purports to bar the insured from bringing suit if asserted more than two years after the discovery of loss. Compl. Ex. A. Defendant attached documents showing Plaintiff's claim was asserted outside this period. Ergo, Defendant posits, the policy limitation defeats the entire complaint.

The Magistrate disagreed, denying the motion on two grounds: (1) Plaintiffs' complaint plausibly alleged waiver of the clause based on Great American's words and conduct; (2) the clause does not apply to the bad faith claim as a matter of law. Finally, the Magistrate analyzed in detail, but declined to reach, Millennium's argument that the policy limitation is unenforceable as an unreasonable limitation on suit. The analysis in the R&R (and Plaintiffs' opposition brief)

9

supplies ample basis to adopt the R&R also on this alternative ground. The R&R should be affirmed and the objections overruled.

### A. The R&R Correctly Held That The Complaint Sufficiently Pled Waiver.

The Magistrate correctly concluded that the "complaint sufficiently alleges facts to support a potential waiver of the Policy's limitations clause." R&R at 18. Great American's Second Objection to the contrary lacks merit.

Great American does not object to any findings of fact in the R&R. There is no argument that the Magistrate misstated the allegations of the complaint, or failed to consider allegations that would establish Great American's entitled to relief.

Likewise, Great American does not dispute the legal standards underpinning the R&R's ruling. Great American does not challenge the R&R's statement that "[i]nsurance policy limitation periods may be subject to waiver even if otherwise reasonable and enforceable." R&R at 15. Nor does Great American directly assail the Magistrate's discussion of the operative legal standards and analogous case law. The Ohio Supreme Court has instructed that "[w]here there has been activity by the insurance company which evidences an admission of liability upon the policy, and resulting reliance by the insured thereon and failure to file within the time limitation of the contract, the company is deemed to have waived the limitation." *Hounshell*, 67 Ohio St. 2d at 432. Nor does Great American challenge the Magistrate's citation to *Hounshell* that "a waiver . . . may occur when the insurer, by its acts or declarations, evidences a recognition of liability under the policy, and the evidence reasonably shows that such expressed recognition of liability and offers of settlement have led the insured to delay in bringing an action on the insurance contract." R&R at 15.

10

Further, the Objection does not challenge the Magistrate's ruling that "[t]here need not be evidence that an insurer actively 'misled' an insured into forebearance, only that the acts or declarations lead to the forebearance." *Id.* Thus, Great American does not dispute that waiver may occur by implication. *Id.*

Finally, Great American does not challenge the R&R's identification of relevant authorities showing that a reasonable fact finder can find many forms of conduct constitute waiver. The R&R cites to the following cases, each of which reflect a flexible and fact-intensive waiver inquiry precluding judgment for an insurer as a matter of law:

- not officially denying the claim during the claim period; *Arp v. Am. Family Ins. Co.*, 932 N.E.2d 968, 974 (Ohio Ct. App. 2010);

- leading the insured to believe that a claim is viable after a limitation period passes; *id.*

- payment of certain expenses, notwithstanding a reservation of rights; *id.*

- informing insured "that their claim was not fully processed and the investigation was still ongoing"; *Lee v. Goodville Mut. Cas. Co.*, 2016 WL 5661683, at *3 (S.D. Ohio Sept. 30, 2016) (denying motion to dismiss);

- making offers that impliedly acknowledge at least partial liability on the policy, leading to a "reasonable hope of adjustment" of the claim; *Hounshell*, 67 Ohio St. at 432; and

- failure to fully process claim during limitation period; *Lee v. Goodville Mut. Cas. Co.*, No. 1:14CV933, 2016 WL 5661683, at *3 (S.D. Ohio Sept. 30, 2016).

Great American does not address these cases. Instead, the Objections stumble out of the gates, by inviting the Court to apply incorrect legal standards and follow irrelevant case law.

