IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| M&C Holdings Delaware Partnership, *et al.*, | : : | Case No. 1:20-cv-121 |
| Plaintiffs, | : : | Judge Susan J. Dlott |
| v. | : : | Order Overruling Objections, Adopting Report and Recommendations, and |
| Great American Insurance Company, | : : | Denying Motion to Dismiss |
| Defendant. | : | |

In this insurance case, Plaintiffs M&C Holdings Delaware Partnership, CDL Hotels (USA), Inc., M&C Management Services (USA), Inc., M&C Hotel Interests, Inc., and RHM-88 (collectively, "Millennium") allege that Defendant Great American Insurance Company ("Great American") has wrongfully denied coverage for a loss caused by the fraudulent acts of its former employee. Great American filed a Motion to Dismiss (Doc. 18) the claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Magistrate Judge Karen L. Litkovitz issued a Report and Recommendation ("R&R") (Doc. 24) on July 30, 2020 recommending that the Motion to Dismiss be denied. Great American has filed Objections (Doc. 25) to the R&R to which Millennium has filed a Response (Doc. 28) in opposition. For the reasons that follow, the Court will **OVERRULE** the Objections, **ADOPT** the R&R, and **DENY** the Motion to Dismiss.

**I.      BACKGROUND**

**A.      Allegations**

The Court re-states with minimal revisions the factual background set forth in the R&R as derived primarily from the Complaint and the crime insurance policy ("the Policy") issued by Great American and providing coverage to Millennium. (Docs. 1, 1-1.)

Millennium operates a chain of hotels throughout the United States. In the ordinary course of its business, Millennium paid commissions to third-party travel agencies in exchange for bookings at its One UN Hotel, located in New York, New York. A Millennium employee, Wayne Merdis, engaged in a fraudulent scheme to siphon off these commission payments from Millennium to fictious travel agencies created by Merdis. He both diverted payments legitimately owed to third-party travel agencies for services those travel agencies actually rendered, and he accepted payments for services which were not rendered at all. Millennium alleges that both types of commission payments amounted to $1,954,329.13, all of which it transferred to Merdis's fictitious travel agencies as a result of his fraudulent scheme.

Great American had issued Millennium the Policy for the period of May 31, 2017 through May 31, 2018. (Doc. 1-1 at PageID 20.) In relevant part, the Policy provided that Great American would "pay for loss covered by an Insuring Agreement of this Policy that [Millennium] sustain[s] resulting directly from acts committed or events occurring at any time and discovered by you during the Policy Period . . . ." (*Id.* at PageID 25.) As it relates to "Employee Dishonesty" specifically, the Policy stated:

> We will pay for loss resulting directly from dishonest acts committed by an employee, whether identified or not, acting alone or in collusion with other persons, with the manifest intent to:
>
> a. Cause you to sustain loss; and
>
> b. Obtain an improper financial benefit for:
>
> (1) the employee; or
>
> (2) any person or organization intended by the employee to receive that benefit.

(*Id.*) (emphasis deleted). "Loss" was not defined in the Policy. The Policy contained a limitations period of "2 years from the date [Millenium] discover[s] the loss." (*Id.* at PageID 35.)

Millennium gave Great American notice of its claim of loss in the amount of $1,954,329.13 resulting from Merdis's fraudulent scheme. Millennium's Complaint does not include the date that it discovered the loss, but the proof of loss form stated that the loss was discovered in June 2017. (Doc. 18-2 at PageID 137.) Great American investigated and concluded that most of Millennium's claim was not a covered loss. First, Great American acknowledged that Millennium suffered a loss to the extent that it paid Mardis or his fictious travel agencies $379,638.87 for services not rendered by any agency. Great American has not yet reimbursed Millennium for that covered loss. Second, Great American argued that payments Millennium made to Merdis or his fictious travel agencies for services actually rendered by real travel agencies were covered losses under the Policy only if Millennium also paid commissions to those travel agencies for the services they rendered. That is, Great American argued that Millennium only suffered a loss if it made a double payment for the actual services rendered.

