# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| M&C HOLDINGS DELAWARE, PARTNERSHIP, et al., <br> Plaintiffs, <br><br> v. <br><br> GREAT AMERICAN INSURANCE COMPANY, <br> Defendant. | Case No. 1:20-cv-121 <br> Dlott, J. <br> Litkovitz, M.J. <br><br><br><br> REPORT AND RECOMMENDATION |

This matter is before the Court on plaintiffs' motion to strike defendant's affirmative defenses (Doc. 32), defendant's response in opposition (Doc. 38), and plaintiffs' reply memorandum (Doc. 39). The Court recommends that plaintiffs' motion be granted in part and denied in part.[1]

## I. Background

On February 13, 2020, plaintiffs filed a complaint (Doc. 1) asserting breach of contract (Count I), bad faith denial of coverage (Count II), and declaratory relief (Count III) claims related to an insurance policy issued by defendant to plaintiffs. Plaintiffs operate hotels and, as part of their business model, paid commissions to third-party travel agencies in exchange for bookings. One of plaintiffs' employees, Wayne Merdis, engaged in a fraudulent scheme to siphon off these commission payments to fictious travel agencies created by Merdis. He both diverted payments legitimately owed to third-party travel agencies for services those travel

---

[1] While the Sixth Circuit has not expressly addressed whether motions to strike are dispositive, non-dispositive, or a hybrid, courts within the Circuit have reasoned that motions to strike entire claims or defense are dispositive. *See Oppenheimer v. City of Madeira, Ohio*, No. 1:19-cv-770, 2020 WL 5106710, at *1 (S.D. Ohio Aug. 31, 2020) (citing *Berry v. Citi Credit Bureau*, No. 2:18-cv-2654, 2020 WL 4596774 at *3 (W.D. Tenn. Aug. 11, 2020)).

agencies actually rendered and accepted payments for services that were not rendered at all. Plaintiffs allege that both types of commission payments amounted to $1,954,329.13, all of which they transferred to Merdis's fictitious travel agencies as a result of his fraudulent scheme. Plaintiffs made a claim under the insurance policy issued by defendant. Defendant denied a portion of the claim on the basis that plaintiffs had not sustained a covered loss.

In its October 26, 2020 Order adopting the undersigned's Report and Recommendation (Doc. 24), the District Court denied defendant's motion to dismiss plaintiffs' complaint. (Doc. 29). Therein, the District Court held that plaintiffs stated a plausible claim that they had suffered a loss under the insurance policy and raised a plausible question of whether defendant waived enforcement of the insurance policy's limitations period. (Doc. 29 at PAGEID 325, 328). Subsequent to this decision, defendant filed an answer to plaintiffs' complaint that included eleven affirmative defenses:

### FIRST AFFIRMATIVE DEFENSE

> The Complaint fails to state a claim upon which relief can be granted, either in whole or in part.

### SECOND AFFIRMATIVE DEFENSE

> Section A of the Policy provides that [defendant] will "pay for **loss** covered by an Insuring Agreement of this Policy that you sustain resulting directly from acts committed or events occurring at any time and discovered by you during the Policy Period." (Emphasis added). Insuring Agreement 1 of the Policy, in turn provides:
>
> We will pay for **loss** resulting directly from dishonest acts committed by an employee, whether identified or not, acting alone or in collusion with other persons with the manifest intent to:
>     a. Cause you to sustain a loss; and
>     b. Obtain an improper benefit for:
>         (1) the employee; or
>         (2) any person or organization intended by the employee to receive that benefit. [Emphasis added] [bolding in original omitted]

There is no covered "loss" or manifest intent to cause a loss to the extent that Merdis diverted commissions to himself that were owed to legitimate third-party travel agents whom [plaintiffs] did not pay. [Plaintiffs have] never provided evidence that [they] paid those legitimate travel agencies and has since refused to answer whether [they] did or did not. Therefore, any "loss" [plaintiffs] might have incurred by virtue of Merdis's theft is offset by legitimate liabilities of which [plaintiffs were] relieved as a direct result thereof.

