IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| M&C Holdings Delaware Partnership, *et al.*, | Case No. 1:20-cv-121 |
| Plaintiffs, | Judge Susan J. Dlott |
| v. | Order Granting Plaintiffs' Motion for Partial Summary Judgment |
| Great American Insurance Company, | |
| Defendant. | |

This matter is before the Court on Plaintiffs' Motion for Partial Summary Judgment (Doc. 37), to which Defendant has filed a Memorandum in Opposition (Doc. 41) and Plaintiffs have filed a Reply (Doc. 45). In this case, Plaintiffs M&C Holdings Delaware Partnership, CDL Hotels (USA), Inc., M&C Management Services (USA), Inc., M&C Hotel Interests, Inc., and RHM-88 (collectively, "Millennium") seek coverage under an insurance policy issued by Defendant Great American Insurance Company ("Great American") for a purported loss caused by a dishonest employee. For the reasons that follow, the Court will **GRANT** the Motion for Partial Summary Judgment.

I.     **BACKGROUND**

A.     **Factual History**

The following facts are derived from Millennium's Proposed Undisputed Facts (Doc. 37-1) and Great American's Response (Doc. 41-1), except where specifically stated otherwise.

1.     **The Policy**

Millennium and its affiliated companies operate a chain of premium hotels throughout the United States. One of Millennium's properties is the Millennium Hilton One UN

1

Plaza Hotel, at One UN Plaza, New York, New York, which formerly operated as the ONE UN Hotel ("One UN Hotel"). Great American issued a Crime Protection insurance policy to Millennium, policy number SAA 5245001 13 00, for the policy period of May 31, 2017 to May 31, 2018 (the "Policy"). (Doc. 1-1 at PageID 20.) Each of the named Plaintiffs in this suit is a Named Insured under the Policy. Section A of the Policy stated:

> In return for the payment of the premium, and subject to the Declarations, Insuring Agreements, Definitions, Exclusions, Conditions and other terms of this Policy, [Great American] will pay for loss covered by an Insuring Agreement of this Policy that [Millennium] sustain[s] resulting directly from acts committed or events occurring at any time and discovered by [Millennium] during the Policy Period shown in the Declarations or during the period of time provided in the Extended Period to Discover Loss, Condition E.9.

(*Id.* at PageID 25.)

The Policy provided coverage for "Employee Dishonesty" in the Insuring Agreement 1 of the Policy:

> 1. Employee Dishonesty
>
> [Great American] will pay for loss resulting directly from dishonest acts committed by an employee, whether identified or not, acting alone or in collusion with other persons, with the manifest intent to:
>
> a. Cause [Millennium] to sustain loss; and
>
> b. Obtain an improper financial benefit for:
>
> (1) the employee; or
>
> (2) any person or organization intended by the employee to receive that benefit.

(*Id.*) The term "loss" was not defined in the Policy.

The Policy required Millennium to "keep records of all covered property so [Great American] can verify the amount of any loss." (*Id.* at PageID 36.) It required that legal actions involving loss be brought "within 2 years from the date [Millennium] discover[s] the loss." (*Id.* at PageID 35.)

2

## 2. The Purported Loss

As part of its ordinary business operations, Millennium paid commissions to certain third-party travel agents in return for booking rooms at the One UN Hotel. Wayne Merdis was an employee of Millennium from 1993 to June 22, 2017. Merdis exploited his position within Millennium to falsify records related to commissions and misappropriate money. He caused fictitious travel agencies to transmit information to One UN Hotel representing that these entities caused bookings there, entitling them to commissions. He operated the fraudulent scheme in two ways: (1) Merdis diverted commissions owed to actual third-party travel agencies for legitimate bookings; (2) Merdis created fraudulent commissions for himself on bookings where there were no actual travel agents involved that would have earned commissions. (Doc. 36-1 at PageID 381; Doc. 40-2 at PageID 474.) Merdis and his fictitious travel agencies did not cause any bookings to be made at One UN Hotel or any other hotel, and thus they were never entitled to commission payments from Millennium. On the other hand, the actual travel agencies who made some bookings were owed commission payments from Millennium for those bookings. (Doc. 18 at PageID 476.)

