**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| M&C HOLDINGS DELAWARE PARTNERSHIP, et al., | Case No. 1:20-cv-00121-SJD-KLL |
| Plaintiffs, | Judge Susan J. Dlott |
| v. | Magistrate Judge Karen L. Litkovitz |
| GREAT AMERICAN INSURANCE COMPANY, | |
| Defendant. | |

**JOINT STATUS REPORT REGARDING DISCOVERY DISPUTES**

Now come all parties to this case, by and through their respective counsel, and hereby jointly submit to the Court this Joint Discovery Status Report Regarding Discovery Disputes, pursuant to the Court's March 5, 2021 order.

Subsequent to the hearing, the parties exchanged letters identifying discovery responses they believed to be deficient, and responding to same. On April 14, 2021, the parties held a detailed meet and confer addressing each of these items, attended by attorneys Bryce Lenox and David Ogles for Millennium, and attorneys James Papakirk, Daniel Lebersfeld, and Stephen Dratch for Great American.

The parties are pleased to report that they were able to reach a compromise on many of the items identified in their letters. As an initial matter, the parties intend to agree to a stipulated protective order to facilitate exchange of certain allegedly confidential information. The parties have also reached compromise positions with respect to Great American's discovery responses to Millennium's requests. The parties have also entered into certain compromises with respect to

Millennium's responses to discovery responses to Great American's requests, and have narrowed the scope of their disagreements.

However, there remain three categories of discovery disputes: (1) Great American's discovery requests concerning the legitimate travel agents; (2) Great American's discovery requests concerning Millennium's communications with Aon; and (3) whether Millennium properly withheld as privileged certain communications that were sent by or to Aon plc, Millennium's outside insurance broker. The parties have kept open the possibility of further discussion of these disputes and will inform the Court if there is any resolution with respect to the same.

The parties set forth their current respective positions on these issues below:

**GREAT AMERICAN STATES AS FOLLOWS:**

**<u>Communications Between Millennium and Aon</u>**

Great American has requested all communications between Millennium and Aon regarding the claim, although it is still trying to work with Millennium to limit the scope to certain custodians to lessen the burden on Millennium and to avoid duplicative production. Still, even without these limitations, those communications are highly relevant to Great American's defense to Millennium's bad faith claim and Millennium's attempt to avoid the operation of the Policy's limitations clause. Millennium has objected on the grounds that, somehow, the information is not relevant, the request is overly broad, and the request imposes an unreasonable burden. Each of those objections is specifically addressed below. In light of the substantial discovery that Great American has provided to date, Great American's demand to know what Millennium and Aon were saying to one another in connection with Great American's investigation is neither overbroad nor unduly burdensome and is highly relevant.

2

Relevance:  As discussed in previous submissions, Millennium's bad faith claim depends on whether Great American's coverage decision, either on the law or the facts, was reasonable, even if the Court ultimately disagreed with it.  *Tokles & Son, Inc. v. Midwestern Indemn. Co.*, 65 Ohio St. 3d 621, 605 N.E.2d 936, 943 (1992) (insurer's denial of a claim is reasonably justified when "the claim was fairly debatable and the refusal was premised on either the status of the law at the time of the denial or the facts that gave rise to the claim");  *Retail Ventures, Inc. v. National Union Fire Ins. Co. of Pittsburgh, PA*, 691 F.3d 821, 834 (6th Cir. 2012) (there is "no support" under Ohio law for the proposition that "an insurer can deny coverage in good faith *only if* it had reason to believe that its interpretation was the *only reasonable one*") (emphasis in original).  And while the insurer's subjective intent does not matter, *Zoppo v. Homestead Ins. Co.* (1994), 71 Ohio St. 3d 552, 554, 644 N.E.2d 397, 359, as a matter of common sense it is at least relevant to the reasonableness of the insurer's disposition of the claim if the *insured* internally believed the insurer's decision was reasonable or defensible, if not actually correct.  The information would also be relevant to the extent Millennium argues delay because the communications would shed light on Millennium's own lack of cooperation and its failure to timely submit information material to the claims investigation.  Because Aon acted as Millennium's "claim recovery specialist," it is highly likely that Millennium and Aon discussed, among other things, what impact Millennium's conduct had on the claim investigation as well as the impact the legitimate travel agents would have on the claim and whether it would at least be reasonable for Great American to conclude that that part of Millennium's claim was not covered.

Communications between Aon and Millennium would also be relevant to Millennium's claim of waiver with respect to the Policy's limitations clause, and Great American's ability to rebut Millennium's attempt to avoid the operation of the limitations clause.  To the extent Aon

acted as an intermediary between Millennium and Great American during the claim investigation, Aon's communications with Millennium would reveal, among other things, whether Millennium itself attempted to withhold information from Great American and why Millennium did not bring suit sooner or attempt to procure a tolling agreement within the two-year limitations period. These communications would provide insight into the alleged waiver claim and would also reveal why it took Millennium more than a year to submit its proof of loss, which is directly relevant to any assertion by Millennium that Great American somehow lulled it into not filing suit earlier.

