IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| M&C HOLDINGS DELAWARE PARTNERSHIP, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> GREAT AMERICAN INSURANCE COMPANY, <br><br> Defendant. | Case No. 1:20-cv-00121-SJD-KLL <br><br> Judge Susan J. Dlott <br><br> Magistrate Judge Karen L. Litkovitz |

**DEFENDANT GREAT AMERICAN INSURANCE COMPANY'S REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND FOR *IN CAMERA* REVIEW**

Defendant Great American Insurance Company ("Great American" or "Defendant") respectfully submits this reply memorandum of law in further support of its motion to compel plaintiffs M&C Holdings Delaware Partnership, M&C Hotel Interests, Inc., M&C Management Services (USA), Inc., CDL Hotels (USA), Inc. and RHM-88, LLC (collectively, "Millennium" or "Plaintiffs") to: (i) produce all documents they have withheld solely on the basis of attorney-client privilege that involve communications with non-party Aon Risk Services Northeast, Inc. (along with any affiliates, "Aon"); and (ii) submit documents withheld on the basis of attorney-work product privilege for *in camera* review.[1]

**PRELIMINARY STATEMENT**

In its Opening Memorandum, Great American argued that third-party Aon's communications with Millennium's attorneys cannot be withheld under the attorney-client

---

[1] Unless otherwise noted, capitalized terms used herein have the same meaning as set forth in Great American's Opening Memorandum of Law ("Opening Memorandum" or "Open.") (ECF Doc. No. 56).

privilege because Millennium and Aon explicitly disclaimed any agency or employment relationship between them, and Aon, acting as Millennium's "claim recovery specialist," was not virtually indispensable to Millennium's attorneys to render legal advice. Indeed, Great American cited decisions from other courts that ruled the attorney-client privilege to be inapplicable under these very factual circumstances, including a case where Aon specifically was performing the same role under the same type of policy that is at issue here.

While Millennium's opposition brief ("Opposition" or "Opp.") (ECF Doc. No. 58) raises an academic point of whether its attorneys' communication with Aon implicates a "waiver" of the privilege and attempts to play up the subjective importance it placed on Aon's services, the authorities upon which it relies do not alter the Millennium's burden to demonstrate that: (i) Aon effectively acted as a "translator" of esoteric or technical concepts for the benefit of Millennium's attorneys in furtherance of the specific purpose of providing legal advice; or (ii) Aon was virtually indistinguishable from a Millennium employee. Millennium's proffer of a short affidavit from Adam Furmansky, the main Aon employee who assisted Millennium's recovery efforts, serves only to confirm that Aon provided services that Millennium found useful and convenient, which is simply not enough to have made Aon indispensable to Millennium's attorneys or Millennium's "functional employee." *See* Points I and II, *infra*.

Millennium's attempt to invoke the "common interest exception" fails because Aon was not represented by separate counsel in connection with litigation or some other type of official proceeding. *See* Point III, *infra*. Otherwise, Great American's motion does challenge Millennium's redactions as those are specifically Millennium's privilege log, and Millennium must still demonstrate that documents withheld on work product grounds were prepared because

2

of anticipated litigation, and not simply when litigation could be expected. *See* Points IV and V, *infra*.

## ARGUMENT

I. **MILLENIUM HAS NOT MET ITS BURDEN TO DEMONSTRATE THAT AON WAS INDISPENSABLE FOR THE RENDITION OF LEGAL ADVICE FROM ITS ATTORNEYS**

The cases Millennium cites confirm the framework set forth in Great American's Opening brief that:

(i) the presence of a third-party generally destroys any claim of attorney-client privilege, *Oxyn Telecomm., Inc. v. Onse Telecom*, No. 01-civ-1012, 2003 WL 660848, at *2 (S.D.N.Y. Feb. 27, 2003) (cited in Opp. 6) ("In general, the attorney-client privilege is waived when a protected communication is disclosed to a third-party.") (citations omitted);