First, Great American cites *Sheet Metal & Roofing Contractors Ass'n of Miami Valley, Ohio v. Liskany* to argue that the Court must find that the insurer "performed some act which in and of itself prevents a plaintiff from seeking a remedy in the court" to establish waiver. 369 F. Supp. 662, 668 (S.D. Ohio 1974). Purportedly, "mere conversation, negotiation or discussion is not sufficient unless it deterred plaintiff from his chosen course of action and misled him to the

11

extent that it delayed filing of suit until the limitation period had terminated." *Id.* *Liksany*, however, does not cite any Ohio cases to support these propositions.

*Liksany* is outdated on these points, and Great American should have known this and not cited to it. *Hounshell*, an Ohio Supreme Court decision postdating *Liksany* by seven years and cited in the R&R (at p. 15), considered and rejected an insurer's argument that waiver should apply only "where it is found that the insurance company, by its overt acts, misled the insured into forbearing suit until after the limitation period had expired." 67 Ohio St. 2d at 431. This formulation was "too narrow an interpretation of the law of waiver to be applied to this type of case." *Id.* No purported requirement to identify an "act" that "in and of itself" actually "prevented" suit exists – as noted above, the true standard is "acts or declarations" that "evidence[] a recognition of liability" and merely "led" to delay of filing suit. *Hounshell*, 67 Ohio St. 2d at 431.

Great American also invites error by insisting that waiver and estoppel are the ***same*** doctrine, in an effort to rehabilitate authorities that dismiss claims that advance only estoppel theories to avoid a limitation defense. Not so. *Hounshell* decided that, in Ohio, there are a relaxed set of "circumstances or criteria which would constitute a waiver of a limitation of action clause as contained in an insurance contract." *Id.* No misrepresentation is required to show waiver, as the R&R states. R&R at 19. The authorities cited by Defendant merely show that the rulings in those cases would be the same under either doctrine, but do not collapse them into a single, unified inquiry. *See* Obj. at 15.

Having disposed of Great American's incorrect statements of law, the Magistrate was plainly right in concluding the "complaint sufficiently alleges facts to support a potential waiver of the Policy's limitations clause." R&R at 18. The premise of Great American's objection to this

conclusion is that under Sixth Circuit precedent, the operative conduct forming a waiver "must have occurred within the time limitation contained in the . . . policy, rather than after such limitations have run." *Id.* Great American believes that the only non-conclusory allegations that could establish waiver relate solely to periods after the limitations period would have run.

Once again, this argument was raised and rejected by the Magistrate Judge, who cited to specific allegations in the complaint. R&R at 18. Ironically, Great American's objection that the relevant allegations are "conclusory" is itself conclusory. As above, Great American operates under the wrong legal standard in its Objection, and argues nowhere that the complaint insufficiently alleges waiver under the correct standard. Moreover, Great American cites **no cases** granting a 12(b)(6) motion and holding that allegations were insufficient to plausibly support waiver of an insurance policy limitation. *Cf.* R&R at 17 (citing *Lee v. Goodville Mut. Cas. Co.*, 2016 WL 5661683, at *3 (S.D. Ohio Sept. 30, 2016) ("While Defendants may ultimately prevail at summary judgment on the issue of waiver, the Court will not dismiss the claims at this time.").). Defendant places heavy reliance upon the Sixth Circuit's opinion in *Bishop v. Lucent Techs.*, Inc, but that case did not address: (1) waiver; (2) estoppel; (3) insurance; (4) a contractual limitation period; (5) an insurance policy limitation period; or (6) the relevant standard for finding waiver. 520 F.3d 516, 520 (6th Cir. 2008). Other than setting forth generic principles regarding 12(b)(6) motions, *Bishop* is inapposite.

At bottom, then, Great American asks this Court to substitute the Magistrate Judge's "judicial experience and common sense" for bald assertions that the Complaint's operative allegations are conclusory. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Great American's successive attempt to litigate the same question already presented to and rejected by the Magistrate Judge is arguably not entitled to *de novo* review. *Roberts*, 2010 WL 2794246, at *7. But under

any standard, the Magistrate identified the operative allegations, and properly applied the applicable law and pleading standards in denying the motion.