**B.  Procedural Posture**

Millennium filed this suit in February 2020 for breach of contract, bad faith denial of coverage, and declaratory relief. Great American moved to dismiss in lieu of filing an answer. The Magistrate Judge made three key determinations in the R&R supporting the recommendation to deny the Motion to Dismiss. First, only two of the exhibits proffered by Great American—the proof of loss form and the claim notification letter—could be considered without converting the Motion to Dismiss to a summary judgment motion. (Doc. 24 at PageID 260–262.) Second, all payments to Mardis and his fictious travel agencies pursuant to the fraudulent scheme as alleged in the Complaint constituted losses under the Policy. (*Id.* at PageID 262–269.) Third, the facts alleged in the Complaint established at least a plausible claim that Great American waived enforcement of the two-year limitations period stated in the Policy.

(*Id.* at PageID 273–276.)  As part of the third determination, the Magistrate Judge concluded that the limitations period in the Policy did not apply to Millennium's bad faith denial of coverage claim.  (*Id.* at PageID 275–276.)

Great American made two specific objections to the R&R.  It argued that the R&R (1) "erroneously holds that Merdis's theft of funds Millennium owed to legitimate third party travel agencies constitutes a 'loss'" and (2) "erroneously ruled that Millennium's allegations were sufficient to raise a plausible question that [Great American] waived the Policy's limitations clause."  (Doc. 25 at 285, 289.)  Great American did not object to the determination that only two of its proffered exhibits could be examined at the dismissal stage nor to the conclusion that the limitations clause did not apply to the bad faith denial of coverage claim.[1]

## II. STANDARDS OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  To withstand a dismissal motion, a complaint must contain "more than labels and conclusions [or] a formulaic recitation of the elements of a cause of action."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Courts do not require "heightened fact pleading of specifics, but only enough facts to state a claim for relief that is plausible on its face."  *Id.* at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A district court examining the sufficiency of a complaint must accept the well-pleaded allegations of the complaint as true.  *Id.*; *DiGeronimo Aggregates, LLC v. Zemla*, 763 F.3d 506, 509 (6th Cir. 2014).

---

[1] Great American in the Objections alleged facts based on exhibits the Magistrate Judge refused to consider.  (Doc. 25 at PageID 282–283.)  The Court did not consider those exhibits nor the alleged facts based upon them.

Under 28 U.S.C. § 636(b)(1) and Rule 72(b)(3) of the Federal Rules of Civil Procedure, a district judge must conduct a *de novo* review of those portions of a magistrate judge's recommendation on a dispositive motion to which a party has properly objected. *See Baker v. Peterson*, 67 F. App'x 308, 310 (6th Cir. 2003). A district court "need not provide *de novo* review where the objections are frivolous, conclusive or general." *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986) (per curiam) (cleaned up). Additionally, *de novo* review applies only to matters involving disputed facts. *Id.* "When an objection reiterates the arguments presented to the magistrate judge, the report and recommendation should be reviewed for clear error." *Dotson v. Fayette Cty. Sch.*, No. 2:18-CV-2088-MSN-CGC, 2020 WL 1932368, at *1 (W.D. Tenn. Apr. 21, 2020); *see also Verdone v. Comm'r of Soc. Sec.*, No. 16-cv14178, 2018 WL 1516918, at *2 (E.D. Mich. Mar. 28, 2018) (also reviewing for clear error).

### III. ANALYSIS

The Court will limit its review of the R&R to the two specific objections made by Great American. Although Millennium contends that the Court should apply a clear error review because Great American only has rehashed the same arguments that were rejected by the Magistrate Judge, the Court concludes that it will affirm the R&R under either a *de novo* or a clear error review.

**A.  Whether Millennium Suffered a Loss under the Policy When It Disbursed the Commission Payments to Merdis**

The Magistrate Judge set forth a persuasive analysis supporting the conclusion that Millennium suffered a loss under the Policy. The Court will only summarize it here. Great American argues that the Policy does not cover an alleged loss that is only a bookkeeping or theoretical loss. It further argues that Millennium did not suffer a loss when it made disbursements, or commission payments, to Mardis for actual services rendered by third-party

travel agents because those travel agents never made a demand for the commission payments they were owed. However, the Court agrees with the Magistrate Judge that Great American's arguments are not supported by the case law on which it relies.