### THIRD AFFIRMATIVE DEFENSE

Section E.18 of the Policy under the caption Records states that: "You must keep records of all covered property so we can verify the amount of any loss." [Plaintiffs] did not meet this condition with respect to that part of Merdis's theft that occurred between 2001 and 2007 because [plaintiffs] lack[] documentation from which it can be determined whether commissions during that time period were diverted from legitimate third-party travel agencies or did not involve a legitimate travel agency. This lack of documentation further prevents [plaintiffs] from fulfilling [their] common law burden to prove [their] loss and the quantum of [their] loss.

### FOURTH AFFIRMATIVE DEFENSE

[Plaintiffs'] claims are barred by the limitations clause set forth in the Policy, Section E.11 of the Policy, under the caption "Legal Action Against Us," which states, in relevant part: "You may not bring any legal action against us involving loss . . . [u]nless brought within 2 years from the date you discover the loss." ("Limitations Clause"). [Plaintiffs] brought suit more than two (2) years from the date [they] discovered the loss as sworn to in [their] Proof of Loss, [they] did not ask for or receive a tolling agreement during that time period, and there are no acts of [defendant] that prevented [plaintiffs] from doing so. It is [plaintiffs'] burden to demonstrate that [defendant] acted in such a manner that it cannot rely on the Limitations Clause.

### FIFTH AFFIRMATIVE DEFENSE

[Plaintiffs'] claims are barred, in whole or in part, by the doctrines of in pari delicto and/or unclean hands, to the extent that [plaintiffs] seek[] payment from [defendant] for legitimately earned commissions [plaintiffs] owe[] to third-party travel agencies whom [plaintiffs have] not paid and ha[ve] no intention of ever paying.

### SIXTH AFFIRMATIVE DEFENSE

[Plaintiffs'] claims are barred on the grounds that [plaintiffs] suffered an uncovered bookkeeping or theoretical loss to the extent that Merdis diverted

3

legitimate commission payments owed to third-party travel agencies because [plaintiffs have] not reimbursed those third-party agencies.

### SEVENTH AFFIRMATIVE DEFENSE

All or part of the Complaint is barred by the indemnity principle of insurance that does not allow the insureds to obtain a windfall from insurers.

### EIGHTH AFFIRMATIVE DEFENSE

All or some of [plaintiffs'] claims are barred by the provisions of the Policy.

### NINTH AFFIRMATIVE DEFENSE

All of some of [plaintiffs'] claims are barred by the doctrines of laches, estoppel and waiver.

### TENTH AFFIRMATIVE DEFENSE

[Plaintiffs'] tort claims are barred, in whole or in part, by the economic loss rule.

### ELEVENTH AFFIRMATIVE DEFENSE

[Defendant] reserves the right to assert additional affirmative defenses and rely on other provisions of the Policy as discovery in this matter progresses.

(Doc. 30 at PAGEID 339-41). Plaintiffs now move to strike all of these affirmative defenses.

## II. Standard of Review

Rule 12(f) provides that on motion made by a party, the Court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f)(2). Striking a pleading is a drastic remedy, and "[m]otions to strike are viewed with disfavor and are not frequently granted." *Operating Eng'rs Loc. 324 Health Care Plan v. G & W Const. Co.*, 783 F.3d 1045, 1050 (6th Cir. 2015); *see also Mapp v. Bd. of Ed. of the City of Chattanooga, Tenn.*, 319 F.2d 571, 576 (6th Cir. 1963) (recognizing strike orders as a "drastic remedy to be resorted to only when required for the purposes of

4

justice" or "when the pleading to be stricken has no possible relation to the controversy"). Although motions to strike can "serve a useful purpose by eliminating insufficient defenses[,]" a district court should strike only defenses "so legally insufficient that it is beyond cavil that defendants could not prevail on them." *U.S. v. Pretty Prods., Inc.*, 780 F. Supp. 1488, 1498 (S.D. Ohio 1991) (quoting *United States v. Marisol, Inc.*, 725 F. Supp. 833, 836 (M.D. Pa. 1989) and *United States v. Kramer*, 757 F. Supp. 397, 410 (D. N.J. 1991)).