On June 23, 2017, Millennium, through its insurance broker Aon, provided written notice to Great American that it was "report[ing] to you a situation that may give rise to a Loss under [the Policy]" and that "[t]he "insured has discovered numerous fraudulent payments which to date have resulted in an employee theft of approximately $1.8M." (Doc. 18-2 at PageID 140.) After requesting and receiving extensions of time, Millennium provided Great American with proof of loss. Millennium made "a claim for Loss of $1,954,329." (*Id.* at PageID 137.) Millennium sent records to Great American establishing that Millennium, through a third party, actually disbursed to Merdis and/or the fictitious travel agencies the $1,954,329 set forth in the

insurance claim.

Great American had not paid any part of the insurance claim to Millennium before Millennium filed suit. Great American asserted that Millennium did not suffer a loss to the extent that Merdis diverted commission payments owed to actual travel agencies for bookings because Millennium never paid the actual travel agencies. (Doc. 36-1 at PageID 381–382.) It argued that the payments to Merdis offset the liability of payments owed to the actual travel agencies. (*Id.* at PageID 382.) Great American's CPA investigator determined that between 2008 and 2017, Merdis diverted $1,106,865.55 that Millennium owed to actual travel agencies and generated $267,035.90 in fraudulent commissions that were not owed to actual travel agencies. (*Id.*) The CPA investigator was not able to "determine the quantity of funds Merdis diverted to himself from totally fraudulent bookings versus legitimate travel agency bookings for the period of 2001 through 2007" because, Great American asserted, "that information was 'purged' from Millennium's records." (*Id.*)

## B. Procedural Posture

Millennium filed this suit against Great American in February 2020, more than two years after it provided notice of the loss to Great American, alleging claims for breach of contract, bad faith denial of coverage, and declaratory relief. (Doc. 1.) Great American initially moved to dismiss the Complaint in lieu of filing an answer. (Doc. 18.) The Magistrate Judge recommended denying the Motion to Dismiss. (Doc. 24.) Following Great American's Objections to the Report and Recommendation, the Court issued an Order Overruling Objections, Adopting Report and Recommendation, and Denying Motion to Dismiss ("Order Denying Dismissal"). (Doc. 29.)

This Court made two key determinations in the Order Denying Dismissal. First, the

Court held that Millennium stated a plausible claim that it suffered a loss under the Policy when its funds were disbursed to Merdis or his fictitious travel agencies as commissions for services they had not rendered. (*Id.* at PageID 324–325.) Second, the Court held that Millennium had pleaded sufficient facts to raise a plausible question whether Great American waived enforcement of the two-year limitations period. (*Id.* at PageID 328.)

Thereafter, Great American filed its Answer on October 19, 2020. (Doc. 30.) Millennium then filed a Motion to Strike Great American's affirmative defenses stated in its Answer. (Doc. 32.) The Magistrate Judge issued a Report and Recommendation (Doc. 44) recommending that the Court strike Defense 4 to the extent it purported to bar Millennium's bad faith claim against Great American and Defense 9 to the extent it purported to bar Millennium's claims through the doctrine of laches. (*Id.* at PageID 524.) Neither party objected the Report and Recommendation, and the Court issued an Order on Motion to Strike adopting her recommendations.[1]

The parties filed their Rule 26(f) Report on November 25, 2020, but the Court has not yet conducted a preliminary pretrial conference with the parties. (Doc. 35.) The parties have conducted only initial targeted discovery, and both parties appear to anticipate that broader discovery will be needed. (*Id.* at PageID 363–366.)

Nonetheless, Millennium also filed the pending Motion for Partial Summary Judgment on November 25, 2020. It seeks a ruling that "Millennium's claim is covered as a 'loss' under the Policy (i) whether or not payments originally [were] intended for third party agencies, and

---

[1] The Magistrate Judge recommended denying the Motion to Strike insofar as Great American pleaded several affirmative defenses asserting that Millennium did not suffer a covered loss as a matter of law. This Court adopted the Report and Recommendation. The Court's language in the Dismissal Order and the Order on Motion to Strike left open the door, however slightly, for Great American to argue that Millennium could not prove based on the undisputed facts—as opposed to Complaint allegations—that it was entitled to coverage for a loss. In this Order Granting Partial Summary Judgment, the Court closes the door it previously left open for the reasons set forth in the Analysis section below.

5

(ii) whether or not such agencies were ever paid the commissions they were owed." (Doc. 37 at PageID 392.) Great American opposes Millennium's Motion. The matter is fully briefed and ripe for adjudication.