Millennium's Overbreadth Claim: Millennium asserts that the request is overbroad because it would encompass communications that do not relate directly to Great American's defenses or Millennium's remaining claims. Therefore, Millennium has asserted that it need only provide discovery that it unilaterally believes are relevant to its own claims. This is not the standard. Rather Rule 26(b)(1) permits discovery "regarding any nonprivileged matter that is relevant to *any* party's *claim or defense* and proportional to the needs of the case . . . ." (Emphasis added). As described above, communications between Aon and Millennium relating to the claim undoubtedly meet this standard. This is so, even if the materials produced might encompass documents that are ultimately not directly relevant to Great American's defenses as "discovery is more liberal than the trial setting." *Pizzuti v. Nashville Hospitality Capital, LLC*, 2:18-mc-0040, 2018 WL 5303061, at *3 (S.D. Ohio Oct. 25, 2018). Thus, relevance in discovery is guided by the concern to "prevent 'fishing expeditions.'" *Id.* (quoting *Conti v. Am. Axle & Mfg., Inc.*, 326 F. App'x 900, 907 (6th Cir. 2009).

There is nothing about Great American's demands for Millennium's communications with Aon that smacks of a fishing expedition. It is quite reasonable to expect that Millennium and Aon did discuss the terms of the Policy, whether it actually suffered a "loss," the claim process and

investigation, and whether information regarding the full scope of Merdis's theft could be withheld from Great American. Indeed, Great American's internal records reflect that Millennium initially told Great American that the claim did not involve legitimate travel agents, and Millennium did not deny that it initially made these representations. (*See* ECF Doc. # 40-2 at PAGEID 461, 474). Therefore, Great American has reason to believe that Millennium was not disclosing the full extent of Merdis's fraud in hopes that Great American would not discover it, which has only become more likely by Millennium's continued unwillingness to share that information and in resisting uncontroversial, straightforward, and targeted discovery demands.

Millennium's improper claim of overbreadth is also laid bare by the paucity of documents it has produced thus far, and its attempts to give the Court a contrary impression. Specifically, in response to Great American's "targeted" discovery demands, Millennium produced slightly more than 600 pages of documents that consist of multiple reproductions of email chains involving Great American, a handful of internal emails that reflect mundane requests for documents in connection with the investigation of the claim and hundreds of pages of spreadsheets that Great American already has. By contrast, Great American has already produced 2714 pages of documents, many of which reflect Great American's internal deliberations and will produce additional documents in accordance with *Boone v. Vanliner Ins. Co.*, 744 N.E.2d 154 (2001). Millennium cannot expect discovery to remain a one-way street.

<u>Burden</u>: Given that Millennium's privilege log already contains a large number of communications with Aon, it appears that Millennium's counsel has already reviewed most if not all of the email traffic between Millennium and Aon. Indeed, Millennium's representations that these communications contain extraneous matters makes it reasonable to conclude that virtually all communications have been reviewed. Nevertheless, Great American is still willing in principle

to limit the communications to particular custodians from both Aon and Millennium to lessen the burden of production. Although, the documents that Great American has sought are much more limited in scope than what it has produced without objection. For Millennium to claim that Great American's relatively modest and straightforward discovery it seeks is unduly burdensome would essentially make a nullity of Rule 26(b)(1).

### Information Regarding Legitimate Travel Agents

For the sake of clarity, Great American provides the following quote from an email written by Millennium's "claim recovery specialist," Adam Furmansky, on July 22, 2019, and which is contained in the record at ECF Doc. # 40-2 at PAGEID 476:

> I've consulted with the insured, and I've confirmed that the statement from my February 20, 2019 email answers the question. Specifically, ' …. Mr. Merdis effectuated his fraud in two ways. The first was to change reservations in which no original travel agency (TA) was assigned to a booking, to a TA associated with himself. The second way in which the fraud was effectuated was by Mr. Merdis changing a reservation from one travel agency to one of his own (e.g. AMEX Travel changed by Mr. Merdis to Annayad).' All reservations were legitimate. If a TA was entered and changed to one of Mr. Merdis' TA's, then commissions would have been owed prior to the change.

While Great American recognizes that the Court has ruled that there was a "loss" under the Policy irrespective of the methods described by Mr. Furmansky, additional details regarding those methods is relevant to Millennium's bad faith claim and Great American's limitations defense. This includes what Millennium knew, when it knew it, what information the insured shared during the claims process, what information may have been withheld during that process, and what information it relied on in presenting the claim. An insurer is not the only party required to act in good faith during the investigation of a claim; the insured has a corresponding duty to cooperate, to timely furnish accurate information.