(ii) the privilege is not destroyed if the third-party was necessary for the attorney to render legal advice to the client, *id.*; *Miller v. Haulmark Trans. Sys.*, 104 F.R.D. 442, 445 (E.D. Pa. 1984) (discussed in Opp. at 7-8) ("As a general matter, the privilege is not destroyed when a person other than the lawyer is present at a conversation between an attorney and his or her client if that person is needed to make the conference possible or to assist the attorney in providing legal advice.") (citations omitted); and

(iii) whether the third-party was necessary for the rendition of legal advice from the attorney is determined by the criteria set forth in *Kovel* and its progeny, *Coca-Cola Co. v. Allianz Ins. Co.*, No. 1:01-CV-3125, 2004 WL 7308665, at *4 (N.D. Ga. Mar. 4, 2004) (discussed in Opp. at 7-8) (applying *Kovel* to determine whether

3

counsel communication with non-client insurance broker resulted in a waiver of attorney-client privilege); *Oxyn Telecomm., Inc.*, 2003 WL 660848, at *2 (same).[2] The cases upon which the Opposition relies similarly confirm that it is Millennium's burden to demonstrate that Aon's involvement in the attorney-client communications was necessary, and not just helpful or convenient, for Millennium's attorneys to render legal advice. *See, e.g.*, *Coca-Cola Co.*, 2004 WL 7308665, at *2-3 (burden on insured to establish that broker was necessary for its attorneys to render legal advice).

The agreements that defined Aon's relationship with Millennium demonstrate that Aon's role was to maximize Millennium's recovery in connection with the Merdis claim by guiding it through the claims process and communicating with Great American. (*See* ECF Doc. No. 55-2 at PAGEID# 682). In exchange, Aon was to receive a percentage of the recovery if Millennium did not terminate the Amendment earlier. (*Id.*) The Opposition, which includes an affidavit from Adam Furmanksy ("Furmanksy Affidavit" or "Furmansky Aff.") (ECF Doc. No. 57-1), adds nothing of significance to what Millennium's written agreements with Aon explicitly provide, merely stating that Millennium (and thus its attorneys) obtained the benefit of Mr. Furmansky's communications with Great American (some of which he apparently drafted for Millennium) and his concomitant "mental impressions" and "institutional knowledge." (Furmansky Aff. ¶ 7). Mr.

---

[2] The fact that most of the cases upon which Millennium relies to support its claim that Aon effectuated the rendition of legal advice from its attorneys relied on *Kovel* belies its argument that "*Kovel* is not necessary to preserve privilege upon communications between an attorney and consultants engaged **by the client**." (Opp. 9) (emphasis in original). *Kovel* itself draws no distinction as Judge Friendly addressed "the presence of an accountant, whether hired by the lawyer or by the client . . . ." 296 F.2d at 921. In any event, the two cases Millennium cites for its proposed distinction without a difference addressed situations where the third-party is acting as an "agent" of the client. *See In re Myers*, No. 11-61426, 2013 WL 4067126, at *4 (Bankr. N.D. Ohio Aug. 8, 2013) (cited in Opp. at 9) (holding that accountant "was acting directly as agent to Debtor" and therefore privilege was preserved); *Evergreen Trading, LLC ex re. Nussdorf*, 80 Fed. Cl. 122, 142 (Fed. Ct. Claims 2007) (*Kovel* does not apply where third party is an "agent" of the client, and finding that agreement that specified that accountant was agent of the attorney negated a finding of privilege). As Great American's Opening Memorandum pointed out, the Aon Engagement letter expressly disclaimed any agency relationship between Millennium and Aon. (ECF Doc. No. 55-1 at PAGEID# 674).