Paragraph 29 squarely alleges that "*[d]uring the period* in which Great American investigated the Claim, Great American's words and conduct indicated and led Millennium to believe that coverage would be extended, that Great American acknowledged liability under the Policy, and that the 'loss' would be covered." R&R at 17 (quoting complaint, emphasis added). Because the investigation was ongoing from June 2017 to June 2019 (the supposed bar date for suit) and beyond, allegations that Great American's inducement occurred "[d]uring the . . . investigat[ion]" by Great American is sufficient to tether Great American's words and acts to the pre-limitation period.

These allegations are *facts,* not mere legal conclusions couched as facts (i.e., "Defendant waived its limitation clause.") The R&R properly relied on this paragraph and the Objection provides no basis to conclude otherwise. Other paragraphs cited by the R&R further enhance the plausibility of these factual allegations. Paragraph 30 alleges that Great American has "long had at its disposal all facts needed to pay the claim in full." These facts bring the complaint within the ambit of *Arp*, discussed in the R&R, in which the insurer "continually insisted that additional documentation was reasonably necessary to determine the validity of appellant's claim," did not expressly deny the claim, yet may have had sufficient information to make a coverage determination within the limitation period. 187 Ohio App.3d at 569.

Paragraphs 40 and 41 also allege that Great American expressly admitted liability under the Policy, identifying sums that it did not dispute were owing to Millennium, in a communication to Millennium that failed to invoke the limitations clause even though Great American's position here is that it had run already by that time. Great American's argument that these allegations are

14

"irrelevant" because the communications post-dated the limitations period goes too far. Obj. at 13. Relevant evidence is that which "has any tendency to make a fact more or less probable than it would be without the evidence." Fed. R. Ev. 401. Great American's admissions of liability after the period expired are probative toward a finding that it had also admitted liability (by similar express words, or impliedly through words and conduct) before the period expired, as alleged in Paragraph 29. After all, a party has little incentive to admit liability for the first time only *after* a valid limitations defense arises. This implies the admission of liability had already occurred during the investigation, just as Plaintiffs allege.

Plaintiffs are entitled to draw "all reasonable inferences in [their] favor" at this stage *Twumasi-Ankrah v. Checkr, Inc.*, 2020 WL 1608698, at *1 (6th Cir. Apr. 2, 2020), and thus it is at least reasonable to infer that paragraphs 29, 30, 40, 41, and 48 together establish a continuing pattern of acts and communications by the insurer "during the . . . investigation," evidencing an admission of liability under the claim, that induced Plaintiffs to delay suit. R&R at 17; *see Hounshell*, 67 Ohio St. 2d at 433 (admitting liability for pro rata share of loss waived policy limitation by "holding out a reasonable hope of adjustment"). These allegations easily "raise a right to relief above the speculative level" notwithstanding the limitation clause. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). Nothing more is required of Plaintiffs at this stage.

Great American's remaining arguments are red herrings and do not clash with the Magistrate's ruling on waiver:

- **The length and "process of investigation does not constitute a waiver by the insurer.'"** The waiver allegations are not premised on the mere length of the investigation.
- **Millennium was not "excused" from timely bringing suit because "the Policy conditioned [Millennium's] right to sue on its cooperation with [Defendant's] investigation."** Neither the R&R nor Millennium advanced this argument in support of waiver.

15

- **"The Magistrate Judge appeared to rule that an attempt to evade the effect of the limitations clause could be based on conclusory allegations of waiver, as opposed to claims based on estoppel or fraudulent concealment, which cannot."** The R&R expressly states that it will consider only factual allegations. R&R at 3. The R&R does not find that any relevant allegations in the complaint are merely conclusory. Nor does it find that conclusory allegations have plausibly supported the waiver avoidance. The R&R correctly determines that the relevant allegations supporting waiver are factual and non-conclusory.

The Second Objection therefore fails to show the R&R erred, and the objection should be overruled.

### B. The R&R Correctly Held, And Great American Does Not Challenge, That The Limitation Period Does Not Apply To Bad Faith Claims.