The critical element in determining when an actual loss has occurred is whether there has been a disbursement of funds. In 2018, the Sixth Circuit held that an insured company lost its money—suffered a direct loss—when it transferred more than $800,000 to an imposter claiming to be a vendor. *Am. Tooling Center, Inc. v. Travelers Cas. Surety Co. of Am.*, 895 F.3d 455, 460 (6th Cir. 2018), rehearing *en banc* denied (6th Cir. 2018). The Sixth Circuit, in *American Tooling*, rejected the insurer's argument that the loss did not occur until the insured company reached an agreement with its vendor to share the loss and to pay the vendor at least half of the money it owed the vendor. *Id.* at 461 (stating that the agreement to "spread the loss between them has no bearing on whether this loss was directly suffered by [the insured]"). In a second case, the Sixth Circuit held that "[i]f property qualifies as 'covered property,' and a dishonest employee steals it, the employee 'directly' causes the loss" and "[i]t is as simple as that." *First Defiance Fin. Corp. v. Progressive Cas. Ins. Co.*, 688 F.3d 265, 270 (6th Cir. 2012). Millennium has alleged that it made disbursements of funds to Mardis or his fictious agencies for services they did not render. This was sufficient to state a plausible claim that Millennium suffered a loss under the Policy. The Court will not dismiss Millennium's claims for breach of contract, bad faith, or declaratory judgment for failure to state a claim upon which relief can be granted.

**B.**     **Whether Great American Waived Enforcement of the Limitations Period**

It is undisputed that the Policy contained a two-year limitations period and that Millennium filed this suit in February 2020, more than two years after it discovered the loss in June 2017. In the R&R, the Magistrate Judge assumed the limitations period in the Policy was

6

enforceable. However, she concluded that Millennium had pleaded sufficient facts to raise a plausible claim that Great American waived enforcement of the limitations period.

Millennium made the following allegations that pertain to the limitations period analysis:

4. Great American acknowledges the employee's dishonest acts are a covered occurrence under the Policy. Yet, it has denied the majority of Millennium's approximately $1.9 million claim. It asserts, without factual or legal basis, that funds stolen from Millennium's pocket do not constitute a "loss" covered by the Policy.

\* \* \*

28. Upon receipt of notice of Claim, Great American took an unnecessarily excessive amount of time to investigate the Claim. Great American's dilatory tactics included continual demands to Millennium for additional information, some of which was not even in its possession, custody or control. Millennium continued to cooperate as best as it could, nonetheless. Of course, during Great American's extended investigation, Great American never indicated that it would deny the Claim.

29. During the period in which Great American investigated the Claim, Great American's words and conduct indicated and led Millennium to believe that coverage would be extended, that Great American acknowledged liability under the Policy, and that the "loss" would be covered.

30. There was no justification for Great American's actions, omissions, and delay. Great American has long had at its disposal all facts needed to pay the Claim in full.

\* \* \*

37. Indeed, Great American now acknowledges, admits, and does not deny that: (i) the Merdis scheme was a dishonest act by an employee of Millennium, (ii) $1,954,329.13 in funds were transferred by Millennium to the Fictious Agencies, and (iii) these transfers directly resulted from Merdis' dishonest acts.

\* \* \*

40. Great American's letter acknowledged that its private investigator confirmed that Merdis did indeed "divert" and/or "embezzle" payments of $1,954,329.13 from Millennium, yet proposed to pay less than 20% of the entire Claim.

41. Great American's December 17, 2019 letter did not mention any contractual limitation period, or assert any limitation period as a basis for denying coverage. Indeed, the letter admits liability and coverage exists, but unfairly and unreasonably refuses to pay the full amount of the loss. This letter, and Great

7

> American's agreement to make partial payments under the Policy, further led Millennium to believe that Great American would not assert, or had waived, any contractual limitation period in the Policy.
>
> \* \* \* \*
>
> 48. Though the January 31, 2020 letter did reference a purported limitation period, it did not do so as a basis for denying liability or coverage. Indeed, the letter expressly stated that "GAIC is not disputing that Merdis unjustly and criminally enriched himself," and the letter reasserted Great American's offer to pay $379,638.87 under the Claim. Great American does not and has never asserted that it is not liable whatsoever to Millennium. Great American to this day has acted in a manner inconsistent with any contractual limitation period that could operate as a defense to liability or coverage.