### III. Analysis

Plaintiffs argue that defenses 2, 3, 5, 6, and 7 must fail because they rely on a theory ("bookkeeping loss") that was considered and rejected in conjunction with defendant's motion to dismiss. Plaintiffs argue that defense 4 fails as a matter of law because, as to Count II, the District Court adopted the undersigned's ruling that the insurance policy's limitations clause does not cover claims for bad faith denial of coverage. (*See* Doc. 24 at PAGEID 275). Plaintiffs argue that defenses 8 and 9 are boilerplate and do not provide fair notice of the nature of the asserted defenses. In particular as to defense 9, they argue that the doctrine of laches fails as a matter of law because it contemplates relief at equity, not law, and cannot shorten a time period provided for in an applicable statute of limitations. Plaintiffs argue that defense 10 fails as a matter of law because tort actions are not subject to the economic loss rule under Ohio law. Finally, plaintiffs argue that defenses 1 and 11 are not cognizable defenses under Ohio law.

Defendant argues that plaintiffs' motion is extreme, relying on the general proposition that motions to strike should be used "sparingly" and "only when required for the purposes of justice." *Brown & Williamson Tobacco Corp. v. United States*, 201 F.2d 819, 822 (6th Cir. 1953). As to defenses 2, 3, 5, 6, and 7, defendant argues that the District Court's determination that plaintiffs plausibly alleged a "loss" does not equate to a determination that all coverage issues should be resolved in plaintiffs' favor. As to defense 4, defendant concedes that its affirmative defense does

5

not apply to Count II.  Defendant argues that defenses 8 and 9 meet a fair notice standard, though unsupported by factual allegations.  Defendant argues that defense 10 is properly asserted because eventual discovery may demonstrate that plaintiffs' tort claim is not supported by the evidence.  Finally, as to defenses 1 and 11, defendant argues that the undersigned has previously agreed with other district courts that "a reservation of [a right to raise additional defenses] through an affirmative defense is appropriate."  *Hiles v. Army Review Bd. Agency*, No. 1:12-cv-673, 2014 WL 7005244, at *3 (S.D. Ohio Dec. 10, 2014) (citation omitted).

As the undersigned has previously noted, the Sixth Circuit Court of Appeals has never expressly held that the heightened pleading standard set forth in *Iqbal* and *Twombly* for complaints also applies to affirmative defenses, though district courts within the Sixth Circuit are split on the issue.[2]  *See Hiles*, 2014 WL 7005244, at *2 (discussing the split).  In *Hiles*, this Court declined to apply the *Twombly–Iqbal* pleading standard to affirmative defenses.  2014 WL 7005244, at *2.  The undersigned continues to be persuaded that heightened pleading standards under *Twombly* and *Iqbal* do not apply to affirmative defenses and that this approach is "consistent with Rule 8."  *Ruff v. Credit Adjustment, Inc.*, No. 2:18-cv-351, 2018 WL 4019464, at *2 (S.D. Ohio Aug. 23, 2018).  Under Rule 8(a)(2), a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Under Rule 8(c)(1), in contrast, a party wishing to assert an affirmative defense in response to a pleading need only "affirmatively state any avoidance or affirmative defense. . . ."  Fed. R. Civ. P. 8(c)(1).  Revealing the existence of an affirmative defense provides the opposing party with the requisite notice contemplated by the rules.  Pleading an affirmative defense in general terms is sufficient "as long as it gives plaintiff fair notice of the nature of the defense,"

---

[2] Under this standard, the complaint must "state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 668 (2009).