## II. STANDARDS GOVERNING MOTIONS FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56 governs motions for summary judgment. Summary judgment is appropriate if "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant has the burden to show that no genuine issues of material fact are in dispute. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585–587 (1986); *Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 811 (6th Cir. 2011). The movant may support a motion for summary judgment with affidavits or other proof or by exposing the lack of evidence on an issue for which the nonmoving party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–324 (1986). In responding to a summary judgment motion, the nonmoving party may not rest upon the pleadings but must "present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986).

## III. ANALYSIS

The key facts underlying the issue of whether Millennium suffered a loss covered under the Policy are not disputed. The Policy issued by Great American provided coverage for a "loss resulting directly from dishonest acts committed by an employee" with intent to cause Millennium to "sustain loss" and to "[o]btain an improper financial benefit" for the employee or his organization. (Doc. 1-1 at PageID 25.) Merdis, an employee of Millennium, caused Millennium to disburse, directly or indirectly, more than $1.9 million in commissions to him or

his fictitious travel agencies by falsely claiming they made bookings at the One UN Hotel. Commission payments were disbursed to Merdis and his fictitious travel agencies both for bookings made by actual travel agencies, for which commissions were owed to the actual travel agencies, and for bookings made without a travel agent, for which no commission was owed. Thus, Merdis, an employee, intended to cause a loss to Millennium and an improper financial benefit to himself by dishonestly accepting commission disbursements for services he did not provide. These facts are consistent with the Complaint allegations that the Court already has concluded constitute a loss under the terms of the Policy.

Nonetheless, Great American argues here, as it did at the dismissal stage, that Millennium did not suffer a loss entitling it to coverage under the "Employee Dishonesty" provision of the Policy. Great American argues the disbursement of commission payments to Merdis or his fictitious travel agencies did not constitute a loss to the extent that Millennium owed, but did not pay, commissions to the actual travel agencies for bookings they made. Stated differently, it contends that Millennium did not suffer a loss if the disbursement to Merdis or his fictitious travel agencies offset a liability owed to a third party. Great American points out that the Court did not at the dismissal stage consider documents extraneous to the pleadings suggesting that Millennium cannot prove it paid commissions to the actual travel agencies for the bookings for which Merdis claimed credit. (Doc. 18-2 at PageID 144, 150, 155.) Great American asserts that, because Millennium has not submitted evidence to the contrary, the Court must assume for purposes of summary judgment that Millennium did not pay commissions to the actual travel agencies. However, this purported fact does not change the Court's analysis.

The Court already has held that the critical element for determining whether a loss has occurred is whether there has been a disbursement of funds to the wrongdoer. This holding is

7

consistent with *American Tooling Center, Inc. v. Travelers Cas. Surety Co. of Am.*, 895 F.3d 455 (6th Cir. 2018), *rehearing en banc denied* (6th Cir. 2018), wherein the Sixth Circuit ruled that an insured suffered a loss when it transferred more than $800,000 to an imposter claiming to be its vendor. *Id.* at 460–461. The Sixth Circuit stated that "the fact that [the insured] contractually owed that money to [the actual vendor] and the [the insured and the actual vendor] later agreed to spread the loss between them has no bearing on whether this loss was directly suffered by [the insured.]" *Id.* at 461. Therefore, the Court holds as a matter of law that Millennium suffered a loss when it disbursed more than $1.9 million in commissions to Merdis or his fictitious travel agencies for bookings they did not make. This holding applies whether or not Millennium also paid commissions to the actual travel agencies that made the bookings from which the commissions were diverted. Accordingly, Millennium is entitled to coverage under the "Employee Dishonesty" provision in Insuring Agreement 1 of the Policy for the claim submitted to Great American.

Given the unusual procedural history of this case, it is important to clarify that the Court's limited holding does not resolve this case. The Court has not addressed herein whether Great American waived enforcement of the two-year limitations period set forth in the Policy. The Court must dismiss this case if Great American is entitled to enforce the limitations period. The issues of bad faith and damages also remain. The parties should proceed to discovery on all remaining issues.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Partial Summary Judgment is **GRANTED**. The Court will set a date for scheduling conference by separate order.

**IT IS SO ORDERED.**

BY THE COURT:

*Susan J. Dlott*
Susan J. Dlott
United States District Judge