Thus, Great American seeks basic information relating to "[t]he second way in which the fraud was effectuated by Mr. Merdis," which includes: (i) when Millennium first became aware of the "second way the fraud was effectuated;" (ii) when specifically Millennium contends it first relayed the existence of the "second way in which the fraud was effectuated" and to identify the relevant communications; (iii) the dollar amount attributed to each method described by Mr. Furmanksy; and (iv) what evidence Millennium has to indicate whether those travel agents were paid for "commissions [that] would have been owed prior to the change."

The information sought is relevant to Great American's defense of the bad faith claim as it would answer whether Millennium tried to withhold information during the investigation thus demonstrating its own bad faith and refuting any claim of "bad faith delay." This information would also demonstrate that Great American's factual determinations regarding Millennium's claim were not only made in good faith, but were actually correct. It would also potentially demonstrate Millennium's own bad faith by making it clear that it has no evidence that it ever paid the legitimate travel agents for their services, and that it hopes to shift that obligation to Great American.

This information is also relevant to Great American's limitations defense. Specifically, Millennium must demonstrate that Great American: "performed some act which in and of itself prevent[ed] [Millennium] from seeking a remedy in the court; mere conversation, negotiation or discussion is not sufficient unless it deterred [Millennium] from [its] chosen course of action and misled [it] to the extent that it delayed filing of suit until the limitation period had terminated." *Sheet Metal & Roofing Contractors Ass'n of Miami Valley, Ohio v. Liskany*, 369 F. Supp. 662, 668 (S.D. Ohio 1974). While Great American contends that it did nothing to mislead Millennium, being able to demonstrate that Millennium knew early on that Merdis's fraud involved bookings

from legitimate travel agents, but withheld this information from Great American, would further bolster Great American's defenses that (a) Millennium cannot avoid the operation of the Policy's limitations clause; (b) there was no unreasonable delay in Great American's handling of the claim, and (c) Millennium failed to carry out its own obligations. The information regarding the legitimate travel agents will otherwise further Great American's case that its factual determinations were not made in bad faith and to otherwise create a full record of the scope of Merdis's scheme and Millennium's actions with respect to the legitimate travel agents.

Nothing about these requests is unduly burdensome. Great American is not seeking voluminous records regarding the legitimate travel agents and nothing about these requests requires interviews with numerous Millennium employees. Rather, the relatively small number of people involved in the investigation from Millennium's end almost certainly have this basic information at their disposal. Nevertheless, Great American will consider Millennium's request to limit the responses regarding the knowledge of Millennium personnel to its "internal risk management team" when it knows precisely what individuals make up that group. Otherwise, Great American sees no reason why Millennium should not respond to these straightforward requests, other than the concern that to do so would greatly undermine its claims in this litigation.

### Millennium's Communications With Aon Are Not Privileged

The majority of documents Millennium has withheld on the basis of the attorney-client privilege involve communications between Millennium's broker, Aon, and Millennium's counsel, both outside and inhouse. For the reasons described below, Great American respectfully submits that these communications are not privileged as a matter of law. Alternatively, the Court should review these communications *in camera* to determine whether the withheld communications were made for the purpose of providing Millennium with legal advice.

8

Specifically, Millennium concedes that Aon is a third-party, having taken the position that Great American must seek discovery directly from Aon via subpoena. Yet, Millennium has also taken the position in prior correspondence that the inclusion of Aon on attorney-communications does not constitute a waiver because it "was acting as Millennium's representative for purpose of obtaining a recovery on Millennium's insurance [c]laim" having "played a crucial role in the adjustment of the claim, was often the sole party communicating with Great American on Millennium's behalf, and had information necessary for Millennium attorneys to develop and furnish legal advice." Put another way, Aon, who Millennium has interchangeably described as its "broker" or "claim recovery specialist," guided Millennium through the claim process and Great American's investigation, communicated with Great American on Millennium's behalf, and potentially (or likely) advised Millennium with respect to the terms and conditions of the Policy.

The attorney-client privilege is strictly construed against the asserting party and the burden is on the asserting party to prove its applicability. *Tucker v. CompuDyne Corp.*, (Ohio App. 8 Dist., 09-04-2014) 18 N.E.3d 836, 2014-Ohio-3818; *United States v. Krug*, 379 Fed. Appx. 473, 478 (6th Cir. 2010). Communications with a third-party generally result in a waiver of the attorney-client privilege. *Snyder v. Fleetwood RV, Inc.*, 303 F.R.D. 502, 506 (S.D. Ohio 2014). While attorney-client communications made in the presence of an agent of either the client or attorney retain the privilege, *Foley v. Poschke*, 66 Ohio App. 227, 228 (8th Dist. 1940), the third-party agent must actually serve as a necessary intermediary or "interpreter" of technical concepts for the specific purpose of obtaining legal advice from the lawyer. *See United States v. Robinson*, 5 F. Supp. 3d 933, 938 (S.D. Ohio 2014); *In re Behr Dayton Thermal Prods., LLC*, 298 F.R.D. 369, 373 (S.D. Ohio 2013) (privilege applies to "agents of an attorney who are assisting in rendering legal advice to the client").