Furmansky, however, does not specify what esoteric concepts Aon was "translating" for the benefit of Millennium's lawyers. Put another way, Mr. Furmansky does not say what it was about the Merdis claim or Great American's investigation that Millennium and its attorneys (or perhaps attorneys with an insurance background) could not perform for themselves, in the same manner that a lawyer cannot be expected to fully grasp, for example, accounting or engineering concepts without specialized assistance. Thus, it is obvious that Mr. Furmansky's experience and his role as an intermediary was merely "useful and convenient," instead of "nearly indispensable" to the legal representation specifically, which is what Millennium is required to demonstrate to sustain its claims of attorney-client privilege. *Cavallaro v. United States*, 284 F.3d 236, 249 (1st Cir. 2002) (quotation omitted). Rather, what Millennium primarily sought was Aon's services, and not the services of its attorneys, which is exactly what Judge Friendly warned against in *Kovel*. 296 F.2d at 922.

Great American's Opening Memorandum cited three cases that have held that the role Aon played here does not come within *Kovel* doctrine. (Open. 13-14). Indeed, one of these cases actually involved Aon specifically acting as a claim recovery specialist under the exact type of policy at issue here. *Cellco P'ship v. Certain Underwriters at Lloyd's London*, No. 05-cv-3158, 2006 WL 1320067, at *1, 3-4 (D. N.J. May 12, 2006) ("*Cellco*"). That court held that "Aon did not act as an agent of the attorney of [the insured] for purposes of providing or interpreting legal advice. While the information and advice may have proved helpful, it was not needed to interpret complex issues in order to provide competent legal advice or to facilitate the attorney-client relationship." *Id.* at *4.

The few sentences the Opposition devotes to its attempt to distinguish these cases miss the mark completely. Specifically, Millennium asserts that *Cellco* does not apply because it

5

supposedly turned on whether Aon was itself providing legal advice. (Opp. 10-11). Not so. Rather, the *Cellco* court rejected the insured's separate *alternative* arguments that Aon was necessary for the insured's attorneys to provide legal advice and that Aon was itself providing legal advice because the specialist who assisted the insured was also a lawyer. 2006 WL 1320067, at *3-4. Indeed, the Opposition fails to mention that Mr. Furmanksy is also a lawyer (ECF Doc. No. 40-2 at PAGEID# 474), which makes the facts here all the more analogous with the those in *Cellco*. And, while *Mt. McKinley Ins. Co. v. Corning Inc.* No. 602454/2002, 2017 WL 1401363 (N.Y. Sup. Ct. Apr. 17, 2017) is indeed an unpublished state trial court decision, Millennium makes no argument that it somehow incorrectly articulated the law. Rather, Millennium claims that the broker's role as a claim intermediary in *Mt. McKinley* was described only in a "bare-bones" manner, while Mr. Furmansky provided a more fulsome description of his duties. (Opp. 11). The amount of detail, however, is not a distinction that matters as Mr. Furmansky does not describe any technical or esoteric concepts he was "translating" for the benefit of Millennium's attorneys. Indeed, the fact that Mr. Furmansky is himself a lawyer is further, if not conclusive, evidence that he was really performing legal services under a different hat, having gone so far as to advise Millennium as to the meaning of certain Policy exclusions. (ECF Doc. No. 55-4 at PAGEID# 691-93). *See, e.g.*, *Cardinal Aluminum Co. v. Continental Cas. Co.*, No. 3:14-CV-857, 2015 WL 4483991, at *3 (W.D. Ky. July 22, 2015) (rejecting claim of privilege for communications between insured and broker where broker's role was to guide insured through the claims process).