Great American does not object to the Magistrate Judge's conclusion that, as a matter of law, the bad faith claim in Count II "is not subject to the Policy's limitations clause." R&R at 19. Indeed, Great American never argued otherwise in its briefing before the Magistrate Judge. Great American is now foreclosed from asserting the limitation clause as a defense to Count II throughout the remainder of this litigation.

Shockingly, Great American invites reversible error by failing to apprise the Court of this ruling, and that its second objection to the R&R does not and cannot serve as a basis to dismiss the entire complaint. Yet, Great American continues to argue that dismissal of the entire action is appropriate if this objection is sustained. Obj. at 16-17. Great American should have, but did not mention the express ruling that "Great American's motion to dismiss should be denied as to Count II on this basis," citing Sixth Circuit and Ohio appellate authority on point. R&R at 20. Millennium requests that the Court expressly adopt this unchallenged, unassailable ruling, which will hopefully prevent Great American from reintroducing such legal error into the case at later stages.

### C. The R&R Considered But Did Not Reach An Alternative Ground To Deny The Motion, Which Also Precludes Dismissal.

Under Ohio law, only reasonable policy limitations are enforceable. In its opposition brief, Millennium argued that the complaint plausibly shows that the limitation period is unreasonable because it extinguished Plaintiffs' right of action before it arose. [Dkt. 19 at 13-15.] The thrust of the argument is this: Plaintiffs could not sue for breach before the breach occurred, a conclusion also bolstered by the Policy language. [*Id.* at 14.]

Defendant falsely claims that "[t]he Magistrate Judge agreed with [Great American] that the Policy's limitations clause, which required Millennium to bring suit within two years of the date of the discovery of its loss, was enforceable under Ohio law." Obj. at 12. This is emphatically not what the Magistrate Judge stated in the R&R. The R&R considered both parties' arguments on this issue, but declined to decide it in either direction. Instead, the Magistrate merely assumed *arguendo* that Great American could establish the reasonableness of its limitation clause, and focuses its analysis on Millennium's other arguments. Great American's support for its belief that the Magistrate "agreed" with Great American is a cite to page 17 of the R&R. But this page makes clear there was no "agree[ment]" with Great American's position:

> While the Court finds that the Supreme Court of Ohio's decisions on limitations periods in the insurance context are somewhat less "bludgeoning" than *Kish*'s characterization, *see* 2005 WL 1683667 at *5, Ohio courts generally enforce policy limitations periods running from the date of discovery of the claim. ***Assuming***, then, ***that the Policy's limitations clause would be enforced***, Great American also asks the Court to also conclude as a matter of law that it did not waive enforcement of that clause.

R&R at 17 (emphasis added).

Because an alternative ground for denial of the motion exists, and was not decided by the R&R nor substantively briefed by Defendant in the Objections, the motion cannot be granted even if the Second Objection is sustained.

17

## V. CONCLUSION.

For the reasons stated above, Plaintiffs respectfully request that the Court overrule all objections by Defendant Great American Insurance Company, and adopt the recommended rulings in the Magistrate Judge's Report and Recommendation dated July 30, 2020.

Dated: August 27, 2020

Respectfully submitted,

/s/ Daniel A. Dorfman
Daniel A. Dorfman
David J. Ogles
FOX SWIBEL LEVIN & CARROLL LLP
200 W. Madison Street. Suite 3000
Chicago, Illinois 60606
312-224-1200
ddorfman@foxsswibel.com
dogles@foxswibel.com

Bryce A. Lenox
The Law Office of Bryce A. Lenox, Esq.
3825 Edwards Rd., Suite 103
Cincinnati, OH 45209
513-426-6546
Bryce@brycelenoxlaw.com

*Trial Attorney for Plaintiffs*

CERTIFICATE OF SERVICE

      I certify that a copy of the foregoing document was electronically filed on August 27, 2020, and will be served electronically by the court's CM/ECF system upon all counsel of record.

                                                  /s/ Bryce A. Lenox
                                                  Bryce A. Lenox