(Doc. 1 at PageID 6, 8–9.)

Ohio law recognizes waiver of an insurance contract limitations period "when the insurer, by its acts or declarations, evidences a recognition of liability under the policy, and the evidence reasonably shows that such expressed recognition of liability and offers of settlement have led the insured to delay in bringing an action on the insurance contract." *Hounshell v. Am. States Ins. Co.*, 67 Ohio St. 2d 427, 424 N.E.2d 311, 314 (1981). The Ohio Supreme Court rejected a narrower holding that would have limited waiver to situations "where it is found that the insurance company, by its overt acts, misled the insured into forbearing suit until after the limitation period had expired." *Id.* However, the acts or declarations giving rise to the waiver must occur within the limitations period. *Friendly Farms v. Reliance Ins. Co.*, 79 F.3d 541, 545 (6th Cir. 1996). Also, the mere fact that an insurer is investigating the loss or negotiating coverage for the loss with the insured does not constitute a waiver. *See Id.* (on investigations); *Dieckman v. Prudential Prop. & Cas. Ins. Co.*, 87 Ohio App. 3d 852, 854, 623 N.E.2d 240, 241 (1993) (on negotiations).

On the other hand, an Ohio appellate court found allegations or evidence of waiver sufficient to raise a material dispute when the fire insurance provider continually requested

information from the insured that was already in its possession, refused to make coverage determination within the limitations period, and made initial payments to the insured for loss of personal property and housing expenses. *Arp v. Am. Fam. Ins. Co.*, 187 Ohio App. 3d 561, 932 N.E.2d 968, 974–975 (2010), *cause dismissed,* 2010-Ohio-3860, 126 Ohio St. 3d 1536, 931 N.E.2d 1100. Likewise, a court in this District refused to dismiss a case where the plaintiffs alleged that the defendants informed them "that their claim was not fully processed and the investigation was still ongoing." *Lee v. Goodville Mut. Cas. Co.*, No. 1:14cv933, 2016 WL 5661683, at *3 (S.D. Ohio Sept. 30, 2016). The insurer in that case had indicated to the insured that it would pay at least part of the claim. *Id.* at *1.

Though it is a close question, the Court agrees with the Magistrate Judge that Millennium has pleaded sufficient facts to raise a plausible question whether Great American waived enforcement of the limitations period. It is true that Great American's statements in the December 17, 2019 and January 30, 2019 letters referenced in ¶¶ 40, 41, and 48 the Complaint cannot standing alone justify the claim of waiver because they were made after the expiration of the two-year limitations period. *See Friendly Farms*, 79 F.3d at 545. However, Millennium has alleged in other paragraphs that Great American utilized dilatory tactics including requesting information from Millennium that was not in its possession or control, led Millennium to believe through its words and conduct that it acknowledged liability, and never indicated that it would deny the claim. These allegations distinguish this case from *Bishop v. Lucent Techs., Inc.*, 520 F.3d 516 (6th Cir. 2008), a primary case relied upon by Great American. In *Bishop*, the Sixth Circuit found that where it appeared from the face of the complaint that the action was untimely, the plaintiffs had the burden to plead facts to avoid the statute of limitations. *Id.* at 520. Unlike the plaintiffs in *Bishop* who alleged "nothing" in the Complaint to "escape the statute,"

9

Millennium here alleges facts to support a finding of waiver.  Millennium will have to support these allegations with evidence as the case progresses, but at the dismissal stage its allegations are sufficient to state a plausible claim that Great American waived the limitations period.

## IV.     CONCLUSION

For the foregoing reasons, Great American's Objections (Doc. 25) are **OVERRULED**, the Report and Recommendations (Doc. 24) is **ADOPTED**, the Motion to Dismiss (Doc. 18) is **DENIED**.

**IT IS SO ORDERED.**

BY THE COURT:

s/Susan J. Dlott
Susan J. Dlott
United States District Judge