*Lawrence v. Chabot,* 182 F. App'x 442, 456 (6th Cir. 2006) (quoting 5 Wright & Miller, Federal Practice and Procedure § 1274 (3d ed.)), and satisfies both the law and the spirit of Rule 8. The parties agree that the fair notice standard applies (*see* Doc. 39 at PAGEID 434) and the Court therefore applies it to defendant's affirmative defenses.

Defense 1 asserts that "[t]he Complaint fails to state a claim upon which relief can be granted, either in whole or in part." (Doc. 30 at PAGEID 339). Defendant argues that this Court's decision in *Hiles* supports such a defense. 2014 WL 7005244 at *3 ("The Court finds no compelling reason to strike defendant's reservation of its right to amend its answer to raise additional defenses that may become apparent as this litigation proceeds. . . ."). Plaintiffs argue that such a defense is not appropriate where a party has already filed a Rule 12 motion. Plaintiffs cite *King v. Taylor*, 694 F.3d 650 (6th Cir. 2012), which concerned a service of process defense and held that a party waives such a defense if it is not raised in a motion under Rule 12. *Id.* at 656-57. A service of process defense must be raised in *either* a motion *or* in a responsive pleading. *See* Fed. R. Civ. P. 12(h)(1)(B).

The Court finds that defense 1 here, however, is more akin to the reservation of rights already allowed under the Federal Rules of Civil Procedure and discussed in *Hiles* as opposed to the situation presented in *King*. The Court should not strike defense 1. *See* Fed. R. Civ. P. 12(h)(2) ("Failure to state a claim upon which relief can be granted . . . may be raised: (A) in any pleading allowed or ordered under Rule 7(a). . . ."). *See also Dynasty Apparel Indus. Inc. v. Rentz*, 206 F.R.D. 603, 607 (S.D. Ohio 2002) (declining to follow authority holding that failure to state a claim was an invalid defense, where defendant previously had filed and lost a Rule 12(b)(6) motion); *U.S.S.E.C. v. Thorn*, No. 2:01-cv-290, 2002 WL 31412440, at *4 (S.D. Ohio Sept. 30, 2002) (citing *Rentz* favorably); *Hughes v. Lavender*, No. 2:10-cv-674, 2011 WL 2945843, at *4 (S.D. Ohio July 20, 2011) (allowing

failure-to-state-a-claim defense where a motion for judgment on the pleadings on the same issue previously had been denied).

Defense 2 relies on the argument that "any 'loss' [plaintiffs] might have incurred by virtue of Merdis's theft is offset by legitimate liabilities of which [plaintiffs were] relieved as a direct result thereof." (Doc. 30 at PAGEID 339). The Court reads this defense to suggest that even if a "loss" occurred, it may be offset by a relieved liability. *See Sodexo Mgmt., Inc. v. Benton Harbor Area Sch. Dist.*, No. 1:15-cv-878, 2016 WL 845338, at *6 (W.D. Mich. Mar. 2, 2016) (quoting *Roberge v. Hannah Marine Corp.*, No. 96-1691, 1997 WL 468330, at * 3 (6th Cir. Aug. 13, 1997)) ( "An affirmative defense, under the meaning of Fed. R. Civ. P. 8(c), is a defense that does not negate the elements of the plaintiff's claim, but instead precludes liability even if all of the elements of the plaintiff's claim are proven."). As such, the District Court's determination as to the existence of a "loss" under the insurance policy does not preclude defendant's success "despite any state of the facts which could be proved in support of the defense. . . ." *Operating Eng'rs Loc. 324 Health Care Plan*, 783 F.3d at 1050 (quoting *Williams v. Jader Fuel Co.*, 944 F.2d 1388, 1400 (7th Cir. 1991)). Defense 2 should not be stricken.

Similarly, the Court reads defense 3 to relate to how such an offset could be calculated and that documentation allowing defendant to make such a calculation was required under the insurance policy. (*See* Doc. 30 at PAGEID 340). As such, it should not be stricken and is more appropriately disposed of following further factual development:

> [E]ven when the defense seems to present a purely legal question, federal courts are very reluctant to determine disputed or substantial issues of law on a motion to strike; these questions quite properly are viewed as best determined only after further development by way of discovery and a hearing on the merits, either on a summary judgment motion or at trial.