9

Based on these principles, courts have squarely rejected Millennium's claim that a third-party broker that guides the insured through the claims process and interfaces with the insurer as Aon did here qualifies as such an agent of any attorney or to render legal advice. Specifically, in *Cellco P'ship v. Certain Underwriters at Lloyd's London*, No. 05-cv-3158, 2006 WL 1320067 (D.N.J. May 12, 2006), a case remarkably similar to the one at bar, the insured under a crime protection policy retained Aon to submit a claim on its behalf and to otherwise act as an intermediary between the insured and the insurer. In subsequent litigation arising out of the denial of the insured's claim, the insurer argued that communications between the insured's counsel and Aon were improperly withheld as privileged. *Id.* at *4. The court agreed, ruling that "Aon did not act as an agent of the attorney or [the insured] for purposes of providing or interpreting legal advice. While the information and advice provided may have proved helpful, it was not needed to interpret complex issues in order to provide competent legal advice or to facilitate the attorney-client relationship." *Id.* Other courts have similarly held that third-party parties that assist in the claims process do not, as a rule, act for the purpose of obtaining legal advice. *See, e.g.*, *Cardinal Aluminum Co. v. Continental Cas. Co.*, 3:14-CV-857, 2015 WL 4483991, at *3 (W.D. Ky. July 22, 2015) (rejecting claim of privilege for communications between insured and broker where broker's role was to guide insured through the claims process); *Mt. McKinley Ins. Co. v. Corning Inc.*, No. 602454/2002, 2017 WL 1401363, at *8 (N.Y. Sup. Ct. Apr. 17, 2017) (holding communications between insured's counsel and broker not privileged where broker was "responsible for communicating [the insured's] position to the insurers regarding coverage matters, negotiating written agreements in the coverage disputes, and for reporting to [insured] and [insured's] Legal Department").

During the parties' meet and confer, Millennium's counsel cited *Home Depot U.S.A., Inc. v. G&S Inv./Willow Park, L.P.*, 2001 WL 37121340, at *3 (N.D. Ga. Sept. 27, 2001) and *SavaSeniorCare, LLC v. Starr Indem. & Liab. Co.*, 2019 WL 9806574, at **9-10 (N.D. Ga. Oct. 31, 2019) for the proposition that "[c]ourts recognize that attorney communications with insurance brokers are privileged under these circumstances." Both of those cases are inapposite as the communications between counsel and the broker in those cases were meant to guide the insured's litigation strategy against the insurer, and hence the communications qualified for work product privilege protection as well. *See id.* Here, Millennium has never contended the communications it has withheld had any connection to anticipated litigation as its privilege log reveals.

For these reasons, Great American contends that communications between Millennium's counsel and Aon are not privileged as a matter of law and certainly not on a wholesale basis. To the extent the Court believes the privilege even applies, Great American contends that *in camera* review of those communications is necessary to determine which ones, if any, reflect the conveyance of legal advice in any way, especially as the narrative on Millennium's privilege log for most document states only that the communications regard the "claim." Moreover, numerous withheld communications appear to involve several non-attorney recipients, which supports the notion that Millennium's counsel was included on communications as a pretense to claim privilege where no legal advice was at issue.

Lastly, Great American reserves the right to compel the disclosure of otherwise privileged communications if discovery reveals that Millennium acted in bad faith in withholding information during the claims process. Ohio law recognizes that the insured also owes the insurer a duty of good faith. *See John Hancock Mut. Life Ins. Co. v. Luzio*, 123 Ohio St. 616, 630-31 (1931). Great

American asserts that the holding of *Boone v. Vanliner Ins. Co.*, 744 N.E.2d 154 (2011) ( should apply with equal force to the insured where there is at least a *prima facie* showing of bad faith by the insured.

**<u>Boone v. Vanliner</u>:**  Great American has agreed to produce documents from its claims file that it previously withheld on the basis of the attorney-client privilege pursuant to *Boone v. Vanliner*.  Great American may redact information that reveals specific trial strategies, and otherwise states that the production of these documents in no way constitutes a waiver of the attorney-client privilege with respect to other communications, and does not waive the protections of Ohio Rev. Code § 2317.02 that expressly establishes a "testimonial privilege."