By contrast, Millennium cannot cite a single case in which an insured's counsel's communications with a third-party performing something that resembles claim advocacy services were deemed privileged. The closest it comes are two broker cases that are entirely distinguishable. The first of these cases, *Coca-Cola, supra*, involved the broker's assistance in

6

drafting an endorsement to an employer liability policy at a time when the insured was expecting litigation. Applying *Kovel*, the court found that the broker, who was intimately familiar with the policy, was needed for the insured's inhouse counsel to formulate policy language. 2004 WL 7308665, at *4. Moreover, the court found it particularly relevant that the communications occurred at a time when litigation was expected. *Id.* at *5. Here, of course, Millennium claims that litigation could not be expected until November of 2019. And even so, there is no claim that Mr. Furmanksy had any role in drafting the policy language or that his communications with Millennium had anything to do specifically with the actual drafting of the Policy. Indeed, there is no claim that Aon had anything to do with drafting Policy language, as Mr. Furmansky claims only that it was his understanding that Aon "placed," the Policy (Furmanksy Aff. ¶ 3), which is a different concept than negotiating "manuscript" policy language. *See Westfield Ins. Co. v. Galatis*, 100 Ohio St. 3d 216, 226 (2003) (noting distinction between "manuscript" policies and "standard forms designed to insure a variety of entities").

*Miller v. Haulmark Trans. Sys.*, 104 F.R.D. 442 (E.D. Pa. 1984) is similarly distinguishable in that the court there held that the participation of the broker in communications specifically pertaining to the drafting of an answer and defenses to a complaint did not destroy the privilege, having also held that the same communications were subject to work product protection. As Great American's Opening Memorandum pointed out (Open. 14), the "coverage disputes" in *Home Depot U.S.A., Inc. v. G&S Inv./Willow Park, L.P.*, 2001 WL 37121340, at *3 (N.D. Ga. Sept. 27, 2001) and *SavaSeniorCare, LLC v. Starr Indem. & Liab. Co.*, 2019 WL 9806574, at *9-10 (N.D. Ga. Oct. 31, 2019) were meant to assist the insured's litigation strategy with the insurer, rather

than the claim process, which, as discussed above, courts have universally held do not create a privileged relationship between broker and the insured's attorneys.[3]

In sum, there was nothing about the services that Aon provided to Millennium that was "nearly indispensable" for Millennium's inhouse and outside counsel to provide competent legal advice. *See Cavallaro*, 284 F.3d at 249. Indeed, Mr. Furmansky does not describe anything about the services he personally performed for Millennium that required any specialized or unique background that Millennium's attorneys did not possess. Rather, he was simply a third-party intermediary between Millennium and Great American whose employer specifically disclaimed that he was Millennium's agent or employee. Thus, it is obvious that Aon's claim advocacy services were, at most, "useful and convenient," *id.*, to Millennium and its attorneys. Accordingly, the Court should rule that Aon's communications with Millennium's attorneys are not privileged, just as every court of which the parties are aware that have considered the issue have determined.

---

[3] The remaining cases Millennium cites in Point I of its Opposition are distinguishable and otherwise inapplicable here. *Morgan v. Butler*, 85 N.E.3d 1188, 1194-95 (Ohio App. 2017) (cited in Opp. at 9) (holding communications between counsel for Ohio Environmental Protection Agency and agency employees were privileged); *James Julian, Inc. v. Raytheon Co.*, 93 F.R.D. 138, 141 (D. Del. 1982) (cited in Opp. at 8) (not addressing lawyers' communications with non-client, observing "Plaintiff does not seriously contest that the individuals involved in the preparation of the two documents were employees of the corporation."); *Fox v. Massey-Ferguson, Inc.*, 172 F.R.D. 653, 670 (E.D. Mich. 1995) (cited in Opp. at 6) (sharing of litigation risk assessment with client's actuarial consultant did not waive privilege as to that document); *Oxyn Telecomm., Inc.*, 2003 WL 660848, at *2-3 (presence of third-party who acted as Korean-English translator and explained nuances of United States litigation and telecommunications industry to Korean persons present at meeting with Korean company's attorney did not waive privilege); *Grace Community Church v. Lenox Tp.*, No. 06-13526, 2007 WL 2534179, at *6 (E.D. Mich. Aug. 31, 2007) (cited in Opp. at 6) (opinion of third-party planning consultant as to whether usage was legal for a specific location provided to planning committee's attorney deemed relied upon for purposes of attorney providing legal advice); *Jackson v. Ethicon, Inc.*, No. 3:20-CV-10, 2021 WL 2104636 (E.D. Ky. 2021) (cited in Opp. at 6) (addressing motion to compel disclosure of communications between plaintiff and non-party law firm she initially consulted); *In re OM Securities Litigation*, 226 F.R.D. 579, 587-89 (N.D. Ohio 2005) (cited in Opp. at 10) (addressing attorney communications and privileged documents shared with forensic accounting firm).