5 Wright & Miller, Federal Practice and Procedure § 1381 (3d ed.).

Regarding defense 4, the District Court's order affirmed the undersigned's finding that the insurance policy's limitations period does not apply to Count II. (*See* Doc. 24 at PAGEID 275). To the extent that defense 4 seeks to bar Count II via the insurance policy's limitations period (*see* Doc. 30 at PAGEID 340), it has no possibility of success and should be stricken. *See Pretty Prods., Inc.*, 780 F. Supp. at 1498.

Defense 5 asserts the doctrines of *in pari delicto* and/or unclean hands. (Doc. 30 at PAGEID 340). Plaintiffs have not persuaded the Court that, with further factual development, defendant could never prevail on such a defense. The Court finds that defendant has given fair notice of its defense. This defense should not be stricken.

Defense 6 asserts that plaintiffs' asserted loss is uncovered to the extent that they have not yet reimbursed legitimate travel agencies for those commission payments diverted by Merdis; put differently, plaintiffs are in no worse a financial position as it relates to these commission payments than they would have been absent Merdis's fraud. (Doc. 30 at PAGEID 341). Defense 7 asserts that "the indemnity principle of insurance . . . does not allow the insured to obtain a windfall from insurers." (*Id.*). Plaintiffs argue that these related theories were considered and rejected by the District Court and are not otherwise available affirmative defenses under Ohio law. While these theories were insufficient to demonstrate, as a matter of law, that plaintiffs had not alleged a "loss" under the insurance policy, they are otherwise related to the controversy. *See Mapp*, 319 F.2d at 576. Plaintiffs have fair notice of the nature of these defenses and they should not be stricken.

Defenses 8 and 9 assert that "provisions of the Policy" and "the doctrines of laches, estoppel and waiver" bar some or all of plaintiffs' claims. (Doc. 30 at PAGEID 341). Plaintiffs argue that these "boilerplate . . . labels" should be stricken. (Doc. 32 at PAGEID 353). "An affirmative defense may be pleaded in general terms and will be held to be sufficient . . . as long

9

as it gives plaintiff fair notice of the nature of the defense." *Lawrence*, 182 F. App'x at 456 (quoting 5 Wright & Miller, Federal Practice and Procedure § 1274 and suggesting that a general defense such as "barred by res judicata" is sufficient). The Court acknowledges that the cases cited by plaintiffs appear to require more specificity than what defendant provides in defenses 8 and 9. *See Lucas v. Desilva Auto. Servs.*, No. 1:16-cv-790, 2017 WL 1401438, at *2 (S.D. Ohio Mar. 20, 2017), *report and recommendation adopted*, 2017 WL 1383059 (S.D. Ohio Apr. 18, 2017) (finding that certain defenses should be stricken as "insufficient as a matter of law"); *United States v. Perry*, No. 2:14-cv-537, 2016 WL 8202965, at *6 (S.D. Ohio Feb. 29, 2016) (holding that an affirmative defense asserting that the plaintiff "violated public policy and violated [APA] by refusing the land exchanges offered to it by the defendants" did not provide fair notice). The Court finds, however, that the fair notice standard as described in *Lawrence* is met as to defense 8 and as to the doctrines of estoppel and waiver asserted in defense 9. These defenses, while general, give fair notice and should not be stricken.

Plaintiffs argue that laches in particular, however, is a legally insufficient defense. They cite *Operating Engineers Local 324 Health Care Plan*, 783 F.3d at 1054, for the proposition that laches, an equity concept, cannot be invoked where legal relief is governed by an established statute of limitations—here, eight years for contract claims (Ohio Rev. Code § 2305.06) and four years for tort claims (Ohio Rev. Code § 2305.09(D))—and plaintiffs' action was filed within those time periods. Defendant does not counter this argument in response. Because defendant fails to counter this specific argument with any possible legal basis for this defense, the Court finds that it should be stricken. *See Pretty Prods., Inc.*, 780 F. Supp. at 1498.