**MILLENNIUM STATES AS FOLLOWS:**

Millennium briefly notes that Great American has agreed to supplement its disclosure of attorney-client communications found in its Claims File, pursuant to *Boone*.  Great American has indicated that it may redact certain information from the supplemental production.  Millennium does not wish to speculate about the nature of the redactions.  At this time, Millennium reserves all rights, including to raise *Boone* later, upon review of Great American's supplemental production, redactions, and supporting privilege logs.

**<u>Third Party Travel Agents.</u>**

Fed. R. Civ. P. 26(b) authorizes discovery only where it is relevant to a claim or defense, and where it is proportional to the needs of the case.  The Court's order granting partial summary judgment on the issue of coverage has fully and finally resolved whether Great American could properly deny coverage based on the "bookkeeping loss" theory – the supposed ground that the Merdis fraud involved a method that transferred funds to sham entities on account of real bookings made by legitimate travel agents.  As a matter of law, it is irrelevant whether this method was used,

and irrelevant whether the legitimate travel agents were ever paid commissions on these bookings, as Millennium need only prove that the funds were Millennium property and transferred as a result of fraud.  [Dkt. 48 at PAGEID# 563-564.]

Great American's requests nonetheless continue to pursue this flawed theory, and seek further information intended to show that legitimate travel agents were not paid, and that Great American correctly allocated loss as among the method that involved the legitimate travel agents and the method that did not.  Great American also contends it is relevant when Millennium learned that a method involved legitimate travel agents, as it believes the investigation would have concluded earlier if the legitimate travel agent method was explained to Great American earlier in the process.

Millennium objected to Great American's requests on grounds of relevance, burden, and overbreadth.  This discovery as framed would require searching through fifteen years of corporate records on an issue that has no bearing on the triable issues remaining in the case.

Moreover, many of Great American's requests as framed purported to require Millennium to accept that the Claim seeks funds that were misappropriated or diverted from travel agents, when the Claim seeks only funds that were stolen from Millennium.   Millennium was unable to answer the interrogatories as framed because they required Millennium to assume what it considered to be false factual and legal premises.  Finally, Great American's interrogatories as framed seek the knowledge of any employee, agent, or attorney who ever worked for Millennium, and are not limited to facts that could be obtained from information reasonably available to the company.  (For instance, Great American asks Millennium to swear under oath as to when "You" discovered that the Merdis fraud misappropriated commissions from legitimate travel agents.  Millennium disagrees that commissions were misappropriated from legitimate travel agents.  But

because "You" is defined to include any employee, and Merdis was an employee, Millennium would be forced to speculate about when Merdis himself knew what specific methods he used to defraud Millennium.)

Millennium attempted to respond to these requests in good faith, based on what factual information it believed Great American to be seeking. In response to these requests, Millennium provided documents and data previously furnished to Great American in the lengthy investigation on this very issue, as well as communications with Great American. These documents show that Great American had constructive knowledge of both methods in August 2018. Millennium also produced the data (submitted with the proof of loss in August 2018) in its possession relevant to allocating the transfers among the two methods. Millennium's interrogatory responses also state affirmatively that both parties had at least constructive knowledge of both methods in August 2018. Further, the parties have exchanged communications showing that Great American raised the issue of whether Merdis used a method involving legitimate travel agents in February 2019, and further communications that month in which Millennium confirmed both methods were used. Millennium has also provided discovery responses showing that, based on a reasonable investigation, Millennium is unaware of any complaints, demand letters, or lawsuits from legitimate travel agents alleging they were underpaid or unpaid amounts attributable to bookings implicated by the Merdis fraud (which is evidence of double payment, as one would expect at least one of the agents to have complained if they were shortchanged).

Millennium's responses are already well beyond what Great American is entitled to receive under Rule 26. Great American has issued an offer to compromise that continues to go well beyond the scope of Rule 26, and appears intended to re-litigate the "bookkeeping loss" issue or fish for ammunition to file an appeal. The

thrust of Great American's position is that it believes Millennium knew about both methods and withheld the information from the adjuster, causing delays in the investigation. This is the only alleged basis for continued discovery into the third party agents. Again, Great American's theory falls apart because it had the data communicating the two methods were employed as of August 2018, Great American reviewed this data and communicated its view that two methods were used in February 2019, and Millennium confirmed that this was the case a short time thereafter. (February 2019 was months before the date Great American alleges that the policy limitation period expired, on June 24, 2019.) Further, Millennium also disagrees that this fact has any bearing on any claim or defense. Millennium's insurance Claim was covered as a matter of law regardless of which method Merdis used to steal Millennium's funds.