## II. AON WAS NOT ACTING AS THE "FUNCTIONAL EQUIVALENT" OF A MILLENNIUM EMPLOYEE

Millennium's argument that Aon was the "functional equivalent" of its employee – notwithstanding their agreement in writing disclaiming any such relationship – does not materially differ from its argument that Aon was nearly indispensable for Millennium's attorneys to dispense legal advice. Specifically, the Opposition asserts that Aon supposedly performed "key corporate function[s]" for Millennium that Millennium employees and agents could not and did so in a "continuous and close" manner. (Opp. 12-13). Simple importance and uniqueness of the third-party's services to the corporate entity, however, is not the proper inquiry. Indeed, if that were the test, a whole slew of independent contractors who, by definition, provide important or "key" services to the corporation that its own regular employees cannot, would qualify as functional employees despite courts routinely rejecting such claims. *United States ex rel. Wollman v. Mass. Gen. Hosp., Inc.*, 475 F. Supp. 3d 45, 67-68 (D. Mass. 2020) (holding public relations firm and personnel not functional equivalent of a corporate employee); *Export-Import Bank of the U.S. v. Asia Pulp & Paper Co., Ltd.*, 232 F.R.D. 103, 113-14 (S.D.N.Y. 2005) (financial consultant ruled not be functional equivalent of client's employee); *Horton v. United States*, 204 F.R.D. 670, 672 (D. Colo. 2002) (property management company and personnel ruled not be functional equivalent of employees of property owner). Rather, the test is what the doctrine says: the third-party's relationship with the entity must be so close that the third-party is indistinguishable from an employee. *In re Bieter Co.*, 16 F.3d 929, 938 (8th Cir. 1994) (privileged preserved where "there is no principled basis to distinguish [the third-party's] role from that of an employee"). Thus, for example, this Court has held that a hospital's chief of cardiology was the functional equivalent of a hospital employee despite being legally classified as an independent contractor. *U.S. ex. rel. Fry v. The Health Alliance of Greater Cincinnati*, No. 1:03-cv-167, 2009 WL 5033940, at *4 (S.D.

9

Ohio. Dec. 11, 2009). Whatever the case, the Court should not permit Aon and Millennium to agree that Aon was "not an employee or agent of [Millennium]," (ECF Doc. No. 55-1, PAGEID# 674) while later claiming that Aon is the functional equivalent of an "employee or agent" in order to shield relevant communications from discovery. *See United Sates ex. rel. Wollman*, 475 F. Supp. 3d at 58, 67-68 (public relations firm ruled not to be "functional equivalent" of agent or employee of corporation where retainer agreement specifically disclaimed agency relationship); *Horton*, 204 F.R.D. at 672 (reviewing terms of property management agreement to conclude property management company not functional equivalent of employee of property owner).