Defense 10 asserts that Count II is barred in whole or part by the economic loss rule. (Doc. 30 at PAGEID 341). Plaintiffs cite case law suggesting that this rule does not apply to tort

claims in support of their position that it should be stricken. Unlike with the doctrine of laches, however, where the fact that plaintiffs' action was filed within the applicable statutes of limitations is not disputed and dispositive, the facts surrounding plaintiffs' bad faith denial claim are not developed. As such, the Court is not inclined, at this juncture, to strike this defense as utterly without legal basis.

In defense 11, defendant reserves the right to assert additional affirmative defenses and rely on other provisions of the insurance policy. (Doc. 30 at PAGEID 341). For the reasons discussed with respect to defenses 1, 8, and 9, defense 11 should not be stricken. The Court notes that the *Peters* decision, relied upon by the undersigned in *Hiles* for the proposition that a reservation of rights is an appropriate affirmative defense, has since been reversed. *See Peters v. Credit Prot. Ass'n LP*, No. 2:13-cv-767, 2014 WL 1049913, at *4 (S.D. Ohio Mar. 17, 2014), *rev'd on reconsideration*, 2015 WL 1022031 (S.D. Ohio Feb. 19, 2015). The District Court in *Peters*, however, based its reversal in part on its application of an *Iqbal/Twombly* affirmative defense pleading standard, by which the Court is not constrained here. *See Peters*, 2015 WL 1022031, at *4. The District Court also relied on primarily out-of-circuit cases to find that such a reservation is a "legal nullity." *Id.* The only case that the *Peters* court cited from within the Sixth Circuit, however, *Kelley v. Thomas Solvent Co.*, 714 F. Supp. 1439 (W.D. Mich. 1989), arose under a specific federal statute and the decision acknowledged that that context was more conducive to striking an insufficient defense. *See id.* at 1442. The undersigned remains persuaded by the authorities cited by the Magistrate Judge and not specifically discussed by the District Court in *Peters*. *See* 2014 WL 1049913, at *4 (citing *Sony/ATV Music Pub. LLC v. D.J. Miller Music Distribs., Inc.*, 2011 WL 4729807, *5 (M.D. Tenn. Oct. 7, 2011); *Bartram, LLC v. Landmark Am. Ins. Co.*, 2010 WL 4736830, *7 (N.D. Fla. Nov.16, 2010) (permitting even an

11

imprecise reservation of rights); *Centex Homes v. Mr. Stucco, Inc.*, 2008 WL 793587, *2 (M.D. Fla. March 25, 2008) (finding a motion to strike "unnecessary" and a "waste" of the court's "limited resources")).  Defense 11 should not be stricken.

## IV. Conclusion

Based on the foregoing, it is **RECOMMENDED** that plaintiffs' motion to strike defendant's affirmative defenses be **GRANTED IN PART** and **DENIED IN PART** as follows:

1. Defense 4 should be stricken to the extent that it purports to bar plaintiffs' claim in Count II;

2. Defense 9 should be stricken to the extent that it purports to bar plaintiffs' claims through the doctrine of laches;

3. Plaintiffs' motion should be denied as to the remaining defenses.

Date: 1/4/2021

Karen L. Litkovitz
United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

M&C HOLDINGS DELAWARE,　　　　　　　　　　　　Case No. 1:20-cv-121
PARTNERSHIP, et al.,　　　　　　　　　　　　　　　　　Dlott, J.
　　　　Plaintiffs,　　　　　　　　　　　　　　　　　　　Litkovitz, M.J.

　　　　　v.

GREAT AMERICAN INSURANCE
COMPANY,
　　　　Defendant.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *United States v. Walters,* 638 F.2d 947, 949-50 (6th Cir. 1981).