Nonetheless, without waiving its objections or agreeing to further written responses or document production, **Millennium will amend its interrogatory response to provide the date on or around when Millennium's internal risk management team formed an actual understanding that the Merdis fraud employed a method that involved real bookings made by legitimate travel agents, and will produce non-privileged documents that triggered the formation of this understanding. Millennium will identify the individual who formed this actual understanding in its responses.** Millennium disagrees with Great American that anything more than this is required, given the volume of information and data already exchanged on this topic compared to the limited importance to the triable issues remaining in the case.

Great American has also suggested that Millennium augment the above proposal to include answers regarding "the dollar amount that Millennium believes is attributable to each method Merdis used" and "what specific evidence Millennium has that the legitimate travel agents were paid." These topics plainly invade non-triable issues that were decided as a matter of law. It is

15

irrelevant how loss was allocated among the method involving legitimate agents and the method not involving such agents, because in either event the Claim was covered.   The entire project of allocating loss as among one or other method is what Millennium is challenging as wasteful, unreasonable, and dilatory, as it had no basis in law and was conceived to deprive Millennium of valid reimbursement for loss.

**Communications with Aon**

Great American continues to pursue discovery seeking "all" communications between Millennium, on one hand, and Aon, on the other, related to the Claim.  The Court's summary judgment ruling substantially limited the scope of discovery properly directed to Millennium.  The remaining triable issues in the case hinge upon Great American's words, conduct, and acts, and its justifications for the same.  Requests for communications between Aon and Millennium and that do not reveal the information actually available to and/or considered by Great American are not relevant to any claim or defense.  Accordingly, Great American's request is overbroad, not tailored to obtain relevant evidence, and will be burdensome to respond to because Aon is Millennium's insurance broker on other matters unrelated to this Claim.

Millennium responded in good faith by implementing two constraints:  (1) it restricted its search to pre-denial communications in the possession of Janlyn Mahlman, the person in charge of Millennium's risk management functions, and who would have been copied on virtually all material communications with Aon; and (2) limiting the request by subject matter that Millennium agreed is within the scope of discovery.  Millennium has produced numerous communications with Aon pursuant to this request, and Great American should have produced all communications Great American exchanged with Aon by producing its entire Claims File.

With respect to the first constraint, Millennium and Great American agreed that Millennium should expand the scope of its search. **Millennium will perform searches for communications with Aon that are in the possession of at least one additional custodian.** Great American proposed an initial list of custodians prior to the submission of this Report. Millennium is evaluating that list, and will work to reach a compromise with Great American before the hearing regarding selection of additional custodian(s). **Great American has also agreed in principle to limit the scope of the request to communications with specific Aon personnel.** Millennium will also work with Great American to focus this list to relevant personnel who would have engaged in communications about the agreed sub-topics. Millennium intends to perform industry-standard de-duplication processes over any new custodians to avoid cumulative and/or unnecessary document review.

The parties reached an impasse over the second form of constraint, i.e., limiting the request from "all" communications relating in any way to the Claim, to communications regarding specific subject matter that target the remaining triable issues. The parties are at an impasse on this issue. Millennium has repeatedly – in meet and confer and in writing – asked that Great American limit its request by subject-matter, by some other basis than that the communication relate in some way to the Claim. Great American has refused to do so. In Millennium's view, this indicates that Millennium's search already properly identified the relevant subject matter of communications with Aon that are within the scope of discovery, and thus there is no need to respond with additional topics.

Great American is not only seeking to re-open the door to its "bookkeeping loss" defense, but also to all other parts of the claim adjustment process that plainly are not in dispute. Millennium has explained that many communications with Aon would have related to fact gathering on

17

irrelevant issues, such as whether Merdis was an employee and for how long he served in that role, or whether the funds were actually transferred by Millennium to a third party,facts that are not in dispute.  Great American's requests do nothing to avoid discovery on such issues.  Moreover, Great American's interest in this discovery is based upon speculation that specific conversations occurred, and that if they occurred, could possibly be relevant.    A fishing expedition for hypothetical discussions is not a proper basis for discovery.

Finally, Great American has also explained that it could use Millennium's discussion of Great American's coverage position to show that Great American's interpretation of the Policy was reasonable.  Great American provides no authority showing that the jury may consider such evidence.  *Cf. Stefano v. Commodore Cove E., Ltd.*, 145 Ohio App. 3d 290, 295, 762 N.E.2d 1023, 1026–27 (2001) (denying summary judgment to the insurer on bad faith claim, discussing the information actually furnished to the insurer and what steps it could have taken once apprised of the information); *CSS Publ'g Co. v. Am. Econ. Ins. Co*., 2000-Ohio-1863, 138 Ohio App. 3d 76, 86, 740 N.E.2d 341, 348 (same).  Indeed, Millennium's interpretation was deemed reasonable as a matter of law, and the Court foreclosed Great American's contrary interpretation, also as a matter of law.  Great American cannot contradict this ruling by parol evidence from the insured made years after the policy incepted.  *Sherock v. Ohio Mun. League Joint Self Ins. Pool*, 2004-Ohio-1515, ¶ 16 ("Where a term is ambiguous, parol evidence is admissible to interpret, but not to contradict, the express language of the contract.").  Furthermore, Millennium learned of Great American's actual coverage position in its denial letter dated December 17, 2019.  This affords no basis for Great American to obtain communications made prior to this time.  And because Great American's initial coverage letter was directed to Millennium's attorney and apprised (and surprised) Millennium of the need for litigation, any discussions with Aon regarding this letter

18

would have been led by its external counsel, and would be protected by the attorney work product doctrine.