The case where Millennium extrapolates its amorphous test for employee functional equivalency, *Coorstek, Inc. v. Reiber*, No. 08-cv-01133, 2010 WL 1332845 (D. Colo. Apr. 5, 2010), actually demonstrates why Aon cannot be considered the functional equivalent of a Millennium employee. There, the plaintiff in a patent infringement declaratory judgment action sought communications between the defendant's lawyers and an individual named Dr. Robert Atkin. *Id.* at *1. Dr. Atkin, in turn, had a relationship with a company called P.E. Ceramic, which had worked with the defendant's lawyers, having provided technical advice in connection with various patent applications that were the subject of the suit. *Id.* at *1-2. Thus, the issue was not whether communications between P.E. Ceramic and the defendant's attorneys were privileged. Rather, the issue was whether Dr. Atkin was the functional equivalent of an employee of P.E. Ceramic. The court held that Dr. Atkin was a functional equivalent, in light of the fact that he had invested in P.E. Ceramics, his business card identified him as a member of P.E. Ceramic, and billing for his work for the defendant went through P.E. Ceramic. *Id.* *1-2, 6. Therefore, the court concluded that "Atkin most certainly did represent himself to be associated with P.E. Ceramic in an employee-like manner." *Id.* at *6. Here, of course, Aon personnel were not treated in an

"employee-like manner" by Millennium; indeed, their agreement explicitly disclaimed any such arrangement.  Moreover, Millennium points to no evidence that, in violation of its agreement, that it ever held Aon personnel out as Millennium employees or "so fully integrate[] [Aon] into [Millennium's] hierarchy as to be a *de facto* employee of [Millennium]." *Export-Import Bank of the U.S.*, 232 F.R.D. at 114.

The other case upon which Millennium relies for its functional equivalency argument, *Royal Surplus Lines Ins. Co. v. Sofamor Danek Group, Inc.*, addressed whether an insurance brokerage firm that had worked closely with the insured's attorneys in procuring policy language to cover specific liability risks relevant to the insured's business (liability for surgical bone screw claims from third-parties) could be considered the functional equivalent of the insured's employee for purposes of a privilege determination in coverage litigation arising out of that same policy language.  190 F.R.D. 463, 471-72 (W.D. Tenn. 1999).  Critically, unlike here, there was no document where the parties explicitly disclaimed an employee or agency relationship.  To the contrary, the insurer specifically described the broker as the insured's "agent." *Id.* at 471.

In sum, Millennium and Aon did not leave their business relationship ambiguous.  Rather, they explicitly agreed that Aon was *not* Millennium's "employee or agent."  And reality reflected this understanding.  Throughout the claims process, Millennium did not hold Aon out to Great American as its agent or *de facto* employee.  Rather, at most, Aon provided services that Millennium found helpful and unique, which is what virtually every independent contractor, by definition, does.  Yet that does not transform those independent contractors into virtual employees when they seek to withhold relevant information in subsequent litigation. *Export-Import Bank of the U.S.*, 232 F.R.D. at 113 (functional equivalent test not met where financial consultant "efforts are precisely those that any financial consultant would make under the circumstances").  As this

11

is exactly what Millennium seeks to do here, the Court should reject Millennium's claim that Aon was the functional equivalent of an employee.

## III. THE COMMON INTEREST EXCEPTION DOES NOT APPLY

Millennium's argument that its attorneys' communications with Aon can be withheld under the "common interest exception" (Opp. 14) need not detain the Court long. As the primary case upon which Millennium's argument relies observed, the "common interest privilege" applies "'in the instance where two or more clients, each represented by their own lawyers, meet to discuss matters of common interest – commonly called a joint defense agreement or pooled information situation.'" *State ex. rel. Baldwell v. Ohio Atty. Gen.*, 2009-Ohio-1265, ¶ 87 (Ohio 2009) (cited in Opp. at 14) (quoting McCormick, Evidence (6th Ed. 2006) 413-414, Section 91.1). This Court has refined the application of the "common interest" rule further, stating it "applies when parties have a common litigation opponent or when information is exchanged between friendly litigants with similar interests." *Travelers Cas. & Sur. Co. v. Excess Ins. Co. Ltd.*, 197 F.R.D. 601, 606-07 (S.D. Ohio 2000).