Great American already has in its possession correspondence from Millennium's attorney explaining to Great American, prior to filing of suit, that Sixth Circuit case law foreclosed Great American's legal position. Great American also has in its possession its response letter showing that Great American did not change its position when confronted with this authority, but instead threatened to cause a forfeiture of the entire Claim by invoking the policy limitation clause for the first time. Great American is not entitled to the work product and deliberation that gave rise to Millennium's pre-litigation correspondence.

Accordingly, Millennium intends to address Great American's arguments by expanding its search of custodians with reasonable paramaters as discussed above, and by specifically searching for non-privileged communications with Aon that may have first triggered an actual understanding that Merdis employed a method involving legitimate travel agents (as part of the search it will conduct to amend its interrogatories as noted above). Millennium states that Great American is not entitled to communications with Aon regarding any other topic.

**Privileged Communications**

Great American contends that Millennium waived privilege over attorney-client communications that were sent by, to, or copying Aon plc, Millennium's insurance broker and claims recovery specialist. Great American's theory is that Aon plc was a third party, and any communication with a third party is *ipso facto* a waiver of privilege.

Great American is incorrect. "[P]rivileged communications may be conveyed to representatives of a corporation without the communications losing their privileged nature." *U.S. ex. rel. Fry v. The Health All. of Greater Cincinnati*, 2009 WL 5033940, at *4-5 (S.D. Ohio Dec.

11, 2009) (independent contractors); *In re Bieter Co*., 16 F.3d 929, 938 (8th Cir. 1994) (consultants); *Stafford Trading, Inc. v. Lovely*, 2007 WL 611252, at *7 (N.D. Ill. Feb. 22, 2007) (same); *Fosbre v. Las Vegas Sands Corp*., 2016 WL 183476, at *5 (D. Nev. Jan. 14, 2016) (same). Aon plc is an outside consultant for Millennium and was intimately involved in the claim recovery process. Aon communicated with Great American on Millennium's behalf during the adjustment process, and was often the only representative for Millennium present on phone calls and emails with Great American and/or its representatives. Inside and outside counsel for Millennium regularly drew upon Aon's technical expertise in insurance adjustment and claim recovery, as well as information that only Aon had with respect to communications with the insurer, to form legal strategy and advise Plaintiffs, their corporate clients. Millennium's inside counsel and outside counsel thus communicated with Aon on a confidential basis to help form and execute legal strategy, including with respect to communications between Aon and Great American.

Under these circumstances, Aon was plainly a representative of Millennium in connection with the communications withheld on Plaintiffs' privilege logs, and no waiver occurred merely because Aon plc received or sent the communication in question from or to Millennium attorneys.

Lacking any argument that privilege was waived because Aon is a third party, Great American falls back on a position that Aon simply was not important enough to the process to justify a finding that the communications with Aon retained their privileged character. It contended prior to submission of this Report that "[w]hile the information and advice provided may have proved helpful, it was not needed to interpret complex issues in order to provide competent legal advice or to facilitate the attorney-client relationship." However, Great American cannot prove this contention with any factual support. As above, Aon's information was absolutely required to form legal advice because it was the sole Millennium representative

communicating with Great American in many instances. Mr. Furmansky, the individual who led the claim recovery team from Aon, is an attorney himself, which further supports that his views and expertise were intended to form legal strategy, and not merely to keep the broker in the loop. Courts have found that attorney communications with their insurance brokers are privileged when made for these purposes. *E.g., Home Depot U.S.A., Inc. v. G&S Inv'rs/Willow Park, L.P.*, 2001 WL 37121340, at \*3 (N.D. Ga. Sept. 27, 2001); *SavaSeniorCare, LLC v. Starr Indem. & Liab. Co.*, 2019 WL 9806574, at \*10 (N.D. Ga. Oct. 31, 2019), report and recommendation adopted, 2019 WL 9809629 (N.D. Ga. Dec. 23, 2019).