Based on the foregoing principles, Millennium's "common interest" argument is nothing more than an attempt to nail a square peg in a round hole. Specifically, Millennium makes no claim that its attorneys were communicating with Aon's attorneys at any time, and therefore the claim of "common interest" privilege fails at the threshold. In addition, at the time the communications were made, Aon and Millennium did not have a "common litigation opponent" or were otherwise not "friendly litigants." *Excess Ins. Co. Ltd.*, 197 F.R.D. at 607. Millennium's citation to *American Colloid Co. v. Old Republic Ins. Co.*, No. 93 C 0665, 1993 WL 195270 (N.D. Ill. 1993) (cited in Opp. at 14) does not alter the analysis as its references to a "community of interest" between clients and their agents did not purport to have anything to do with the "common interest" exception, much less as it exists under Ohio law.

## IV. GREAT AMERICAN'S MOTION CHALLENGES MILLENNIUM'S REDACTIONS

The Opposition erroneously states that Great American is not challenging Millennium's redactions. (Opp. 4). To the contrary, Great American's motion seeks disclosure of "all documents" withheld solely on the basis of attorney-client privilege that involve Aon with the need for *in camera* review. (Open. 1). Millennium's privilege log, in turn, logs documents that have been redacted as well as documents that have been withheld *in toto*. (ECF Doc. No. 55-8 at PAGEID# 701-710). Otherwise, Great American's position is that *no* communications between Aon and Millennium are privileged for the reasons Great American has set forth. Thus, for purposes of Great American's motion, there is no difference between documents it has completely withheld and documents that contain redactions to the extent the material that is withheld contains communications between Millennium's counsel and Aon.

## V. MILLENNIUM CONCEDES *IN CAMERA* REVIEW OF DOCUMENTS WITHHELD ON THE BASIS OF WORK PRODUCT PRIVILEGE CLAIMS IS APPROPRIATE

Millennium concedes that *in camera* review of the documents withheld on the basis of work product protection is appropriate, and it has similarly explained why it could reasonably anticipate litigation on November 19, 2019. (Opp. 15). Tellingly, however, Millennium does not address, or dispute the notion that it is not enough that litigation was reasonably anticipated, rather, "'the document must be prepared *because* of the prospect of ligation when the preparer faces an actual claim or a potential claim following an actual event or series of events that reasonable could result in litigation.'" *Arkwright Mut. Ins. Co. v. Nat'l Union Fire Ins. Co.*, NO. 93-30S4, 1994 WL 5899, at *3 (6th Cir. 1994) (quoting *National Union Fire Ins. Co. v. Murray Sheet Metal*, 967 F.2d 980 (4th Cir. 1992)) (emphasis in original). The Court should apply this standard when it conducts its *in camera* review.

## CONCLUSION

For all of the foregoing reasons and for the reasons set forth in its Opening Memorandum, the Court should grant Great American's motion to compel.

Dated: September 10, 2021

Respectfully submitted,

/s/ *Daniel Lebersfeld*
Daniel Lebersfeld (admitted *pro hac vice*)
Stephen N. Dratch (admitted *pro hac vice*)
THE DRATCH LAW FIRM, P.C.
354 Eisenhower Pkwy.
Livingston, NJ 07039
Phone: 973-992-3700
Fax: 973-994-0139
sdratch@njcounsel.com
dlebersfeld@gmail.com

and

James Papakirk (0063862)
Hallie S. Borellis (0076510)
FLAGEL & PAPAKIRK LLC
50 E-Business Way, Suite 410
Cincinnati, OH 45241
Phone: 513-984-8111
Fax: 513-984-8118
jpapakirk@fp-legal.com
hborellis@fp-legal.com
*Counsel for Defendant Great American Insurance Company*

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing document was electronically filed on September 10, 2021, and will be served electronically by the court's CM/ECF system upon all counsel of record.

/s/ *Daniel Lebersfeld*
Daniel Lebersfeld (admitted *pro hac vice*)