By contrast, the cases cited by Great American generally involve situations where an insurance broker is copied for mere convenience, not where the broker serves as a recovery specialist tasked with providing information and expertise needed for inside and outside counsel to form and provide effective legal advice. For instance, Great American cites *Cellco P'ship v. Certain Underwriters at Lloyd's London*, No. CIV.A. 05-3158 (SRC), 2006 WL 1320067, at \*3 (D.N.J. May 12, 2006). This case does not consider subsequent cases decided in this district finding that "[t]he majority of case law" recognizes that an independent contractor serves 'as a 'representative' of [the client] to the degree necessary to establish the attorney-client privilege,'" the same as if the contractor was an employee. *See Fry*, 2009 WL 5033940, at \*4. *Cellco* takes the narrow view that privilege claims require that attorney-client communications "improve the comprehension of the communications between the attorney and the client," which appears to be a more restrictive rule of decision than is typically followed by federal courts. Further, while the court there ultimately did not find the communications were privileged, this was premised upon a finding that the advice "was not needed to interpret complex issues in order to provide competent legal advice or to facilitate the attorney-client relationship." If afforded the opportunity, Plaintiffs

would intend to establish that Aon's involvement was necessary to provide competent legal advice and facilitate the attorney-client relationship, and that Aon was the representative translating the insurer's communications to Millennium's attorneys, and vice versa. *See also Mt. McKinley Ins. Co. v. Corning Inc.,* No. 602454/2002, 2017 WL 1401363, at *9 (N.Y. Sup. Ct. Apr. 17, 2017) (case cited by Great American, indicating that privilege could extend to insurance brokers where facts showed brokers were de facto employees); *Cardinal Aluminum Co. v. Cont'l Cas. Co.*, No. 3:14-CV-857-TBR-LLK, 2015 WL 4483991, at *3 (W.D. Ky. July 22, 2015) (case cited by Great American, in which party claimed that insurance broker communications regarding negotiation of insurance policy were privileged, nor because the broker was a recipient of communications between the client and its attorney).

Millennium notes that it has not taken an extreme position with respect to withholding communications in the presence of Aon.  Millennium has produced numerous communications with Aon, and is not asserting, as do many insureds, that a communication is protected *because* it is with Aon.  Millennium is merely asserting that otherwise privileged communications do not lose their privileged character merely because Aon received or sent the communication, given the circumstances of Aon's engagement, and the nature of the communications, and their purpose.

Millennium doubts that the parties will reach a full agreement on this issue.  However, Millennium continues to believe that the dispute is not ripe for adjudication, as Great American's position ultimately rests upon the factual premise that Aon had no role in forming Plaintiffs' legal strategy, and was merely a bystander copied for convenience or mere business advice.  The factual record is undeveloped on this issue, and Millennium should have an opportunity to submit evidence and fulsome briefing in support of its privilege claims prior to any decision to compel documents.

Furthermore, during meet and confer, **Millennium informed Great American that it intends to amend its privilege logs to show or illuminate the reason why Aon was included on each withheld communication to which Aon was a party (other than those that assert work product protection – Great American does not challenge these entries), to the extent it can do so without disclosing privileged information.  Millennium also intends to review its privilege claims for the challenged communications on a document-by-document basis, in light of Great American's authorities and legal position**.  This subsequent review may well narrow the scope of the dispute between the parties, as well as the scope of any *in camera* review the Court may wish to conduct.  Thus, Millennium believes that it is premature to decide this legal issue in Great American's favor.

Respectfully submitted,

Dated: April 19, 2021

/s/ Daniel Dorfman

Attorney for Plaintiffs

Daniel A. Dorfman (admitted pro hac vice)
David J. Ogles (admitted pro hac vice)
FOX SWIBEL LEVIN & CARROLL LLP
200 W. Madison Street, Suite 3000
Chicago, IL 60606
ddorfman@foxswibel.com
dogles@foxswibel.com

Bryce A. Lenox
THE LAW OFFICE OF BRYCE A. LENOX,
ESQ. LLC
3825 Edwards Road, Suite 103
Cincinnati, OH 45209
bryce@brycelenoxlaw.com

*Counsel for Millennium Plaintiffs*

/s/ Daniel Lebersfeld

Attorney for Defendant

James Papakirk (0063862)
Hallie S. Borellis (0076510)
Flagel & Papakirk LLC
50 E-Business Way, Suite 410
Cincinnati, OH  45241
Phone:  513-984-8111
Fax:  513-984-8118
jpapakirk@fp-legal.com
hborellis@fp-legal.com

and

Stephen N. Dratch (admitted pro hac vice)
Daniel Lebersfeld (admitted pro hac vice)
Franzblau Dratch, PC
354 Eisenhower Pkwy.

23

Livingston, NJ  07039
Phone:  973-992-3700
Fax:  973-994-0139
sdratch@njcounsel.com
dlebersfeld@gmail.com

*Counsel for Defendant Great American Insurance Company*